**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **THOMAS BEARUP JR., et al.,** | ) | |
| | ) | **Case No. 1:21-cv-00151** |
| **Plaintiffs,** | ) | |
| | ) | **Judge Matthew W. McFarland** |
| **-v-** | ) | |
| | ) | |
| **CINTAS CORP NO. 2,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF
<u>ITS MOTION TO STRIKE CLASS ALLEGATIONS</u>**

I.    **INTRODUCTION**

This case is a classic example of an action that is not appropriate for class treatment. Plaintiffs have brought this suit as a putative Rule 23 products-liability, personal-injury class action on behalf of all flight attendants, customer-service agents, and operations agents employed in the United States by Southwest Airlines ("Southwest") who were required to wear uniforms manufactured by Cintas. They claim to have suffered "a myriad of health problems" supposedly caused by the uniforms, including "itchiness, rashes, hives, coughing, trouble breathing, tightness of the chest, hair loss, ear pain, blurry vision, anxiety, and lethargy." (FAC at ¶ 2.) Plaintiffs allege that their claims can be certified as a Rule 23(b) class—which they estimate to be "over 20,000" in size—to recover money damages for the class members' personal injuries under purely state-law theories of products liability and/or breach of warranty.

Yet, federal courts in the Sixth Circuit and across the country have long recognized that personal injury claims are ill-suited for class treatment because of the predominance of individualized issues concerning causation, symptoms, defenses, and damages. Likewise here, determining liability for the members of the proposed class will require highly individualized, fact-dependent inquiries regarding how the class members were physically injured, their medical issues and sensitivities, how they were exposed to the uniforms, and any existing conditions they had. The individualized inquiries do not stop there. Plaintiffs do not claim that there was a single uniform or clothing type that all members of the class wore that caused their injuries; rather, they allege that the Cintas uniforms collection included "75 separate pieces" of clothing— including multiple types of shorts, pants, blouses, skirts, dresses, shirts, vests, and ties—that the proposed class members had the ability to "mix and match" to create their own garments. (FAC at ¶ 22.) Determining which specific pieces each class member wore, in combination with which

1

other pieces, and for which periods of time—as will be necessary to assess liability, proximate cause, and damages—will also require highly individualized inquiries.

As a result, it is clear from the face of the First Amended Class Action Complaint that the requirements for maintaining a class action can never be met.  Because of the individualized facts that each class member will be required to prove, Plaintiffs cannot satisfy Rule 23(a)'s requirements of commonality, typicality, or adequacy.  Nor can they establish that a class action is maintainable under any prong of Rule 23(b), as there is no one set of operative facts that establishes liability, proximate cause, and/or damages for the entire class.  In addition, since Plaintiffs' claims are brought entirely under state law—which differs from one state to the next in many and material ways—the Court will potentially have to apply the differing laws of up to 50 states.  The Complaint alone identifies at least 14 states whose laws will have to be applied. At the same time, the proposed class is fatally overbroad because it includes likely thousands of individuals who were not injured at all by the uniforms and, therefore, do not have Article III standing.  The class allegations should be stricken for any and all of these reasons.  Because the deficiencies are clear from the Complaint's face—and cannot be cured through any amount of discovery—the Court should strike the class action allegations at this stage, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to avoid the significant and entirely unnecessary time, cost, and resources that would be involved in proceeding as a class action.

This outcome is precisely the result reached by Judge Black in a decision where he struck class action allegations at the pleading stage in remarkably similar circumstances.  *See Colley v. P&G*, No. 1:16-cv-918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) (striking class action allegations before discovery for proposed nationwide, Rule 23 products-liability class action). The claims asserted in *Colley* and the rationales Judge Black gave for striking the class

allegations at the outset of the case are almost all identical to and entirely applicable here.  For the same reasons, the Court should strike the class allegations from the FAC, because the Complaint makes clear that the requirements for certifying a class action can never be met.

## II.    FACTUAL ALLEGATIONS

### A.    Plaintiffs' Claims

Plaintiffs are all employees of third-party Southwest Airlines.  (FAC at ¶¶ 25, 31, 38.) There are three named Plaintiffs identified in the FAC and another 22 "[a]dditional Plaintiffs" identified in an Appendix A attached to the Complaint (and incorporated therein).  (*Id*. at ¶¶ 7-10, Appendix A.)  They allege that they were required to wear Southwest company uniforms that Cintas manufactured (*id*. at ¶ 1), which supposedly caused them various health problems and related damages (*id*. at ¶ 2).  These include "itchiness, rashes, hives, coughing, trouble breathing, tightness of the chest, hair loss, ear pain, blurry vision, anxiety, and lethargy."  (*Id*. at ¶ 2.)  The injuries that Plaintiffs allege to have suffered are not, however, consistent from one person to the next but highly vary among those identified in the Complaint.  (*Compare id*. at ¶¶ 27, 32, 39, Appendix A at ¶¶ 1-22.)  While some physical injuries overlap, many others do not.

Plaintiffs allege that the Cintas uniforms collection that caused their injuries "included 75 separate pieces, allowing employees to mix and match the garments."  (*Id*. at ¶ 22.)  As stated in the FAC, Southwest employees were allowed to select their own outfits from these options that included different shorts, slacks, dresses, skirts, polos, blouses, jackets, vests, and/or ties.  (*Id*.) None of the Plaintiffs, however, identifies which particular uniform options they chose or which supposedly caused their personal injuries.  Nor do Plaintiffs make any attempt to allege how the uniforms were supposedly defective or actually caused any of their physical injuries.  At most, Plaintiffs simply claim—without any supporting facts—that Cintas improperly designed the

uniforms and failed to use reasonable care in testing, manufacturing, inspecting, and/or evaluating them.  (*See*, *e.g.*, *id*. at ¶¶ 53, 62, 67, 71, 83, 96, 105, 113.)

Based on these allegations, Plaintiffs assert eight claims that all arise under state law:  (i) negligence, (ii) design defect, (iii) manufacturing defect, (iv) failure to warn, (v) breach of express warranty, (vi) breach of implied warranty, (vii) violation of the Magnuson-Moss Warranty Act,[1] and (viii) injunctive relief.  They seek money damages for "personal injuries" for "pain and suffering, severe emotional distress, property damage, financial or economic loss, including medical services and expenses, lost income and other damages."  (*Id*. at ¶¶ 55, 64, 68, 80, 87, 97.)  They also request an injunction that Cintas recall the uniforms.  (*Id*. at ¶ 115.)

### B.    The Proposed Class

The proposed Rule 23 class that Plaintiffs will ultimately seek to certify in this action is defined as:  "All flight attendants, customer-service agents, and operations agents employed by Southwest in the United States who were required to wear *Heart* branded uniforms manufactured by Cintas."  (FAC at ¶ 43.)  Plaintiffs allege that there are "over 20,000" individuals who fall within the proposed class.  (*Id*. at ¶ 2.)  Based only on the residences or work locations for the three named Plaintiffs and the additional 22 individuals identified in Appendix A to the FAC, Plaintiffs' claims involve individuals from at least 13 different states (including Washington, D.C.):  Arizona, California, Colorado, Florida, Illinois, Indiana, Maryland, Massachusetts, Nevada, Oklahoma, Tennessee, Texas, and Washington, D.C.  (*Id*. at  ¶¶ 7-9, 25, 31, 38, Appendix at ¶¶ 1-22.)  Given that Plaintiffs assert a nationwide class made up of individuals

---

[1] While Count VII is asserted under the Magnuson-Moss Act, that statute calls for the application of state warranty law.  *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 954 n.6 (S.D. Ohio 2009) ("Plaintiffs may maintain a claim for breach of implied warranty under the Magnuson-Moss Act only to the extent they state the same claims under relevant state law.  Therefore, this Court's analysis on implied warranties applies with equal force to both the Magnuson-Moss claims and the state law claims.").

based across the country—including flight attendants who likely travelled and suffered injuries in various locations nationwide—it is likely, if not certain, that the proposed class will involve the substantive law of many more states, and perhaps all 50.

## III.   ARGUMENT

### A.   Standard of Review

"Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich.*, 654 F.3d 618, 630 (6th Cir. 2011). "Striking deficient class allegations comports with Rule 23's directive that courts determine whether a class may be certified '[a]t an early practicable time.'" *Smith v. Cash Am. Int'l, Inc.*, No. 1:15-cv-760, 2019 WL 2352921, at *2 (S.D. Ohio June 4, 2019) (citing *Colley*, 2016 WL 5791658, at *2); Fed. R. Civ. P. 23(c)(1)(A). "A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met." *Colley*, 2016 WL 5791658, at *2 (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011)). In *Pilgrim* the Sixth Circuit affirmed the district court's order at the pleading stage striking class action allegations asserting a nationwide class, because discovery would not "alter the central defect" of the class allegations. 660 F.3d at 949. In particular, the Sixth Circuit held that the class allegations were correctly stricken because the plaintiffs could never demonstrate that common issues of law and fact would predominate over individualized ones. *Id*. at 946-49.

### B.   Federal Courts Have Long Recognized that Personal Injury and Medical-Related Claims Are Not Suitable for Class Treatment.

Plaintiffs' class allegations are premised on the "myriad of health problems" they supposedly suffered due to the uniforms. (FAC at ¶ 2.) The Supreme Court, however, has held that these types of claims and injuries are inherently unsuited for class treatment, as they are

"likely to present 'significant questions, not only of damages but of liability and defenses of liability . . . affecting the [class members] in different ways.'" *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (quoting Fed. R. Civ. P. 23, Advisory Committee Notes to 1966 Amendment and affirming circuit court's rejection of a "sprawling" nationwide class of personal injury product liability claims, and requiring "caution" when considering class certification of mass torts); *see also Colley*, 2016 WL 5791658, at *3 (quoting same).

The same conclusion is well-recognized in the Sixth Circuit. In *In re American Medical Systems*, 75 F.3d 1069 (6th Cir. 1996), the Sixth Circuit took the extraordinary step of granting a mandamus petition to decertify a class in a products liability suit, noting a "national trend to deny class certification in drug or medical product liability/personal injury cases." *Id.* at 1074, 1089. In overturning class certification, the Sixth Circuit observed that in products-liability personal injury cases:

> No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each defendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff' case.

*Id.* at 1084-85; *see also Jones v. Allercare*, 203 F.R.D. 290, 301 (N.D. Ohio 2001) (denying class certification and noting that where there is no allegation a product causes harm to all users, the question is not "whether the products have the capacity to cause harm, but whether [they] caused harm and to whom. Thus, the real causation issue . . . is individual, not general, in nature.").

Federal courts in this district and elsewhere around the country recognize and follow the same reasoning. As one district court has observed, "no federal appellate court has approved a nationwide personal injury, product liability or medical monitoring class." *Durocher v. NCAA*, No. 1:13-cv-1570, 2015 WL 1505675, at *10, n.3 (S.D. Ind. Mar. 31, 2015) (collecting cases and

granting a motion to strike personal injury class allegations); *see also Colley*, 2016 WL 5791658, at *3 (quoting same); *In re Temple*, 851 F.2d 1269, 1273 n.7 (11th Cir. 1988) (noting that "the prerequisites of commonality and typicality will normally be hard to satisfy" in a products liability suit); *Kemp v. Metabolife Int'l, Inc.*, No. 00-cv-3513, 2002 WL 113894, at *3 (E.D. La. Jan. 25, 2002) ("Product liability class actions generally do not meet the predominance requirement."); *Chin v. Chrysler Corp.*, 182 F.R.D. 448, 455 (D.N.J. 1998) (denying certification in products liability case in part due to the "plethora of . . . causes of actions under divergent state laws").

These impediments to class certification are multiplied where, as here, plaintiffs seek to assert these fact-intensive claims under the substantive law of many different states. *See Ilhardt v. A.O. Smith Corp.*, 168 F.R.D. 613, 618-20 (S.D. Ohio 1996) (applying *American Medical Systems* and granting motion to decertify a class in a products liability action alleging defective design, and noting significant differences under the products liability laws of the more than 40 states the court would have to apply); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 743 n.15 (5th Cir. 1996) (observing that the "proliferation of disparate factual and legal issues is compounded exponentially" when law of multiple jurisdictions apply); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("The complexity of the trial would be further exacerbated to the extent that the laws of forty-eight states must be consulted.").

## C.     The Proposed Class Cannot Be Certified Because Individual Factual and Legal Issues Will Overwhelm Common Ones.

Plaintiffs' class claims cannot satisfy either Rule 23(a)(2)'s requirement that "there are question of law or fact common to the class" or Rule 23(b)(3)'s "far more demanding" requirement that common issues predominate over individual ones. *Amchem Prods.*, 521 U.S. at 615. The Sixth Circuit has recognized that, in "products liability" claims, "the factual and legal

issues often do differ dramatically from individual to individual because there is no common cause of injury." *In re Am. Med. Sys.*, 75 F.3d at 1084. "Where many individual inquiries are necessary, a class action is not a superior form of adjudication." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012).

### 1. Individual questions of fact will predominate.

Here, Plaintiffs' proposed class will require innumerable individualized inquiries into each class member's personal experiences with and reaction(s) to the various uniform pieces. Plaintiffs' claim that they suffered from a wide variety of personal injuries by using or coming into contact with the Cintas uniforms. But they do not allege that the uniforms caused adverse reactions in *all* individuals exposed to them, nor that each class member's alleged adverse reaction was the same in type or degree as the rest of the class. While Plaintiffs allege that the uniforms caused adverse effects for them—without offering any explanation whatsoever of how the uniforms were defective or caused any physical reaction—their individual experiences are not enough to establish commonality or predominance across the entire purported class.

Indeed, the liability of the individual members of the putative class will require a litany of specific factual inquiries regarding each class member's particular physical and/or economic injuries, the proximate cause of their harm, and Cintas's defenses to their claims. For example, liability will involve the questions of whether and how each class member was physically injured, whether they had particular medical issues or sensitivities, and whether they had any pre-existing physical injuries or conditions, such as broken or irritated skin. It will also involve questions regarding which of the 75 different uniform pieces that each class member actually wore, and which supposedly caused their injuries—as Plaintiffs allege that these uniform pieces can be "mix[ed] and match[ed]" *by the class members themselves*. (FAC at ¶ 22.) Liability will

necessarily require analysis of which particular uniform pieces each class member wore, in which combinations, and for how long.

Moreover, because Plaintiffs do not allege that every member of the class was even injured by the uniforms (from whichever of the numerous combinations of uniform pieces they may have chosen), it appears that only a small number of the 20,000 putative class members may have been harmed at all. The proposed class includes all individuals who "were required to wear the uniforms," not those who actually did wear them or were injured by them. As a result, predominance can never be met in this case for precisely the same reasons recognized by the Supreme Court in *Amchem Prods*. *See* 521 U.S. at 609, 628 (holding that "the class in this case cannot satisfy the requirements of common issue predominance," where the individual class members were "exposed to different asbestos-containing products, for different amounts of time, in different ways, and over different periods [and] [s]ome suffered no physical injury").

Judge Black's order in *Colley* is directly on point. Similar to here, *Colley* involved a proposed nationwide class of individuals who had used a deodorant that supposedly caused them personal injuries, such as a rash or irritation. 2016 WL 5791658, at *1. The Court concluded that "individualized questions of fact predominate" because of the myriad "specific factual inquires" that would necessarily be involved in establishing "[t]he liability of individual class members." *Id*. at *6. These included "whether and how class members were physically injured," "individual medical issues and sensitivities," and "conditions such as previously broken or irritated skin." *Id*. As a result, "no one set of operative facts establishes liability," and "[n]o single proximate cause applies equally to each potential class member." *Id*. Individualized questions of fact would, therefore, predominate. *Id*. Likewise here, Plaintiffs cannot identify a "single course of conduct," such as in a mass tort case, where each class member's liability turns

on a single "common cause of injury." *See id*. at \*5-6. The class allegations must, therefore, be stricken.

### 2. Questions of law will vary significantly across the class.

In addition, Plaintiffs will never be able to demonstrate that common questions of law apply to the class members' claims. "A class action is improper where the 'laws of the State where each injury took place would govern the [individual] claims,' and those laws 'vary in material ways.'" *Colley*, 2016 WL 5791658, at \*6 (quoting *Pilgrim*, 660 F.3d at 947). This is true even if the Plaintiffs attempted to identify subclasses for the individual states at issue, as the Court would still be "faced with individual legal standards and manageability problems because the proposed class claims would require the application of the laws of [numerous] different states to different class members." *See id*.

Ohio's choice-of-law principles require this Court to apply the law of the state where each class member's injury occurred for that individual's claims. *Pilgrim*, 660 F.3d at 946; *see also Muncie Power Prods., Inc. v. United Techs. Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (federal courts sitting in diversity must apply the choice-of-law rules of the forum state); *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286, 289 (Ohio 1984) ("[A] presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit."). Because each class member's state of injury will likely govern his or her claims, the nationwide class claims in this case cannot satisfy Rule 23 requirements.

### i. Products Liability Claims (Counts I-IV)

The first four counts in the FAC assert state-law products liability claims for negligence, design defect, manufacturing defect, and failure to warn. Because there is no "nationwide" products liability statute, the Court will be required to conduct a choice-of-law analysis for each

individual class member to determine what state's substantive law applies to his or her claims, and whether that individual can establish liability under the governing law. From the face of the FAC, there are at least 14 different states whose products liability laws will likely apply, based on the asserted Plaintiffs' residences and including Ohio. The actual number is likely significantly higher—and possibly includes all 50 states—given that Plaintiffs claim that "over 20,000" individuals have worn the uniforms, including flight attendants who almost certainly travelled across state lines and may have been injured in a variety of locations across the country.

Even limiting the analysis to the 14 states implicated from the face of the FAC, it is evident that there are a number of significant and material differences in the state products liability laws that would apply to the proposed class members' claims. As the Ninth Circuit has observed, "the laws of negligence, product liability, and medical monitoring all differ in some respects from state to state." *Zinser*, 253 F.3d at 1188; *see also Ilhardt,* 168 F.R.D. at 618-20 (identifying "five general categories" of "substantive difference in state law" for products liability claims that preclude class treatment).

Here, for example, the potentially applicable statutes of limitations differ from as short as one year to as long as ten years, with the majority at either two or three years.[2] These differences will directly affect the class, as Plaintiffs allege that the uniforms went into use on June 18, 2017 (FAC at ¶ 23), but they did not file suit until August 21, 2020. As a result, a one-year statute might act as a complete bar, whereas a four-year or larger statute would not come into play at all. States with statutes between 1-3 years would require individual inquiries to the class members

---

[2] **1-year statute**:  Tennessee (Tenn. Code § 28-3-104(b)); **2-year statute**:  Arizona (Ariz. Rev. Stat. § 12-542), California (Calif. Code of Civ. P. § 335.1), Colorado (Colo. Rev. Stat. § 13-80-106), Illinois (735 Ill. Comp. Stat. § 5/12-901), Nevada (Nev. Rev. Stat. Ann. § 11.190), Ohio (R.C. 2305.10(A)), Oklahoma (Okla. Stat. Ann. Tit. 12 § 95), Texas (Tex. Civ. Prac. and Rev. Code Ann. § 16.003); **3-year statute**:  Maryland (Md. Code Ann. Cts. & Jud. Proc. § 5-101), Massachusetts (Mass. Gen. Law. Ch. 260, § 2A), Washington, D.C. (*Doe v. Medlantic Health Care Group Inc.*, 814 A. 2d 939, 945 (D.C. Ct. App. 2003)); **4-year statute**:  Florida (Fla. Stat. Ann. § 95.11); **10-year statute**:  Indiana (Ind. Code Ann. § 34-20-3-1).

injured in those states as to precisely *when* their injuries occurred, because some class members may have claims that are entirely barred, partially barred, or not barred at all.

States also differ in their approaches to design defect and failure-to-warn theories. For design defect, depending on the state, the product must be "defective," "unreasonably dangerous," or both.[3] These determinations are made using various tests with multiple varying factors, e.g., one state's test may look very different from another's.[4] States also vary in their approach to the Restatement of Torts, with some following the Second Restatement, some following the Third Restatement, and others drawing from one or both on an ad hoc basis.[5] There is also considerable state-to-state variation as to whether it is plaintiff's or defendant's burden to prove certain factors.[6]

These differences in the applicable law—which could potentially lead to drastically different results for the members of the proposed class—preclude Plaintiffs from ever satisfying the predominance requirement. As the Sixth Circuit explained in *Pilgrim*, predominance cannot be demonstrated where Ohio's choice-of-law rules dictate that "different laws would govern the class members' claims." 660 F.3d at 946. Nor could the use of state subclasses resolve the lack of predominance, because "*the key defect [is] that the claims must be resolved under different*

---

[3] *See, e.g.*, *Cronin v. J.B.E. Olson Corp.*, 501 P.2d 1153, 1163 (Cal. 1972) (plaintiff must prove was defective, but not "unreasonably dangerous," in California); *Roysdon v. R.J. Reynolds Tobacco Co.*, 849 F.2d 230, 235 (6th Cir. 1988) (product must be "either defective or unreasonably dangerous" in Tennessee); *Fibreboard Co. v. Fenton*, 845 P.2d 1168, 1175 (Colo. 1993) (product must be both "defective and unreasonably" dangerous" in Colorado).

[4] *See, e.g.*, Ohio R.C. 2307.75 (applying a risk-benefit test "including, but not limited to" five risk factors and three benefits factors); *Barton v. Adams Rental*, 938 P.2d 532, 537 (Colo. 1997) (listing seven design defect factors); *Soule v. General Motors Corp.*, 882 P.2d 298, 309-10 (Cal. 1994) (holding that a design defect is to be determined through a "consumer expectations test" or risk-benefits analysis, depending on the nature of the defect).

[5] *See, e.g.*, *Aubin v. Union Carbide Corp.*, 177 So. 3d 489, 520 (Fla. 2015) ("reaffirm[ing] . . . adherence to the Second Restatement"); *Southwest Pet Products, Inc. v. Koch Indus., Inc.*, 273 F. Supp. 2d 1041, 1052 n.17 (D. Ariz. 2003) ("[R]eliance on Restatement (Third) of Torts is in keeping with Arizona's longstanding policy to look to the Restatement absent contrary precedent."); *Calles v. Scripto-Tokai Corp.*, 864 N.E.2d 249, 260-61 (Ill. 2007) (adopting the Third Restatement); Ind. Code Ann. §§ 34-20-1-1, *et seq.* (statutory products liability standards).

[6] 63A Am. Jur. 2d Products Liability § 1281 & nn.3-5 (2015) (explaining that product "misuse" in some states is "identified as an affirmative defense" but in other states is "consider[ed] . . . to be part of the plaintiff's case") (collecting cases).

*legal standards*." *See id.* at 948 (emphasis added).  Once again, Judge Black's decision in *Colley* addressed these same issues in a highly similar products liability case.  Because the proposed class would involve the application of numerous state product liability laws, he concluded that "individual questions of law predominate." *Colley*, 2016 WL 5791658, at *6-7.  Likewise here, the class allegations should be stricken for this reason as well.

ii.    Breach of Warranty Claims (Counts V-VII)

Plaintiffs' remaining causes of action arise under state law regarding breach of implied warranty and/or express warranty.  Plaintiffs do not base these claims on allegations that Cintas made these warranties to them; rather, they claim to be "intended third party beneficiaries of Cintas' warranties" based upon a contract between Cintas and Southwest.  (FAC at ¶¶ 84, 94.) As with state products liability laws, there are significant and material differences in the various state warranty laws that would apply to the members of the class, precluding a finding of predominance.  *See, e.g.*, *Rikos v. P&G*, No. 11-cv-226, 2012 WL 641946, at *6 (S.D. Ohio Feb. 28, 2012) (striking nationwide class because applicable state warranty laws involve material differences between them); *In re Ford Motor Cor. Ignition Switch Prods. Liab. Litig. v. Ford Motor Co.*, 194 F.R.D. 484, 489-90 (D.N.J. 2000) (declining to certify class due to "significant differences between the states' causes of action for violation of implied warranty").

For example, state laws conflict on whether privity of contract between parties is a prerequisite for a breach of warranty claim and/or whether a theory of constructive privity may potentially apply.[7]  *See Powers v. Lycoming Engines*, 272 F.R.D. 414, 430 (E.D. Pa. 2011)

---

[7] *See, e.g.*, *Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. Dist. Ct. App. 2005) ("[T]o recover for the breach of a warranty either express or implied, the plaintiff must be in privity of contract with the defendant."); *Old Albany Estates, Ltd. v. Highland Carpet Mills, Inc.*, 604 P.2d 849, 850 (Okla. 1979) ("We hold a manufacturer may be held liable for breach of implied warranty of merchantability or fitness for particular purpose under the Uniform Commercial Code without regard to privity of contract between the manufacturer and the ultimate buyer."); *see also In re Whirlpool*, 684 F. Supp. 2d at 420-21 (analyzing the "significant differences among the states regarding the

("There are . . . significant differences among the states regarding the application of implied warranty of merchantability law.  The most significant is the privity requirement.").  States also differ on whether reliance is a necessary element for a breach of warranty, with some requiring reliance, others not, and still others creating a rebuttable presumption of reliance.[8]  Other crucial differences are the varying state standards for the warranty of "merchantability."  *See, e.g.*, *Cole v. GMC*, 484 F.3d 717, 725-26 (5th Cir. 2007) (rejecting express and implied warranty class claims as lacking predominance and declining to certify class due to "glaring substantive legal conflicts among the applicable laws of each jurisdiction.").  The many legal permutations of claims for breach of express and/or implied warranty of merchantability prevents class treatment.

### D. Named Plaintiffs Cannot Satisfy Rule 23(a)'s Requirements.

To obtain class certification, a plaintiff must meet all of the prerequisites of Rule 23(a), which are numerosity, commonality, typicality, and adequacy.  Civ. R. Fed. P. 23(a)(1)-(4); *see also Pilgrim*, 660 F.3d at 945.  Plaintiffs' class claims must be stricken because they do not and cannot comply with Rule 23(a)'s requirements of commonality, typicality, and adequacy.

### 1. Commonality.

Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).  As already discussed, Plaintiffs are not capable of showing a common, class-wide injury, because the individual physical injuries suffered by the members of the putative class vary from person to person and will require highly individualized inquiries to establish liability, cause, damages, or address Cintas's defenses.  (*See supra*, at 7-14.)  The specific—and highly varied—physical

---

application of implied warranty," including differences in privity and constructive privity, for (among others) Arizona, California, Florida, Illinois, Ohio, and Tennessee).

[8] *See, e.g.*, *Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 645 (10th Cir. 1991) (reliance <u>not</u> an element of a warranty claim under Colorado law); *Jeld-Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 5-cv-60860, 2007 WL 5960207, at *11, 14 (S.D. Fla. May 15, 2007) (reliance required to state a claim for warranty under Florida law); *Felley v. Singleton*, 705 N.E.2d 930, 934 (Ill. App. Ct. 1999) (recognizing rebuttable presumption of reliance).

injuries alleged in the FAC make clear that there is no "common injury" to the class. For example, while a number—but not all—of the 25 individuals identified in the FAC claim to have suffered "rashes" and "itchiness" (FAC, Appendix A at ¶¶ 2-6, 10-13, 15, 18-20), only one or two of those individuals alleges any of the following injuries: "vocal cord dysfunction" (*id.*, Appendix A, at ¶ 5); "fuzzy memory" (*id.*, Appendix A at ¶¶ 8, 15); "scars" (*id.*, Appendix A at ¶ 13); "auto immune issues" (*id.*, Appendix A at ¶ 16); and "trouble concentrating" (*id.*, Appendix A at ¶ 22). These differences prevent Plaintiffs from ever showing that the class suffered a common, class-wide injury to establish commonality. *See Dukes*, 564 U.S. at 349-50.

### 2. Typicality.

"The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class." *Sprague v. GMC*, 133 F.3d 388, 399 (6th Cir. 1998). "Where class members' claims turn on individual permutations that 'varied from person to person,' the Sixth Circuit has made clear that the claims of the named plaintiffs are not typical." *Colley*, 2016 WL 5791658, at *9 (quoting *Romberio v. UNUMProvident Corp.*, 385 F. App'x 423, 431 (6th Cir. 2009)).

Here, Plaintiffs allege that their claims "are typical of the claims of the members of the Class," that "Plaintiffs and the other members of the Class have suffered similar injuries by the same wrongful practices," and that their claims "all rise from the same wrongful practices and course of conduct, and are based on the same legal and remedial theories." (FAC at ¶ 47.) These boilerplate allegations do not suffice. As already discussed, each member of the proposed class must prove individual facts under widely varying legal standards. Proof of causation and other elements for one named plaintiff will not establish that other class members are entitled to relief. *See, e.g.*, *Jones*, 203 F.R.D. at 306 ("Each plaintiff's claim is dependent on his or her sensitivity to the products and the nature of his or her exposure and alleged reaction."). Thus, even if the

15

named Plaintiffs establish their individual claims, the claims of the rest of the proposed class will not be proven. *See Sprague*, 133 F.3d at 399 ("A named plaintiff who proved his own claim would not necessarily have proved anybody else's claim.").

These problems are magnified by the fact that Plaintiffs do not allege that all members of the proposed class used the same pieces of the uniform, that they mixed and matched the pieces in the same combinations, or that they reacted to or were injured by the uniforms in the same ways. Instead, they supposedly suffered a litany of different physical conditions caused by whatever combinations of the uniforms' 75 pieces each class member chose to use. These facts further make clear that the typicality requirement cannot be met. *See Am. Med. Sys.*, 75 F.3d at 1082 ("[W]e know from the amended complaint that each plaintiff used a different model, and each experienced a distinct difficulty. . . . These allegations fail to establish a claim typical to each other, let alone a class."); *Sprague*, 133 F.3d at 399 (holding that where each class member's claims "depend[s] on each individual's particular" experiences, the "premise [of typicality] is not valid").

### 3. Adequacy.

For similar reasons, the named Plaintiffs are not adequate representatives. To satisfy the adequacy requirement, "(1) the representative must have common interests with the unnamed members of the class; and (2) it must appear that the representative will vigorously prosecute the interests of the class through qualified counsel." *O'Donnell v. Fid. Am. Life Ins. Co.*, No. 2:14-cv-1071, 2016 WL 1553459, at *8 (S.D. Ohio Apr. 18, 2016). "Class actions involving personal injury claims generally do not meet the adequacy requirement." *Colley*, 2016 WL 5791658, at *10 (citing *Amchem Prods.*, 521 U.S. at 626 & n.20 (in personal injury action, finding class representatives inadequate in part because "currently injured" and "exposure-only" plaintiffs have different interests in structure of settlement)).

16

Here, Plaintiffs are not adequate representatives because they do not "possess the same interest and suffer the same injury" as the varied individual members of the sprawling proposed class. *Amchem Prods.*, 521 U.S. at 625-26. The named Plaintiffs—with diverse medical conditions—cannot act "on behalf of a single giant class" because they are not "aligned" with the individual class members, *id*. at 626, and they lack "incentives" to vindicate the disparate claims and injuries of other differently-situated class members, *Am. Med. Sys.*, 75 F.3d at 1083.

### E.    Named Plaintiffs Cannot Satisfy Rule 23(b)'s Requirements.

At the same time, and as an independent basis for striking the class allegations, Plaintiffs cannot establish that a class action is maintainable under Rule 23(b). They purport to bring this action under both Rule 23(b)(2) and 23(b)(3). (FAC at ¶ 43.) Because the proposed class cannot be maintained under either subpart of Rule 23(b), however, the class must be stricken.

### 1.    23(b)(2).

"Class certification under Rule 23(b)(2) is proper only when the *primary* relief sought is declaratory or injunctive." *Grovatt v. St. Jude Med. Inc.*, 425 F.3d 1116, 1121 (8th Cir. 2005) (emphasis added); *see Dukes*, 564 U.S. at 360 (Rule 23(b)(2) certification inappropriate where "the monetary relief is not incidental to the injunctive or declaratory relief"). The "prime examples" of this type of class are "[c]ivil rights cases against parties charged with unlawful, class-based discrimination," where class members seek to change a defendant's behavior towards an entire class. *Amchem Prods.*, 521 U.S. at 614.

Here, Plaintiffs cannot certify a Rule 23(b)(2) class because they expressly seek money damages for "personal injuries, pain and suffering, severe emotional distress, property damage, financial or economic loss, including medical services and expenses, lost income and other damages." (FAC at ¶ 55; Prayer for Relief at ¶ B (seeking "All recoverable compensatory, statutory, and other damages sustained by Plaintiffs and the other members of the Class.").) In

the event of any liability, the damage amounts would vary widely for members of the class. As explained by the Supreme Court, "[Rule 23(b)(2)] does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Dukes*, 564 U.S. at 360-61; *see also Colley*, 2016 WL 5791658, at *11 (because "Plaintiffs seek individualized monetary damages, Rule 23(b)(2) certification is foreclosed by *Dukes*").

### 2. 23(b)(3).

Rule 23(b)(3) is designed to 'cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated." *Amchem Prods.*, 521 U.S. at 615. Yet, those economies are lost where, as here, individual issues will lead to innumerable mini-trials to resolve the claims of the individual class members. As already discussed, there are numerous factual and legal differences across the class members, making the proposed Rule 23(b)(3) class unmanageable. *See Colley*, 2016 WL 5791658, at *11-12 (striking Rule 23(b)(3) products liability class based on individualized facts and varying state law that would apply).

The Sixth Circuit has explained that "where no one set of operative facts establishes liability, no single proximate cause equally applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy." *Am. Med. Sys.*, 75 F.3d at 1084. The potential benefits of proceeding as a Rule 23(b)(3) class are nonexistent where, as here, putative class members were "'exposed to different . . . products, for different amounts of time, in different ways, and over different periods,' [because those] 'disparate issues make class treatment inappropriate.'" *Colley*, 2016 WL 5791658, at *11 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998)); *see also Johnson v. Nextel Communs., Inc.*, 780 F.3d 128, 148 (2d Cir. 2015) ("Because liability for a significant bloc of the class members and

damages for the entire class must be decided on an individual basis . . . a class action is not a superior method of litigating the case."). In addition, "[t]he application of the different jurisdictions' laws . . . undercuts the superiority of trying the common issues on a classwide basis." *Johnson*, 780 F.3d at 148. In short, the individualized issues that will beset the proposed class by its very nature as a nationwide, products-liability class action will always predominate over any supposedly common issues, rendering a class action uncertifiable.

### F. The Proposed Class Is Fatally Overbroad Because the Vast Majority of the Potential Class Members Suffered No Injury.

In addition to Plaintiffs' inability to satisfy Rule 23's requirements, Plaintiffs' proposed class cannot be satisfied because it is fatally overbroad. A proposed class "is facially overbroad if it includes significant numbers of consumers who have not suffered any injury or harm." *Colley*, 2016 WL 5791658, at *8 (internal quotation omitted); *see also McGee v. E. Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001) (a class is overbroad where it "would include members who have not suffered harm at the hands of Defendant and are not at risk to suffer such harm"). If "individualized fact-finding" is necessary to ascertain which class members were actually injured, class treatment is inappropriate. *See Romberio*, 385 F. App'x at 431.

Overbroad classes including uninjured class members violate standing requirements under Article III of the United States Constitution. Rule 23 must be interpreted consistently with Article III. *Amchem Prods., Inc.*, 521 U.S. at 613. Article III standing requires individual plaintiffs to suffer an injury-in-fact that is causally connected to a defendant's alleged wrongdoing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Coyne ex rel. Ohio v. Am. Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) ("[T]he 'irreducible minimum' constitutional requirements for standing are proof of injury in fact, causation, and redressability."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("A class

'must therefore be defined in such a way that anyone within it would have standing.'"). Where, as here, a large number of class members have suffered no injury, "the only way to distinguish between the two sets of individuals is to engage in individualized fact-finding," which "makes the . . . class definition unsatisfactory." *Romberio*, 385 F. App'x at 431.

Plaintiffs' proposed class is overbroad because it would include tens of thousands of Southwest employees who were required to wear the Cintas uniforms yet suffered no personal injuries and, therefore, have no standing to bring the claims asserted on behalf of the proposed class. Plaintiffs do not even attempt to allege that all individuals who fall within the nationwide class definition suffered physical injuries from using the uniforms, nor do they allege that the uniforms failed to work properly for every member of the proposed class. To the contrary, while Plaintiffs specifically allege that there are "over 20,000 flight attendants, customer-service agents, and operations agents [who] wear pieces from the Uniform collection" (*id.* at ¶ 2), they make no allegation as to what proportion of those 20,000 beyond themselves allegedly suffered any injuries at all. At most, they have identified 25 individuals—the three named Plaintiffs and the 22 individuals listed in Appendix A—who supposedly suffered injuries from the uniforms. That represents a mere 0.125% of the total number of individuals whom Plaintiffs allege are members of the class. Because the vast majority of Plaintiffs' proposed class members are not alleged to have any injury—and thus have no standing—the class allegations should be stricken.

## IV.    **CONCLUSION**

For the foregoing reasons, Cintas respectfully requests that the Court enter an order striking the class allegations from the First Amended Class Action Complaint.

Respectfully submitted,

*/s/ William A. Posey*

William A. Posey (0021821)
Drew M. Hicks (0076481)
William N. Minor (0084153)
Bryce J. Yoder (0089816)
KEATING MUETHING & KLEKAMP PLL
One E. Fourth Street, Suite 1400
Cincinnati, Ohio 45202
Tel: 513.579.6400
Fax: 513.579.6457
wposey@kmklaw.com
dhicks@kmklaw.com
wminor@kmklaw.com
byoder@kmklaw.com

*Attorneys for Defendant, Cintas Corp. No. 2*


## CERTIFICATE OF SERVICE

I certify that on March 18, 2021, I electronically filed the foregoing using the Court's CM/ECF system.   Electronic notification will be sent to all parties/attorneys of record by operation of the Court's electronic filing system.

/s/ *William A. Posey*
William A. Posey

10671289