**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| THOMAS BEARUP, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:21-cv-00151-MWM |
| | ) | |
| v. | ) | Honorable Judge Matthew W. McFarland |
| | ) | |
| CINTAS CORPORATION NO. 2 a/k/a | ) | **PLAINTIFF'S SECOND AMENDED** |
| CINTAS CORP. NO. 2 and DOES 1-20, | ) | **CLASS ACTION COMPLAINT WITH** |
| inclusive, | ) | **JURY DEMAND** |
| | ) | |
| Defendants. | ) | |

Now come the Plaintiffs, THOMAS BEARUP, *et al.* (all of whom are collectively referred to herein as "Plaintiffs"), by and through their attorneys, and for their Second Amended Class Action Complaint against the Defendant, CINTAS CORPORATION NO. 2 a/k/a CINTAS CORP. NO. 2 (hereafter "Cintas"), Plaintiffs allege and state as follows:

## INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and all similarly-situated individuals who are "above-the-wing" flight attendants and customer-service agents, and "below the wing" operations agents working for Southwest Airlines (hereafter "Southwest") and who have been required to wear specific company-branded uniforms which were introduced in 2018 (hereafter, the "Uniforms"), which were manufactured, designed, developed, manufactured, tested, promoted, packaged, marketed, distributed, and sold by Cintas and/or its agents.

2.     Since the introduction of the Uniforms in 2017, Southwest employees, including Plaintiffs, began suffering a myriad of health problems from the uniforms including, but not limited to, itchiness, rashes, hives, coughing, trouble breathing, tightness of the chest, hair loss, ear pain, blurry vision, anxiety, fatigue, and lethargy. The reactions to the Uniforms have become

so severe that many Southwest employees are forced to miss work and seek medical attention. Other Southwest employees fear reprimand and are hesitant to complain about their Uniforms, instead choosing to suffer in silence. It is estimated that over 20,000 flight attendants, customer-service agents, and operations agents wear pieces from the Uniforms' collection.

3.      Plaintiffs seek damages as set forth below for their personal injuries, pain and suffering, severe emotional distress, property damages, financial or economic loss, including medical services and expenses, lost income, and other compensable injuries.

4.      Plaintiffs further seek injunctive relief to require Cintas to recall the Uniforms so that they do not present a continuing risk of toxic exposure. Plaintiffs also ask Cintas to establish a monitoring program to periodically assess whether the Uniforms have or are adversely affecting his health so that timely and necessary treatment may be administered.

5.      Plaintiffs allege as follows as to themselves, upon personal knowledge of their own facts and experiences, and as to all other matters, upon information and belief, including investigation conducted by their attorneys.

<u>**JURISDICTION AND VENUE**</u>

6.      Jurisdiction is proper under 28 U.S.C. § 1332(d)(2) because Plaintiffs, who are residents of 21 different states, seeks relief on behalf of a Class and 23 sub-classes, which will result in at least one class member belonging to a different state than that of Defendant, an Ohio corporation. Plaintiff also seeks damages which, when aggregated among a proposed class(es) of up to 20,000 members, exceeds the $5,000,000 threshold for federal court jurisdiction. Therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 are present, and this Court has jurisdiction.

7.      This Court has personal jurisdiction over Defendants because Cintas has its

principal place of business in this District.

8.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because Cintas resides in this district and is subject to this court's personal jurisdiction.

## PARTIES

9.    Plaintiff THOMAS BEARUP is a natural person and a Tennessee citizen, who is currently domiciled in Mount Juliet, Tennessee.

10.    Plaintiff ANTONIA (TONYA) OSBORNE is a natural person and a Florida citizen, who is currently domiciled in Melbourne, Florida.

11.    Plaintiff SONIA BOTTONA is a natural person and a Florida citizen, who is currently domiciled in Cocoa Beach, Florida.

12.    Additional Plaintiffs are identified below, and their respective allegations are expressly incorporated herein.

13.    Defendant Cintas Corporation No. 2 a/k/a Cintas Corp. No. 2 is a Nevada corporation with its headquarters and principal place of business located at 6800 Cintas Blvd., Cincinnati, Ohio.

14.    At all relevant times, Defendants were engaged in the business of designing, developing, manufacturing, testing, promoting, packaging, marketing, advertising, distributing, selling, and warranting Cintas products, including the Uniforms manufactured for Southwest employees throughout the United States of America.

15.    Cintas, and its parents, subsidiaries, and agents, are collectively referred to herein as "Cintas" or "Defendants." The true names and capacities of the Defendants sued herein as DOES 1-20, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the

unlawful acts alleged herein. Plaintiffs will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

16.     Plaintiffs are informed and believe that at all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants. Plaintiffs are informed and believe that each of the acts and/or omissions complained of herein was made known to, and ratified by, each of the other Defendants.

## FACTUAL BACKGROUND

### Southwest Introduces New Uniforms from Cintas

17.     On its website, Cintas describes itself as an industry leader in supplying corporate identity uniform programs and other specialized products and services to over one million customers that range from independent auto repair shops to large hotel chains. Cintas operates nearly 500 facilities in North America, including five manufacturing facilities and eleven distribution centers.

18.     In September 2014, Southwest introduced its new *Heart* logo and brand, which Southwest described as "showcasing the strength of the nearly 46,000 Employees Companywide—whose dedication can be felt by every Customer each time Southwest Airlines connects them to what's important in their life."[1]

19.     As part of the newly unveiled brand, Southwest created an "Employee Design Team," consisting of 43 Southwest employees, that worked with Cintas to create the designs of the company's new Uniforms.

---

[1]     https://community.southwest.com/t5/Blog/Southwest-Airlines-Unveils-Its-New-Look-Same-Heart/ba-p/2491.

20.     In 2016, Southwest publicly announced that Cintas would produce the airline's first uniform redesign in 20 years.

21.     The new Uniforms were intended to replace the previous casual look with an updated, bolder look. The previous navy and khaki uniform colors were replaced with hues featured in the brand's color palette, including bold blue, signature red, and summit silver.

22.      The new clothing collection included 75 separate pieces, allowing employees to mix and match the garments. Options for female flight attendants, customer service agents, and gate agents included shorts, slacks, a polo, and blouses in several colors, a skirt and two dresses—one charcoal gray with a narrow red stripe down the front, the other black with a swoosh of red and blue that is similar to the design of Southwest's planes. Male employees were able to choose among gray shorts and slacks, polo and button-down shirts, a gray dress vest and ties. Jackets were available for both men and women.

23.     The official launch of the new Uniforms occurred on or about June 18, 2017.

**Southwest Employees Experience Adverse Health Reactions**

24.     After the launch of the new Uniforms, Southwest employees began experiencing adverse health reactions including, but not limited to, itchiness, rashes, hives, coughing, fatigue, trouble breathing, tightness of the chest, hair loss, ear pain, blurry vision, anxiety, and lethargy.

25.     Based on information and belief, Southwest, Plaintiffs, and/or other Southwest employees notified Defendants of the adverse health reactions and conditions experienced by those who wore the Uniforms and came into contact with the Uniforms. Defendants were therefore on notice of the essence of the facts alleged herein well before Plaintiffs began this litigation.

**Facts Specific to Plaintiff Thomas Bearup**

26.     Plaintiff THOMAS BEARUP ("Bearup") is a 51-year-old male who began working

5

for Southwest in September 1997. Since then, Bearup has been employed as a flight attendant based out of Baltimore, Maryland.

27.    After the Uniforms were introduced in 2017, Bearup experienced adverse reactions to the Uniforms.

28.    Bearup started developing rashes and hive around his eyes, under his arms, and on the inside of his elbows. When he would sweat, it would feel like he had acid on his face. His nose would seep out a clear liquid that would later dry and crack. Bearup would also experience shortness of breath, exhaustion, and lethargy after wearing the Uniforms.

29.    Bearup typically worked for three consecutive days. However, after introduction of the Uniforms, Bearup would feel so ill at the end of his work schedule that he began cutting back on his hours. His symptoms would go away with a couple of days after taking off the Uniforms.

30.    In 2018, Bearup contacted Southwest to obtain a replacement uniform. However, he was unable to obtain a suitable replacement.

31.    Eventually, Bearups's reactions became so unbearable that he decided that he could no longer work.

**Facts Specific to Plaintiff (Antonia) Tonya Osborne**

32.    Plaintiff ANTONIA (TONYA) OSBORNE ("Osborne") is a 64-year-old female who began working for Southwest in September 1999. Since then, Osborne has been employed as a flight attendant based out of Orlando, Florida.

33.    Osborne started developing health problems in early 2018. In February 2018, Osborne started developing migraines and sinus infections. In May of 2018, she began breaking out in rashes all over her body. Her primary care doctor diagnosed her with hives and prescribed her a steroid treatment.

34.     Her steroid treatment provided her minimal relief, and she continued to experience rashes and blisters that made her skin feel like it was burning. Her reactions became so severe that she was forced to miss work. In order to avoid using up her sick leave, Osborne paid other flight attendants to pick up her flights, costing her hundreds of dollars.

35.     In September of 2018, Osborne submitted a request to Southwest for an alternative uniform, noting her financial hardships due to her many doctor visits and unavailability to work. Her dermatologist noted that if Osborne continued to wear her uniform, she would continue to suffer from severe rashes that may reduce her ability to perform her duties.

36.     Osborne was unable to obtain a suitable replacement from the alternative uniforms offered by Southwest. On one occasion, Osborne broke out in a rash after trying on an alternative blouse sent to her by Southwest.

37.     In January 2019, Osborne sent a request for approval for two shirts that she found on her own to Southwest's accommodations team. Her request was later approved.

38.     Despite her new alternative uniform, Osborne remained apprehensive about being near the previous Uniforms at work. On one occasion, Osborne ran into a colleague who was wearing the Uniform and gave her a hug, causing her to break out in a rash.

**Facts Specific to Plaintiff Sonia Bottona**

39.     Plaintiff SONIA BOTTONA ("Bottona") is a 58-year-old female who began working for Southwest in 2014. Since then, Bottona has been employed as a ground operations agent based out of Orlando, Florida.

40.     When Bottona was first employed by Southwest, she did not suffer any symptoms related to her previous uniform. However, soon after the Uniforms were introduced in 2017, Bottona started experiencing several symptoms including trouble breathing, coughing, fatigue,

headaches, rashes, hives, and tightness of the chest. In particular, Bottona started experiencing severe rashes on her arms, back, chest, and legs.

41.     Bottona tried several things to reduce her symptoms including changing her soap and taking medication including Benadryl, Cortisone, and Hydroxyzine, all to no success.

42.     Curious to learn the cause of her symptoms, Bottona began researching online and read from an online Facebook community that many other employees were experiencing similar symptoms. It was not until early 2020 that Bottona realized that her symptoms were caused by the new Uniforms.

43.     To this day, Bottona still wears the Uniforms, and she continues to suffer from the above symptoms to various degrees of severity.

**Facts Specific to Other Plaintiffs**

44.     Plaintiff KATRINA KIMBLE, a flight attendant, is a resident and citizen of Texas and is currently domiciled in Austin, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff KATRINA KIMBLE is a citizen of Texas. Plaintiff KATRINA KIMBLE is an employee of Southwest, and whose symptoms include coughing, fatigue, headaches, rashes, itchiness, brain fog, depression, easily agitated or angered, and fuzzy memory that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

45.     Plaintiff SELENA GONZALEZ, a customer service agent, is a resident and citizen of Texas and is currently domiciled in Midland, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff, SELENA GONZALEZ is a citizen of Texas. Plaintiff SELENA GONZALEZ is an employee of Southwest, and whose symptoms include fatigue, itchiness, bruising, anxiety, fuzzy memory, and chronic urinary tract infections that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

46.     Plaintiff CHRISTINE CARRANZA, a flight attendant, is a resident and citizen of Texas and is currently domiciled in San Antonio, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff CHRISTINE CARRANZA is a citizen of Texas. Plaintiff CHRISTINE CARRANZA is an employee of Southwest, and whose symptoms include coughing, fatigue, headaches, rashes, itchiness, hives, vocal chord dysfunction, and tightness of chest that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

47.     Plaintiff CINDY MCGREGOR, a flight attendant, is a resident and citizen of Texas and is currently domiciled in San Antonio, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff CINDY MCGREGOR is a citizen of Texas. Plaintiff CINDY MCGREGOR is an employee of Southwest, and whose symptoms include itchiness and rashes that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

48.     Plaintiff LINDA LOCKE, a flight attendant, is a resident and citizen of Texas and is currently domiciled in Grandbury, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff LINDA LOCKE is a citizen of Texas. Plaintiff LINDA LOCKE is an employee of Southwest, and whose symptoms include chest congestion, sinus infections, pneumonia, hives, itchiness, thyroid problems, hormone issues, and eyes sensitive to light that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

49.     Plaintiff SUSAN HATFIELD, a flight attendant, is a resident and citizen of Texas and is currently domiciled in Ft. Worth, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff SUSAN HATFIELD is a citizen of Texas. Plaintiff SUSAN HATFIELD is an employee of Southwest, and whose symptoms include joint pain, fatigue, rashes, itchiness, and emphysema that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

50.     Plaintiff BARB POOL, a flight attendant, is a resident and citizen of Texas and is

currently domiciled in Midlothian, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff BARB POOL is a citizen of Texas. Plaintiff BARB POOL is an employee of Southwest, and whose symptoms include rashes and itchiness that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

51.     Plaintiff LORI DELAFIELD, a flight attendant, is a resident and citizen of Texas and is currently domiciled in Dallas, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff LORI DELAFIELD is a citizen of Texas. Plaintiff LORI DELAFIELD is an employee of Southwest, and whose symptoms include itchiness, rashes, thyroid issues, and watery eyes that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

52.     Plaintiff TAMMY ROBERTS, a flight attendant, is a resident and citizen of Texas who is currently domiciled in Georgetown, Texas and who previously was domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff TAMMY ROBERTS is a citizen of Texas. Plaintiff TAMMY ROBERTS is an employee of Southwest, and whose symptoms include itchiness, rashes, and blisters that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

53.     Plaintiff KIM MCFARLAND, a flight attendant, is a resident and citizen of Texas and is currently domiciled in Houston, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff KIM MCFARLAND is a citizen of Texas. Plaintiff KIM MCFARLAND is an employee of Southwest, and whose symptoms include itchiness, rashes, and thyroid problems that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

54.     Plaintiff LORA PEARCE, a flight attendant, is a resident and citizen of Texas and is currently domiciled in Bee Cave, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff LORA PEARCE is a citizen of Texas. Plaintiff LORA PEARCE is an employee of Southwest, and whose

symptoms include itchiness, rashes, and hives that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

55.     Plaintiff KRISTIN SUMMERSELL, a flight attendant, is a resident and citizen of Texas and is currently domiciled in Frisco, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff KRISTIN SUMMERSELL is a citizen of Texas. Plaintiff KRISTIN SUMMERSELL is an employee of Southwest, and whose symptoms include itchiness, rashes, and severe facial and neck swelling that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

56.     Plaintiff KENDRA FAMIGLIO, a flight attendant, is a resident and citizen of Texas and is currently domiciled Keller, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff KENDRA FAMIGLIO is a citizen of Texas. Plaintiff KENDRA FAMIGLIO is an employee of Southwest, and whose symptoms include eye irritation and sinus problems that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

57.     Plaintiff CLAUDIA VERONICA GAYTON, a customer service agent, is a resident and citizen of Texas and is currently domiciled Grand Prairie, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff CLAUDIA VERONICA GAYTON is a citizen of Texas. Plaintiff CLAUDIA VERONICA GAYTON is an employee of Southwest, and whose symptoms include hives that did not occur until she was exposed to the Southwest's garments and is a result of said exposure.

58.     Plaintiff STEVEN THOMAS, a flight attendant, is a resident and citizen of Texas and is currently domiciled Dallas, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff STEVEN THOMAS is a citizen of Texas. Plaintiff STEVEN THOMAS is an employee of Southwest, and whose symptoms include rashes, itchiness, fatigue and hives that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

11

59.     Plaintiff LYNDA PREJNA is a resident and citizen of Texas and is currently domiciled in Cypress, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff LYNDA PREJNA is a citizen of Texas. Plaintiff LYNDA PREJNA is an employee of Southwest, and whose adverse symptoms did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

60.     Plaintiff LORI BLACK THRASH is a resident and citizen of Texas and is currently domiciled in Lorena, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff LORI BLACK THRASH is a citizen of Texas. Plaintiff LORI BLACK THRASH is an employee of Southwest, and whose adverse symptoms did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

61.     Plaintiff HEATHER DANIELLE EAST is a resident and citizen of Texas and is currently domiciled in Dallas, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff HEATHER DANIELLE EAST is a citizen of Texas. Plaintiff HEATHER DANIELLE EAST is an employee of Southwest, and whose adverse symptoms did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

62.     Plaintiff LYNN SCHWIRTZ is a resident and citizen of Texas and is currently domiciled in Dallas, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff LYNN SCHWIRTZ is a citizen of Texas. Plaintiff LYNN SCHWIRTZ is an employee of Southwest, and whose adverse symptoms did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

63.     Plaintiff THOMAS BOYD, a flight attendant, is a resident and citizen of Texas and is currently domiciled in in Arlington, Texas. For purposes of 28 U.S.C. § 1332, Plaintiff THOMAS BOYD is a citizen of Texas. Plaintiff THOMAS BOYD is an employee of Southwest,

and whose symptoms include headaches, rashes, itchiness, bruising, hives, and cysts that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

64.     Plaintiff MICHAEL BARNES, an operations agent, is a resident and citizen of Colorado and is currently domiciled in Denver, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff MICHAEL BARNES is a citizen of Colorado. Plaintiff MICHAEL BARNES is an employee of Southwest, and whose symptoms include rashes, itchiness, and hives that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

65.     Plaintiff MICHELLE DRAPER, a flight attendant, is a resident and citizen of Colorado and is currently domiciled in Pine, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff MICHELLE DRAPER is a citizen of Colorado. Plaintiff MICHELLE DRAPER is an employee of Southwest, and whose symptoms include itchy eyes, skin irritation, rashes, and easily fatigued that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

66.     Plaintiff SARA STOKES, a flight attendant, is a resident and citizen of Colorado and is currently domiciled in Johnstown, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff SARA STOKES is a citizen of Colorado. Plaintiff SARA STOKES is an employee of Southwest, and whose symptoms include itchiness, shingle-like rashes, and a constant sickly feeling that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

67.     Plaintiff VICKI JOHNSON, a flight attendant, is a resident and citizen of Colorado and is currently domiciled in Basalt, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff VICKI JOHNSON is a citizen of Colorado. Plaintiff VICKI JOHNSON is an employee of Southwest, and whose symptoms include itchiness, rashes, and baldness that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

68. Plaintiff KELLY WINK, a flight attendant, is a resident and citizen of Colorado and is currently domiciled in Basalt, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff KELLY WINK is a citizen of Colorado. Plaintiff KELLY WINK is an employee of Southwest, and whose symptoms include itchiness, rashes, and hair loss that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

69. Plaintiff HEIDI WATSON, a flight attendant, is a resident and citizen of Colorado and is currently domiciled in Basalt, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff HEIDI WATSON is a citizen of Colorado. Plaintiff HEIDI WATSON is an employee of Southwest, and whose symptoms include itchiness, rashes, and hair loss that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

70. Plaintiff MATTHEW LANCLOS, a flight attendant, is a resident and citizen of Colorado and is currently domiciled in Commerce City, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff MATTHEW LANCLOS is a citizen of Colorado. Plaintiff MATTHEW LANCLOS is an employee of Southwest, and whose symptoms include rashes that did not occur until he was exposed to the Southwest's garments and is a result of said exposure.

71. Plaintiff JULIE JOHNSON, a flight attendant, is a resident and citizen of Colorado and is currently domiciled in Fort Collins, Colorado. For purposes of 28 U.S.C. § 1332, Plaintiff JULIE JOHNSON is a citizen of Colorado. Plaintiff JULIE JOHNSON is an employee of Southwest, and whose symptoms include rashes, skin irritation, hair loss, headaches, dizziness, tinnitus, lung and respiratory issues that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

72. Plaintiff JOHNETTA MORGAN, a flight attendant, is a resident and citizen of Florida and is currently domiciled in Miami, Florida. For purposes of 28 U.S.C. § 1332, Plaintiff

JOHNETTA MORGAN is a citizen of Florida. Plaintiff JOHNETTA MORGAN is an employee of Southwest, and whose symptoms include itchy skin on her legs, stomach, breasts, and back that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

73.     Plaintiff EDLYN OSAM, a flight attendant, is a resident and citizen of Florida and is currently domiciled in Miami, Florida. For purposes of 28 U.S.C. § 1332, Plaintiff EDLYN OSAM is a citizen of Florida. Plaintiff EDLYN OSAM is an employee of Southwest, and whose symptoms include rashes and a miscarriage that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

74.     Plaintiff BRAD SCHMIDT, a flight attendant, is a resident and citizen of Florida and is currently domiciled in Orlando, Florida. For purposes of 28 U.S.C. § 1332, Plaintiff BRAD SCHMID, is a citizen of Florida. Plaintiff BRAD SCHMIDT is an employee of Southwest, and whose symptoms include rashes, itchiness, eye problems including loss of eyelashes that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

75.     Plaintiff DENNIS O'BRIEN, a flight attendant, is a resident and citizen of Florida and is currently domiciled Orlando, Florida. For purposes of 28 U.S.C. § 1332, Plaintiff DENNIS O'BRIEN is a citizen of Florida. Plaintiff DENNIS O'BRIEN is an employee of Southwest, and whose symptoms include coughing, fatigue, headaches, rashes, itchiness, and hives that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

76.     Plaintiff CANDILYN INOS, a flight attendant, is a resident and citizen of California and is currently domiciled in Oakland, California. For purposes of 28 U.S.C. § 1332, Plaintiff CANDILYN INOS is a citizen of California. Plaintiff CANDILYN INOS is an employee of Southwest, and whose symptoms include rashes, itchiness, and hives that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

77.     Plaintiff SUZANNE KERST, a flight attendant, is a resident and citizen of California and is currently domiciled in Sacramento, California. For purposes of 28 U.S.C. § 1332, Plaintiff SUZANNE KERST is a citizen of California. Plaintiff SUZANNE KERST is an employee of Southwest, and whose symptoms include fatigue, headaches, itchiness, anxiety, fuzzy memory, and cysts that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

78.     Plaintiff PAMELA MASTEN, a flight attendant, is a resident and citizen of California and is currently domiciled in Salida, California. For purposes of 28 U.S.C. § 1332, Plaintiff PAMELA MASTEN is a citizen of California. Plaintiff PAMELA MASTEN is an employee of Southwest, and whose symptoms include rashes and anxiety that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

79.     Plaintiff SAMMY REYNAERT, a ground operations agent, is a resident and citizen of California and is currently domiciled in Fontana, California. For purposes of 28 U.S.C. § 1332, Plaintiff SAMMY REYNAERT is a citizen of California. Plaintiff SAMMY REYNAERT is an employee of Southwest, and whose symptoms include rashes and itchiness that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

80.     Plaintiff LORI EICHOLZER, a flight attendant, is a resident and citizen of California and is currently domiciled in Los Angeles, California. For purposes of 28 U.S.C. § 1332, Plaintiff LORI EICHOLZER is a citizen of California. Plaintiff LORI EICHOLZER is an employee of Southwest, and whose symptoms include rashes, itchiness that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

81.     Plaintiff PATRICIA GONZALEZ, a flight attendant, is a resident and citizen of California and is currently domiciled in San Diego, California. For purposes of 28 U.S.C. § 1332,

Plaintiff PATRICIA GONZALEZ is a citizen of California. Plaintiff PATRICIA GONZALEZ is an employee of Southwest, and whose symptoms include fatigue, rashes, hives, and coughing that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

82.     Plaintiff ANTHONY RIPLEY, a flight attendant, is a resident and citizen of California and is currently domiciled Los Angeles, California. For purposes of 28 U.S.C. § 1332, Plaintiff ANTHONY RIPLEY is a citizen of California. Plaintiff ANTHONY RIPLEY is an employee of Southwest, and whose symptoms include headaches and itchiness that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

83.     Plaintiff DANIELLE ROBERTS, a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff DANIELLE ROBERTS is a citizen of Illinois. Plaintiff DANIELLE ROBERTS is an employee of Southwest, and whose symptoms include fatigue, headaches, tightness of chest, yeast infections that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

84.     Plaintiff DELORES NARANCICH, a flight attendant, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff DELORES NARANCICH is a citizen of Illinois. Plaintiff DELORES NARANCICH is an employee of Southwest, and whose symptoms include headaches, rashes, itchiness, bruising, hives, and cysts that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

85.     Plaintiff DAVID ROBERTS, a manager, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff DAVID ROBERTS is a citizen of Illinois. Plaintiff DAVID ROBERTS is an employee of Southwest, and

whose symptoms include trouble breathing, rashes, itchiness, tightness of chest, and anxiety that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

86.     Plaintiff JEIRY ESCOBAR, an operations agent, is a resident and citizen of Illinois and is currently domiciled in Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff JEIRY ESCOBAR is a citizen of Illinois. Plaintiff JEIRY ESCOBAR is an employee of Southwest, and whose symptoms include headaches, rashes, and itchiness that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

87.     Plaintiff ARUNA VALLABHANENI, a flight attendant, is a resident and citizen of Illinois and is currently domiciled Chicago, Illinois. For purposes of 28 U.S.C. § 1332, Plaintiff ARUNA VALLABHANENI is a citizen of Illinois. Plaintiff ARUNA VALLABHANENI is an employee of Southwest, and whose symptoms include rashes, hair loss, and bruising that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

88.     Plaintiff LOUISE MCDONOUGH, a flight attendant, is a resident and citizen of Nevada and is currently domiciled in Henderson, Nevada. For purposes of 28 U.S.C. § 1332, Plaintiff LOUISE MCDONOUGH is a citizen of Nevada. Plaintiff LOUISE MCDONOUGH is an employee of Southwest, and whose symptoms include rashes, and itchiness that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

89.     Plaintiff TERRY SMITH, a flight attendant, is a resident and citizen of Nevada and is currently domiciled in Henderson, Nevada. For purposes of 28 U.S.C. § 1332, Plaintiff TERRY SMITH is a citizen of Nevada. Plaintiff TERRY SMITH is an employee of Southwest, and whose symptoms include rashes, bleeding, and itchiness that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

90.     Plaintiff JODY AVENT, a flight attendant, is a resident and citizen of Nevada and

is currently domiciled in Las Vegas, Nevada. For purposes of 28 U.S.C. § 1332, Plaintiff JODY AVENT is a citizen of Nevada. Plaintiff JODY AVENT is an employee of Southwest, and whose symptoms include itchiness, rashes, constant cough, vertigo, elevated blood pressure, joint pain, sinus infections, migraines, and eye irritation that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

91.   Plaintiff ELLENOR ROYAL, a flight attendant, is a resident and citizen of Nevada and is currently domiciled in Reno, Nevada. For purposes of 28 U.S.C. § 1332, Plaintiff ELLENOR ROYAL is a citizen of Nevada. Plaintiff ELLENOR ROYAL is an employee of Southwest, and whose symptoms include itchiness, rashes, and hives that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

92.   Plaintiff MARSHA ELLIOT, a flight attendant, is a resident and citizen of Nevada and is currently domiciled in Las Vegas, Nevada. For purposes of 28 U.S.C. § 1332, Plaintiff MARSHA ELLIOT is a citizen of Nevada. Plaintiff MARSHA ELLIOT is an employee of Southwest, and whose symptoms include welts, rashes, auto immune issues, and headaches that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

93.   Plaintiff KELLI CRAWFORD, a flight attendant, is a resident and citizen of Arizona and is currently domiciled in Gilbert, Arizona. For purposes of 28 U.S.C. § 1332, Plaintiff KELLI CRAWFORD is a citizen of Arizona. Plaintiff KELLI CRAWFORD is an employee of Southwest, and whose symptoms include drowsiness, chronic headaches, rashes, itchiness, night sweats, trouble breathing that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

94.   Plaintiff LOGAN MODROVSKY, a ramp agent, is a resident and citizen of Arizona and is currently domiciled in Phoenix, Arizona. For purposes of 28 U.S.C. § 1332,

Plaintiff LOGAN MODROVSKY is a citizen of Arizona. Plaintiff LOGAN MODROVSKY is an employee of Southwest, and whose symptoms include rashes, hives, chest pain, headaches, and itchiness that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

95.     Plaintiff MICHAEL JONES, a flight attendant, is a resident and citizen of Arizona and is currently domiciled in Phoenix, Arizona. For purposes of 28 U.S.C. § 1332, Plaintiff MICHAEL JONES is a citizen of Arizona. Plaintiff MICHAEL JONES is an employee of Southwest, and whose symptoms include fatigue, headaches, asthma, other dizziness lightheaded and nausea that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

96.     Plaintiff CHARLA CHILCOTT, a flight attendant, is a resident and citizen of Arizona and is currently domiciled in Mesa, Arizona. For purposes of 28 U.S.C. § 1332, Plaintiff CHARLA CHILCOTT is a citizen of Arizona. Plaintiff CHARLA CHILCOTT is an employee of Southwest, and whose symptoms include severe rashes, blisters, cellulitis, staphylococcus, and pemphigus that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

97.     Plaintiff TARA FARNSWORTH, a flight attendant, is a resident and citizen of Arizona and is currently domiciled in Phoenix, Arizona. For Case purposes of 28 U.S.C. § 1332, Plaintiff TARA FARNSWORTH is a citizen of Arizona. Plaintiff TARA FARNSWORTH is an employee of Southwest, and whose symptoms include itchiness, rashes, and hair loss that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

98.     Plaintiff KAYLENE LUJAN, a flight attendant, is a resident and citizen of New Mexico and is currently domiciled in Albuquerque, New Mexico. For purposes of 28 U.S.C. §

1332, Plaintiff KAYLENE LUJAN is a citizen of New Mexico. Plaintiff KAYLENE LUJAN is an employee of Southwest, and whose symptoms include itchiness, rashes, and severe skin infections that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

99.     Plaintiff STEPHANIE METCALF, a flight attendant, is a resident and citizen of New Mexico and is currently domiciled in Albuquerque, New Mexico. For purposes of 28 U.S.C. § 1332, Plaintiff STEPHANIE METCALF is a citizen of New Mexico. Plaintiff STEPHANIE METCALF is an employee of Southwest, and whose symptoms include itchiness, rashes, and hives that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

100.     Plaintiff BRANDY ROLAND, a flight attendant, is a resident and citizen of New Mexico and is currently domiciled in Albuquerque, New Mexico. For purposes of 28 U.S.C. § 1332, Plaintiff BRANDY ROLAND is a citizen of New Mexico. Plaintiff BRANDY ROLAND is an employee of Southwest, and whose symptoms include itchiness, rashes, and thyroid issues that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

101.     Plaintiff DOLORES CHANCE, a flight attendant, is a resident and citizen of New Mexico and is currently domiciled in New Mexico. For purposes of 28 U.S.C. § 1332, Plaintiff DOLORES CHANCE is a citizen of New Mexico. Plaintiff DOLORES CHANCE is an employee of Southwest, and whose symptoms include trouble breathing, coughing, headaches, asthma, and cysts that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

102.     Plaintiff JUDY GILLAND, a flight attendant, is a resident and citizen of Tennessee and is currently domiciled in Watertown, Tennessee. For purposes of 28 U.S.C. § 1332, Plaintiff

JUDY GILLAND is a citizen of Tennessee. Plaintiff JUDY GILLAND is an employee of Southwest, and whose symptoms include itchiness, rashes, memory loss, and weight gain that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

103.    Plaintiff MARK JONES, a flight attendant, is a resident and citizen of Maryland and is currently domiciled in Baltimore, Maryland. For purposes of 28 U.S.C. § 1332, Plaintiff MARK JONES is a citizen of Maryland. Plaintiff MARK JONES is an employee of Southwest, and whose symptoms include fatigue, headaches, rashes, itchiness, and easily agitated or angered that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

104.    Plaintiff ANDREA CARTER, a flight attendant, is a resident and citizen of Maryland and is currently domiciled in Pasadena, Maryland. For purposes of 28 U.S.C. § 1332, Plaintiff ANDREA CARTER is a citizen of Maryland. Plaintiff ANDREA CARTER is an employee of Southwest, and whose symptoms include rashes, itchiness, and vocal cord dysfunction that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

105.    Plaintiff LORI KEIFER, a flight attendant, is a resident and citizen of Ohio and is currently domiciled in Elyria, Ohio. For purposes of 28 U.S.C. § 1332, Plaintiff LORI KEIFER is a citizen of Ohio. Plaintiff LORI KEIFER is an employee of Southwest, and whose symptoms include itchiness, rashes, and ovarian cancer that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

106.    Plaintiff MELISSA OLEFF, a flight attendant, is a resident and citizen of Ohio and is currently domiciled Bay Village, Ohio. For purposes of 28 U.S.C. § 1332, Plaintiff MELISSA OLEFF is a citizen of Ohio. Plaintiff MELISSA OLEFF is an employee of Southwest, and whose

symptoms include rashes, psoriasis, vitiligo, fatigue, joint pain, and depression that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

107.    Plaintiff SHARON LANCASTER, a flight attendant, is a resident and citizen of Oklahoma and is currently domiciled Tulsa, Oklahoma. For purposes of 28 U.S.C. § 1332, Plaintiff SHARON LANCASTER is a citizen of Oklahoma. Plaintiff SHARON LANCASTER is an employee of Southwest, and whose symptoms include shortness of breath, hair loss, sinus problems, and body soreness that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

108.    Plaintiff BRANDI WILLIS, a flight attendant, is a resident and citizen of Oklahoma and is currently domiciled in Tulsa, Oklahoma. For purposes of 28 U.S.C. § 1332, Plaintiff BRANDI WILLIS is a citizen of Oklahoma. Plaintiff BRANDI WILLIS is an employee of Southwest, and whose symptoms include rashes, itchiness, and hives that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

109.    Plaintiff BRITIN STONE, a flight attendant, is a resident and citizen of Oklahoma and is currently domiciled in Tulsa, Oklahoma. For purposes of 28 U.S.C. § 1332, Plaintiff BRITIN STONE is a citizen of Oklahoma. Plaintiff BRITIN STONE is an employee of Southwest, and whose symptoms include rashes and itchiness that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

110.    Plaintiff ERIC HOLT, a flight attendant, is a resident and citizen of Missouri and is currently domiciled in Cottleville, Missouri. For purposes of 28 U.S.C. § 1332, Plaintiff ERIC HOLT is a citizen of Missouri. Plaintiff ERIC HOLT is an employee of Southwest, and whose symptoms include itchiness, rashes, weight loss, fatigue, rheumatoid arthritis, psoriatic arthritis, and diagnosis of Graves' Disease that did not occur until he was exposed to the Southwest's

garments and are a result of said exposure.

111.    Plaintiff LINDA LOCKHART, a flight attendant, is a resident and citizen of Idaho and is currently domiciled in Rathdrum, Idaho. For purposes of 28 U.S.C. § 1332, Plaintiff LINDA LOCKHART is a citizen of Idaho. Plaintiff LINDA LOCKHART is an employee of Southwest, and whose symptoms include rashes, and itchiness that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

112.    Plaintiff AVA ALLEY, a flight attendant, is a resident and citizen of Arkansas and is currently domiciled in Benton, Arkansas. For purposes of 28 U.S.C. § 1332, Plaintiff AVA ALLEY is a citizen of Arkansas. Plaintiff AVA ALLEY is an employee of Southwest, and whose symptoms include headaches, fatigue, low thyroid, hair loss, and liver damage that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

113.    Plaintiff ASHLEY STOVALL, a flight attendant, is a resident and citizen of Indiana and is currently domiciled Indianapolis, Indiana. For purposes of 28 U.S.C. § 1332, Plaintiff ASHLEY STOVALL is a citizen of Indiana. Plaintiff ASHLEY STOVALL is an employee of Southwest, and whose symptoms include rashes and itchiness that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

114.    Plaintiff PAIGE STAUDERMAIER, a flight attendant, is a resident and citizen of Oregon and is currently domiciled in Happy Valley, Oregon. For purposes of 28 U.S.C. § 1332, Plaintiff PAIGE STAUDERMAIER is a citizen of Oregon. Plaintiff PAIGE STAUDERMAIER is an employee of Southwest, and whose symptoms include itchiness, rashes, and shortness of breath that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

115.    Plaintiff SARAH DANIELS, a flight attendant, is a resident and citizen of

Washington and is currently domiciled in Tacoma, Washington. For purposes of 28 U.S.C. § 1332, Plaintiff, SARAH DANIELS, is a citizen of Washington. Plaintiff SARAH DANIELS is an employee of Southwest, and whose symptoms include itchiness, rashes, and burns under armpits that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

116.     Plaintiff TERRANCE ROSS, a flight attendant, is a resident and citizen of Louisiana and is currently domiciled in New Orleans, Louisiana. For purposes of 28 U.S.C. § 1332, Plaintiff TERRANCE ROSS is a citizen of Louisiana. Plaintiff TERRANCE ROSS is an employee of Southwest, and whose symptoms include itchiness, vocal chord dysfunction, and chest tightness that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

117.     Plaintiff DANITA NORFLEET, a flight attendant, is a resident and citizen of Georgia and is currently domiciled in Union City, Georgia. For purposes of 28 U.S.C. § 1332, Plaintiff DANITA NORFLEET is a citizen of Georgia. Plaintiff DANITA NORFLEET is an employee of Southwest, and whose symptoms include fatigue, headaches, rashes, itchiness, scarring and cysts that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

118.     Plaintiff JAMES ANDREWS, a flight attendant, is a resident and citizen of South Carolina, who is currently domiciled in South Carolina and who previously was domiciled in Greenwood, Indiana. For purposes of 28 U.S.C. § 1332, Plaintiff JAMES ANDREWS is a citizen of South Carolina. Plaintiff JAMES ANDREWS is an employee of Southwest, and whose symptoms include fatigue, itchiness, trouble concentrating, and being easily agitated or angered that did not occur until he was exposed to the Southwest's garments and are a result of said

exposure.

119.     Plaintiff CATHERINE MCGOVERN, a flight attendant, is a resident and citizen of Minnesota who is currently domiciled in Minnesota. For purposes of 28 U.S.C. § 1332, Plaintiff CATHERINE MCGOVERN is a citizen of Minnesota. Plaintiff CATHERINE MCGOVERN is an employee of Southwest, and whose symptoms include itchiness, rashes, hair loss, joint pain, and blurred vision that did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

120.     Plaintiff ALEXANDER MANSI, a flight attendant, is a resident and citizen of Massachusetts who is currently domiciled in Massachusetts. For purposes of 28 U.S.C. § 1332, Plaintiff ALEXANDER MANSI is a citizen of Massachusetts. Plaintiff ALEXANDER MANSI is an employee of Southwest, and whose symptoms include rashes, itchiness, and scars that did not occur until he was exposed to the Southwest's garments and are a result of said exposure.

121.     Plaintiff CARRIE CHOI is an employee of Southwest, adverse symptoms did not occur until she was exposed to the Southwest's garments and are a result of said exposure.

122.     The above-listed Plaintiffs are collectively referred to herein as "Plaintiffs".

## CLASS ACTION ALLEGATIONS

123.     Plaintiffs bring this action individually and on behalf of all others similarly situated, as members of the proposed Class and Sub-Classes defined below, pursuant to Federal Rule of Civil Procedure 23(b)(3).

124.     The Class (hereafter "the Class") is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in the United States who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

125.     Plaintiffs     KATRINA     KIMBLE,     SELENA     GONZALEZ,     CHRISTINE

CARRANZA, CINDY MCGREGOR, LINDA LOCKE, SUSAN HATFIELD, BARB POOL, LORI DELAFIELD, TAMMY ROBERTS, KIM MCFARLAND, LORA PEARCE, KRISTIN SUMMERSELL, KENDRA FAMIGLIO, CLAUDIA VERONICA GAYTON, STEVEN THOMAS, LYNDA PREJNA, LORI BLACK THRASH, HEATHER DANIELLE EAST, LYNN SCHWIRTZ, and THOMAS BOYD bring this action on behalf of a Sub-Class (hereafter "the Texas Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Texas who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

126. Plaintiffs MICHAEL BARNES, MICHELLE DRAPER, SARA STOKES, VICKI JOHNSON, KELLY WINK, HEIDI WATSON, MATTHEW LANCLOS, and JULIE JOHNSON bring this action on behalf of a Sub-Class (hereafter "the Colorado Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Colorado who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

127. Plaintiffs ANTONIA (TONYA) OSBORNE, SONIA BOTTONA, JOHNETTA MORGAN, EDLYN OSAM, BRAD SCHMIDT, and DENNIS O'BRIEN bring this action on behalf of a Sub-Class (hereafter "the Florida Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Florida who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

128. Plaintiffs CANDILYN INOS, SUZANNE KERST, PAMELA MASTEN, SAMMY REYNAERT, LORI EICHOLZER, PATRICIA GONZALEZ, and ANTHONY RIPLEY bring this action on behalf of a Sub-Class (hereafter "the California Class"), which is

defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in California who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

129. Plaintiffs DANIELLE ROBERTS, DELORES NARANCICH, DAVID ROBERTS, JEIRY ESCOBAR, ARUNA VALLABHANENI, and TAMMY ROBERTS bring this action on behalf of a Sub-Class (hereafter "the Illinois Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Illinois who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

130. Plaintiffs LOUISE MCDONOUGH, TERRY SMITH, JODY AVENT, ELLENOR ROYAL, and MARSHA ELLIOT bring this action on behalf of a Sub-Class (hereafter "the Nevada Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Nevada who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

131. Plaintiffs KELLI CRAWFORD, LOGAN MODROVSKY, MICHAEL JONES, CHARLA CHILCOTT, and TARA FARNSWORTH bring this action on behalf of a Sub-Class (hereafter "the Arizona Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Arizona who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

132. Plaintiffs KAYLENE LUJAN, STEPHANIE METCALF, BRANDY ROLAND, and DOLORES CHANCE bring this action on behalf of a Sub-Class (hereafter "the New Mexico Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in New Mexico who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

133.   Plaintiffs THOMAS BEARUP and JUDY GILLAND bring this action on behalf of a Sub-Class (hereafter "the Tennessee Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Tennessee who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

134.   Plaintiffs THOMAS BEARUP, ANDREA CARTER, and MARK JONES bring this action on behalf of a Sub-Class (hereafter "the Maryland Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Maryland who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

135.   Plaintiffs LORI KEIFER and MELISSA OLEFF bring this action on behalf of a Sub-Class (hereafter "the Ohio Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Ohio who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

136.   Plaintiffs SHARON LANCASTER, BRANDI WILLIS, and BRITIN STONE bring this action on behalf of a Sub-Class (hereafter "the Oklahoma Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Oklahoma who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

137.   Plaintiff ERIC HOLT brings this action on behalf of a Sub-Class (hereafter "the Missouri Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Missouri who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

138. Plaintiff LINDA LOCKHART brings this action on behalf of a Sub-Class (hereafter "the Idaho Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Idaho who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

139. Plaintiff AVA ALLEY brings this action on behalf of a Sub-Class (hereafter "the Arkansas Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Arkansas who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

140. Plaintiffs ASHLEY STOVALL and JAMES ANDREWS bring this action on behalf of a Sub-Class (hereafter "the Indiana Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Indiana who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

141. Plaintiff PAIGE STAUDERMAIER brings this action on behalf of a Sub-Class (hereafter "the Oregon Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Oregon who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

142. Plaintiff SARAH DANIELS brings this action on behalf of a Sub-Class (hereafter "the Washington Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents

> employed by Southwest in Washington who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

143. Plaintiff TERRANCE ROSS brings this action on behalf of a Sub-Class (hereafter "the Louisiana Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Louisiana who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

144. Plaintiff DANITA NORFLEET brings this action on behalf of a Sub-Class (hereafter "the Georgia Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Georgia who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

145. Plaintiff CATHERINE MCGOVERN brings this action on behalf of a Sub-Class (hereafter "the Minnesota Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Minnesota who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

146. Plaintiff JAMES ANDREWS bring this action on behalf of a Sub-Class (hereafter "the South Carolina Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in South Carolina who were required to wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

147. Plaintiff ALEXANDER MANSI bring this action on behalf of a Sub-Class (hereafter "the Massachusetts Class"), which is defined as follows:

> All flight attendants, customer-service agents, and operations agents employed by Southwest in Massachusetts who were required to

wear *Heart* branded uniforms (the "Uniforms") manufactured by Cintas and/or its agents or vendors.

148. The Texas class, the Colorado class, the Florida class, the California class, the Illinois class, the Nevada class, the Arizona class, the New Mexico class, the Tennessee class, the Maryland class, the Ohio class, the Oklahoma class, the Missouri class, the Idaho class, the Arkansas class, the Indiana class, the Oregon class, the Washington class, the California class, the Georgia class, the Minnesota class, the South Carolina class, and the Massachusetts class are collectively referred to herein as "the Sub-Classes."

149. Excluded from the Class are : (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

150. **Numerosity:** The exact number of members of the Class and the Sub-Classes is unknown and unavailable to Plaintiffs at this time, and can only be ascertained through appropriate discovery, but individual joinder in this case is impracticable. The Class and the Sub-Classes likely consist of thousands of individuals, and their members can be identified through Defendants' records.

151. **Predominant Common Questions:** The Class and the Sub-Classes' members' claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class and Sub-Class members. These common legal and factual questions, which do not vary between The Class and Sub-Class members, and which may

be determined without reference to the individual circumstances of any members of the Class and Sub-Classes, include, but are not limited to, the following:

    a.    Questions related to the design, manufacturing, distribution, and labeling of the Uniforms;

    b.    Whether the Uniforms caused adverse health reactions to the Class and Sub-Classes' members;

    c.    Whether the conduct of Defendants breached various express and implied warranties;

    d.    Whether the conduct of Defendants was negligent;

    e.    Whether Defendants should be held strictly liable for designing and manufacturing dangerous uniforms, and failing to warn of their dangers; and

    f.    Whether the Class and Sub-Classes' members are entitled to monetary and equitable relief from Defendants.

152.    **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class. The claims of the representative Plaintiffs for each of the Sub-Classes are typical of the claims of the other members of those Sub-Classes. Plaintiffs and the other members of the Class and the Sub-Classes have suffered similar injuries by the same wrongful practices of Defendants. The claims of Plaintiffs and the other members of the Class and the Sub-Classes all arise from the same wrongful practices and course of conduct, and are based on the same legal and remedial theories.

153.    **Adequate Representation:** Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and the Sub-Classes, and have retained

counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to the other members of the Class and the Sub-Classes, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class and the Sub-Classes.

154.    **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class and the Sub-Classes is not economically feasible and is procedurally impracticable. While the aggregate damages sustained by the members of the Class and the Sub-Classes are in the millions of dollars, and are no less than $5,000,000, upon information and belief, the individual damages occurred by many members of the Class and the Sub-Classes resulting from Defendants' wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual members of the Class and the Sub-Classes prosecuting their own separate claims is remote, and, even if every Class and Sub-Class member could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases. Individual members of the Class and the Sub-Classes do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and to the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action which would preclude its maintenance as a class action. In addition, Defendants have acted or refused to act on grounds generally applicable to the members of the Class and the Sub-Classes and, as such, final

injunctive relief or corresponding declaratory relief with regard to the members of the Class and the Sub-Classes as a whole is appropriate.

<div align="center">

**COUNT I**
**NEGLIGENCE**
**(On Behalf of all Plaintiffs and the Class)**

</div>

155.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

156.  This claim is brought on behalf of all Plaintiffs and the Class.

157.  Defendants owed a duty to Plaintiffs and the Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

158.  Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

   a.  Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including Plaintiffs and the Class, who wore the Uniforms and brought them into their homes;

   b.  Failing to adequately warn Plaintiffs and the Class that the use of the Uniforms could result in adverse health effects; and

   c.  Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to

avoid an unreasonable risk of harm to Southwest employees, including the Plaintiffs and the Class, who wore the Uniforms and brought them into their homes.

159.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, Plaintiffs and the Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT II**
**DESIGN DEFECT**
**(On Behalf of all Plaintiffs and the Class)**

160.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

161.    This claim is brought on behalf of Plaintiffs and the Class.

162.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

163.    The Uniforms were defectively designed so as to render them unreasonably dangerous to Plaintiffs and the Class.

164.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

165.    A safer design and other products existed which could achieve similar results without the risks presented by the Uniforms.

166.    The Uniforms were expected to and did reach Plaintiffs and the Class without substantial change in the condition in which they were sold.

167.    The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

168.    The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

169.    At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to Plaintiffs and the Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk and amount of injuries to Plaintiffs and the Class without substantially impairing the Uniforms' utility.

170.    Defendants' defective design of the Uniforms was a producing cause of the damages and injuries Plaintiffs and the Class have suffered and/or in the future will suffer, which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT III
## MANUFACTURING DEFECT
### (On Behalf of all Plaintiffs and the Class)

171.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

172.    This claim is brought on behalf of all Plaintiffs and the Class.

173.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

174.    A manufacturing defect existed in the Uniforms which deviated, in their construction and/or quality, from the specifications or planned output in a manner that rendered the Uniforms unreasonably dangerous to Plaintiffs and the Class.

175.    The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to Plaintiffs and the Class.

176.    As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, Plaintiffs and the Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT IV
### FAILURE TO WARN
**(On Behalf of all Plaintiffs and the Class)**

177.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

178.    This claim is brought on behalf of all Plaintiffs and the Class.

179.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

180.    At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the foreseeable risks arising from their use.

181.    At the time the Uniforms left Defendants' control, they were unreasonably dangerous and not reasonably safe for their intended use due to the lack of warnings of the foreseeable risks arising from their use.

182.    Defendants had a duty to warn Plaintiffs and the Class of the foreseeable risks arising from the use of the Uniforms.

183.    Defendants failed to adequately warn Plaintiffs and the Class that the use of the Uniforms could result in severe adverse health effects.

184.    At all times relevant hereto, Defendants intended for the Southwest employees, including Plaintiffs and the Class, to wear the Uniforms.

185.    The Uniforms were used and worn by Plaintiffs and the Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

186.    At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

187.    Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

188.    Had Defendants adequately warned of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

189.    As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, Plaintiffs and the Class have suffered and/or in the future will suffer injuries and

damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT V
## BREACH OF EXPRESS WARRANTY
### (On Behalf of all Plaintiffs and the Class)

190.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

191.     This claim is brought on behalf of Plaintiffs and the Class.

192.     Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

        a.     That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

        b.     That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

        c.     That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

193.     The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

194.    Plaintiffs and the Class are intended third-party beneficiaries of Cintas's warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefits of the express warranties described above were lost. Consequently, Plaintiffs and the Class are and were in privity of contract with Defendants.

195.    Southwest, Plaintiffs, and the Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation to the Uniforms.

196.    Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of Plaintiffs and the Class.

197.    As a direct and proximate result of Cintas' breaches of its express warranties, Plaintiffs and the Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT VI**
**BREACH OF IMPLIED WARRANTIES**
**(On Behalf of all Plaintiffs and the Class)**

198.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

199.    This claim is brought on behalf of all Plaintiffs and the Class.

200.     Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

201.     Cintas impliedly warranted to Southwest and Plaintiffs that the Uniforms were merchantable and fit for the ordinary purpose for which they were intended to be used.

202.     Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

203.     Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

204.     Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

205.     Plaintiffs and the Class are intended third-party beneficiaries of Cintas's warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefits of the implied warranties described above were lost. Consequently, Plaintiffs and the Class are and were in privity of contract with Defendants.

206.     Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were unmerchantable and not fit for the ordinary purpose for which they were intended to be used, and which adversely affected the health and safety of Plaintiffs and the Class.

207.     Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular

purpose for which they were intended to be used, and which adversely affected the health and safety of Plaintiffs and the Class.

208.     As a direct and proximate result of Cintas' breaches of implied warranties, Plaintiffs and the Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT VII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On Behalf of all Plaintiffs and the Class)**

</div>

209.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

210.     This claim is brought on behalf of all Plaintiffs and the Class.

211.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs and the Class in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

212.     Plaintiffs and the Class are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

213.     Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

214.     The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

215.     Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

216.     The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

217.     Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to Plaintiffs and the Class when the Uniforms left Defendants' control.

218.     As a direct and proximate result of Defendants' violations of the Warranty Act, Plaintiffs and the Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

219.     In accordance with 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

## COUNT VIII
## INJUNCTIVE RELIEF
### (On Behalf of all Plaintiffs and the Class)

108.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

109.     This claim is brought on behalf of all Plaintiffs and the Class.

110.     The Plaintiffs and the Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

111.     As set forth above, the Plaintiffs and the Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms

merely by being in their presence.

112.    Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

113.    By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed Plaintiffs and the Class to ongoing and future risks of adverse medical conditions.

114.    Plaintiffs and the Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

115.    As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

116.    As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by Plaintiffs and the Class as a result of the Uniforms.

117.    By actively monitoring and testing Plaintiffs, the Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

118.    Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of Plaintiffs and the Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

119.    Plaintiffs and the Class have no adequate remedy at law in that monetary damages

alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

120.    Without injunctive relief in the form of a recall and/or medical monitoring program, Plaintiffs and the Class will continue to face an unreasonable risk of preventable injury and disability.

<div align="center">

**COUNT IX**
**NEGLIGENCE**
**(On Behalf of the Texas Plaintiffs and the Texas Class)**

</div>

220.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

221.    This claim is brought on behalf of the Texas Plaintiffs and the Texas Class.

222.    Defendants owed a duty to the Texas Plaintiffs and the Texas Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

223.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

      a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Texas Plaintiffs and the Texas Class, who wore the Uniforms and brought them into their homes;

      b.    Failing to adequately warn the Texas Plaintiffs and the Texas Class that the

use of the Uniforms could result in adverse health effects; and

c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Texas Plaintiffs and the Texas Class, who wore the Uniforms and brought them into their homes.

224.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Texas Plaintiffs and the Texas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT X**
**DESIGN DEFECT**
**(On Behalf of the Texas Plaintiffs and the Texas Class)**

225.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

226.    This claim is brought on behalf of the Texas Plaintiffs and the Texas Class.

227.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

228.    The Uniforms were defectively designed so as to render them unreasonably dangerous to the Texas Plaintiffs and the Texas Class.

229.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

230.    A safer design and other products existed which could achieve similar results without the risks presented by the Uniforms.

231.    At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Texas Plaintiffs and the Texas Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk and amount of injuries to the Texas Plaintiffs and the Texas Class without substantially impairing the Uniforms' utility.

232.    Defendants' defective design of the Uniforms was a producing cause of the damages and injuries the Texas Plaintiffs and the Texas Class have suffered and/or in the future will suffer, which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT XI**
**MANUFACTURING DEFECT**
**(On Behalf of the Texas Plaintiffs and the Texas Class)**

233.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

234.    This claim is brought on behalf of the Texas Plaintiffs and the Texas Class.

235.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

236.    A manufacturing defect existed in the Uniforms which deviated, in their construction and/or quality, from the specifications or planned output in a manner that rendered the Uniforms unreasonably dangerous to the Texas Plaintiffs and the Texas Class.

237.    The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Texas Plaintiffs and the Texas Class.

238.    As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Texas Plaintiffs and the Texas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XII
## FAILURE TO WARN
### (On Behalf of the Texas Plaintiffs and the Texas Class)

239.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

240.    This claim is brought on behalf of the Texas Plaintiffs and the Texas Class.

241.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

242.    At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the foreseeable risks arising from their use.

243.    At the time the Uniforms left Defendants' control, they were unreasonably dangerous and not reasonably safe for their intended use due to the lack of warnings of the foreseeable risks arising from their use.

244.    Defendants had a duty to warn the Texas Plaintiffs and the Texas Class of the foreseeable risks arising from the use of the Uniforms.

245.    Defendants failed to adequately warn the Texas Plaintiffs and the Texas Class that the use of the Uniforms could result in severe adverse health effects.

246.    At all times relevant hereto, Defendants intended for the Southwest employees, including the Texas Plaintiffs and the Texas Class, to wear the Uniforms.

247.    The Uniforms were used and worn by the Texas Plaintiffs and the Texas Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

248.    At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

249.    Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

250.    Had Defendants adequately warned of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

251.    As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Texas Plaintiffs and the Texas Class have suffered and/or in the future will suffer

injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XIII
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Texas Plaintiffs and the Texas Class)

252. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

253. This claim is brought on behalf of the Texas Plaintiffs and the Texas Class.

254. Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

    a. That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

    b. That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

    c. That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

255. The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

256. The Texas Plaintiffs and the Texas Class are intended third-party beneficiaries of Cintas's warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefits of the express warranties described above were lost. Consequently, the Texas Plaintiffs and the Texas Class are and were in privity of contract with Defendants.

257. Southwest, the Texas Plaintiffs, and the Texas Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation to the Uniforms.

258. Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Texas Plaintiffs and the Texas Class.

259. As a direct and proximate result of Cintas' breaches of its express warranties, the Texas Plaintiffs and the Texas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<center>**COUNT XIV**
**BREACH OF IMPLIED WARRANTIES**
**(On Behalf of the Texas Plaintiffs and the Texas Class)**</center>

260.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

261.     This claim is brought on behalf of the Texas Plaintiffs and the Texas Class.

262.     Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

263.     Cintas impliedly warranted to Southwest and Plaintiffs that the Uniforms were merchantable and fit for the ordinary purpose for which they were intended to be used.

264.     Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

265.     Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

266.     Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

267.     The Texas Plaintiffs and the Texas Class are intended third-party beneficiaries of Cintas's warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefits of the implied warranties described above were lost. Consequently, the Texas Plaintiffs and the Texas Class are and were in privity of contract with Defendants.

<center>53</center>

268.    Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were unmerchantable and not fit for the ordinary purpose for which they were intended to be used, and which adversely affected the health and safety of the Texas Plaintiffs and the Texas Class.

269.    Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Texas Plaintiffs and the Texas Class.

270.    As a direct and proximate result of Cintas' breaches of implied warranties, the Texas Plaintiffs and the Texas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XV
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of the Texas Plaintiffs and the Texas Class)

271.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

272.    This claim is brought on behalf of the Texas Plaintiffs and the Texas Class.

273.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Texas Plaintiffs and the Texas Class in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

274.    The Texas Plaintiffs and the Texas Class are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

275.     Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

276.     The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

277.     Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

278.     The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

279.     Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Texas Plaintiffs and the Texas Class when the Uniforms left Defendants' control.

280.     As a direct and proximate result of Defendants' violations of the Warranty Act, the Texas Plaintiffs and the Texas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

281.     In accordance with 15 U.S.C. § 2310(d)(1), the Texas Plaintiffs and the Texas Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT XVI**
**INJUNCTIVE RELIEF**
**(On Behalf of the Texas Plaintiffs and the Texas Class)**

108.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

109.    This claim is brought on behalf of the Texas Plaintiffs and the Texas Class.

110.    The Texas Plaintiffs and the Texas Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

111.    As set forth above, the Texas Plaintiffs and the Texas Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

112.    Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

113.    By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Texas Plaintiffs and the Texas Class to ongoing and future risks of adverse medical conditions.

114.    The Texas Plaintiffs and the Texas Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

115.    As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

116.    As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the

adverse health effects experienced by the Texas Plaintiffs and the Texas Class as a result of the Uniforms.

117.    By actively monitoring and testing the Texas Plaintiffs, the Texas Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

118.    Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Texas Plaintiffs and the Texas Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

119.    The Texas Plaintiffs and the Texas Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

120.    Without injunctive relief in the form of a recall and/or medical monitoring program, the Texas Plaintiffs and the Texas Class will continue to face an unreasonable risk of preventable injury and disability.

## COUNT XVII
## NEGLIGENCE
### (On Behalf of the Colorado Plaintiffs and the Colorado Class)

282.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

283.    This claim is brought on behalf of the Colorado Plaintiffs and the Colorado Class.

284.    Defendants owed a duty to the Colorado Plaintiffs and the Colorado Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

285.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Colorado Plaintiffs and the Colorado Class, who wore the Uniforms and brought them into their homes;

b.    Failing to adequately warn Colorado Plaintiffs and the Colorado Class that the use of the Uniforms could result in adverse health effects; and

c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Colorado Plaintiffs and the Colorado Class, who wore the Uniforms and brought them into their homes.

286.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Colorado Plaintiffs and the Colorado Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT XVIII**
**DESIGN DEFECT**
**(On Behalf of the Colorado Plaintiffs and the Colorado Class)**

287.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

288.    This claim is brought on behalf of the Colorado Plaintiffs and the Colorado Class.

289.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

290.    The Uniforms were defectively designed so as to render them unreasonably dangerous to the Colorado Plaintiffs and the Colorado Class.

291.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

292.    A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

293.    The Uniforms were expected to and did reach the Colorado Plaintiffs and the Colorado Class without substantial change in the condition in which they were sold.

294.    The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them.

295.    The risks of the use of the Uniforms outweighed any benefits.

296.    At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Colorado Plaintiffs and the Colorado Class without impairing the reasonably

anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk and amount of injuries to the Colorado Plaintiffs and the Colorado Class without substantially impairing the Uniforms' utility.

297.     As a direct and proximate cause of Defendants' defective design of the Uniforms, the Colorado Plaintiffs and the Colorado Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XIX**
**MANUFACTURING DEFECT**
**(On Behalf of the Colorado Plaintiffs and the Colorado Class)**

</div>

298.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

299.     This claim is brought on behalf of the Colorado Plaintiffs and the Colorado Class.

300.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

301.     A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Colorado Plaintiffs and the Colorado Class.

302.     The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

303.     The risks of the use of the Uniforms outweighed any benefits.

304.    The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture, at the time they left the hands of Defendants for distribution to the Colorado Plaintiffs and the Colorado Class.

305.    As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Colorado Plaintiffs and the Colorado Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT XX**
**FAILURE TO WARN**
**(On Behalf of the Colorado Plaintiffs and the Colorado Class)**

306.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

307.    This claim is brought on behalf of the Colorado Plaintiffs and the Colorado Class.

308.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

309.    At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

310.    At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

311.    Defendants had a duty to warn the Colorado Plaintiffs and the Colorado Class of the potentially dangerous propensities of the intended use of the Uniforms.

312.    Defendants failed to adequately warn the Colorado Plaintiffs and the Colorado Class that the use of the Uniforms could result in severe adverse health effects.

313.    The Uniforms were used and worn by the Colorado Plaintiffs and the Colorado Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

314.    At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

315.    Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

316.    Had Defendants adequately warned the Colorado Plaintiffs and the Colorado Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

317.    As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Colorado Plaintiffs and the Colorado Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XXI
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Colorado Plaintiffs and the Colorado Class)

318.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

319.    This claim is brought on behalf of the Colorado Plaintiffs and the Colorado Class.

320.    Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

    a.    That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

    b.    That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

    c.    That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

321.    The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

322.    The Colorado Plaintiffs and the Colorado Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently

immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Colorado Plaintiffs and the Colorado Class are and were in privity of contract with Defendants.

323.    Southwest, the Colorado Plaintiffs and the Colorado Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

324.    Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Colorado Plaintiffs and the Colorado Class.

325.    As a direct and proximate result of Cintas' breach of its express warranties, the Colorado Plaintiffs and the Colorado Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT XXII
### BREACH OF IMPLIED WARRANTIES
**(On Behalf of the Colorado Plaintiffs and the Colorado Class)**

326.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

327.    This claim is brought on behalf of the Colorado Plaintiffs and the Colorado Class.

328.    Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

329.     Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

330.     Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

331.     Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

332.     Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

333.     The Colorado Plaintiffs and the Colorado Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Colorado Plaintiffs and the Colorado Class are and were in privity of contract with Defendants.

334.     Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Colorado Plaintiffs and the Colorado Class.

335.    Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Colorado Plaintiffs and the Colorado Class.

336.    As a direct and proximate result of Cintas' breaches of implied warranties, the Colorado Plaintiffs and the Colorado Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XXIII
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of the Colorado Plaintiffs and the Colorado Class)

337.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

338.    This claim is brought on behalf of the Colorado Plaintiffs and the Colorado Class.

339.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

340.    Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

341.    Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

342.    The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

343. Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

344. The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

345. Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Colorado Plaintiffs and the Colorado Class Members when the Uniforms left Defendants' control.

346. As a direct and proximate result of Defendants' violations of the Warranty Act, the Colorado Plaintiffs and the Colorado Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

347. In accordance with 15 U.S.C. § 2310(d)(1), the Colorado Plaintiffs and the Colorado Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

<u>COUNT XXIV</u>
<u>INJUNCTIVE RELIEF</u>
**(On Behalf of the Colorado Plaintiffs and the Colorado Class)**

348. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

349. This claim is brought on behalf of the Colorado Plaintiffs and the Colorado Class.

350. The Colorado Plaintiffs and the Colorado Class have been, and continue to be,

exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

351. As set forth above, the Colorado Plaintiffs and the Colorado Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

352. Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

353. By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Colorado Plaintiffs and the Colorado Class to ongoing and future risks of adverse medical conditions.

354. The Colorado Plaintiffs and the Colorado Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

355. As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

356. As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Colorado Plaintiffs and the Colorado Class as a result of the Uniforms.

357. By actively monitoring and testing the Colorado Plaintiffs, the Colorado Class and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

358.    Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Colorado Plaintiffs and the Colorado Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

359.    The Colorado Plaintiffs and the Colorado Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

360.    Without injunctive relief in the form of a recall and/or medical monitoring program, the Colorado Plaintiffs and the Colorado Class will continue to face an unreasonable risk of preventable injury and disability.

<div align="center">

**COUNT XXV**
**NEGLIGENCE**
**(On Behalf of the Florida Plaintiffs and the Florida Class)**

</div>

361.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

362.    This claim is brought on behalf of the Florida Plaintiffs and the Florida Class.

363.    Defendants owed a duty to the Florida Plaintiffs and the Florida Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

364.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

a.      Failing to use reasonable care in designing, developing, manufacturing,

testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Florida Plaintiffs and the Florida Class, who wore the Uniforms and brought them into their homes;

b.      Failing to adequately warn the Florida Plaintiffs and the Florida Class that the use of the Uniforms could result in adverse health effects; and

c.      Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Florida Plaintiffs and the Florida Class, who wore the Uniforms and brought them into their homes.

365.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Florida Plaintiffs and the Florida Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT XXVI**
**DESIGN DEFECT**
**(On Behalf of the Florida Plaintiffs and the Florida Class)**

366.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

367.    This claim is brought on behalf of the Florida Plaintiffs and the Florida Class.

368.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

369.    The Uniforms were defectively designed so as to render them unreasonably dangerous to the Florida Plaintiffs and the Florida Class.

370.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

371.    A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

372.    The Uniforms were expected to and did reach the Florida Plaintiffs and the Florida Class without substantial change in the condition in which they were sold.

373.    The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

374.    The risks of the use of the Uniforms outweighed any benefits.

375.    At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Florida Plaintiffs and the Florida Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk and amount of injuries to the Florida Plaintiffs and the Florida Class without substantially impairing the Uniforms' utility.

376.     As a direct and proximate cause of Defendants' defective design of the Uniforms, the Florida Plaintiffs and the Florida Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XXVII
## MANUFACTURING DEFECT
**(On Behalf of the Florida Plaintiffs and the Florida Class)**

377.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

378.     This claim is brought on behalf of the Florida Plaintiffs and the Florida Class.

379.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

380.     A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Florida Plaintiffs and the Florida Class.

381.     The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

382.     The risks of the use of the Uniforms outweighed any benefits.

383.     The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Florida Plaintiffs and the Florida Class.

384.     As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Florida Plaintiffs and the Florida Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT XXVIII
### FAILURE TO WARN
**(On Behalf of the Florida Plaintiffs and the Florida Class)**

385.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

386.     This claim is brought on behalf of the Florida Plaintiffs and the Florida Class.

387.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

388.     At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

389.     At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

390.      Defendants had a duty to warn the Florida Plaintiffs and the Florida Class of the potentially dangerous propensities of the intended use of the Uniforms.

391.     Defendants failed to adequately warn the Florida Plaintiffs and the Florida Class that the use of the Uniforms could result in severe adverse health effects.

392.    These risks of which Defendants failed to adequately warn the Florida Plaintiffs and the Florida Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

393.    The Uniforms were used and worn by the Florida Plaintiffs and the Florida Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

394.    At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

395.    Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

396.    Had Defendants adequately warned the Florida Plaintiffs and the Florida Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

397.    As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Florida Plaintiffs and the Florida Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XXIX
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Florida Plaintiffs and the Florida Class)

398.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

399.    This claim is brought on behalf of the Florida Plaintiffs and the Florida Class.

400.    Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

        a.    That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

        b.    That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

        c.    That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

401.    The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

402.    The Florida Plaintiffs and the Florida Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently

immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Florida Plaintiffs and the Florida Class are and were in privity of contract with Defendants.

403.    Southwest, the Florida Plaintiffs and the Florida Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

404.    Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Florida Plaintiffs and the Florida Class.

405.    As a direct and proximate result of Cintas' breach of its express warranties, the Florida Plaintiffs and the Florida Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT XXX
### BREACH OF IMPLIED WARRANTIES
**(On Behalf of the Florida Plaintiffs and the Florida Class)**

406.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

407.    This claim is brought on behalf of the Florida Plaintiffs and the Florida Class.

408.    Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

409.     Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

410.     Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

411.     Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

412.     Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

413.     The Florida Plaintiffs and the Florida Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Florida Plaintiffs and the Florida Class are and were in privity of contract with Defendants.

414.     Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Florida Plaintiffs and the Florida Class.

415.     Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Florida Plaintiffs and the Florida Class.

416.     As a direct and proximate result of Cintas' breaches of implied warranties, the Florida Plaintiffs and the Florida Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div style="text-align:center">

**COUNT XXXI**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On Behalf of the Florida Plaintiffs and the Florida Class)**

</div>

417.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

418.     This claim is brought on behalf of the Florida Plaintiffs and the Florida Class.

419.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

420.     Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

421.     Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

422.     The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

423. Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

424. The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

425. Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Florida Plaintiffs and the Florida Class Members when the Uniforms left Defendants' control.

426. As a direct and proximate result of Defendants' violations of the Warranty Act, the Florida Plaintiffs and the Florida Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

427. In accordance with 15 U.S.C. § 2310(d)(1), the Florida Plaintiffs and the Florida Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

<div align="center">

**COUNT XXXII**
**INJUNCTIVE RELIEF**
**(On Behalf of the Florida Plaintiffs and the Florida Class)**

</div>

428. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

429. This claim is brought on behalf of the Florida Plaintiffs and the Florida Class.

430.     The Florida Plaintiffs and the Florida Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

431.     As set forth above, the Florida Plaintiffs and the Florida Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

432.     Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

433.     By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Florida Plaintiffs and the Florida Class to ongoing and future risks of adverse medical conditions.

434.     The Florida Plaintiffs and the Florida Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

435.     As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

436.     As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Florida Plaintiffs and the Florida Class as a result of the Uniforms.

437.     By actively monitoring and testing the Florida Plaintiffs, the Florida Class and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

438.     Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Florida Plaintiffs and the Florida Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

439.     The Florida Plaintiffs and the Florida Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

440.     Without injunctive relief in the form of a recall and/or medical monitoring program, the Florida Plaintiffs and the Florida Class will continue to face an unreasonable risk of preventable injury and disability.

## COUNT XXXIII
## NEGLIGENCE
### (On Behalf of the California Plaintiffs and the California Class)

441.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

442.     This claim is brought on behalf of the California Plaintiffs and the California Class.

443.     Defendants owed a duty to the California Plaintiffs and the California Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

444.     Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling

the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

    a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the California Plaintiffs and the California Class, who wore the Uniforms and brought them into their homes;

    b.    Failing to adequately warn the California Plaintiffs and the California Class that the use of the Uniforms could result in adverse health effects; and

    c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the California Plaintiffs and the California Class, who wore the Uniforms and brought them into their homes.

445.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the California Plaintiffs and the California Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XXIV**
**DESIGN DEFECT**
**(On Behalf of the California Plaintiffs and the California Class)**

</div>

446.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

447.     This claim is brought on behalf of the California Plaintiffs and the California Class.

448.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

449.     The Uniforms were defectively designed so as to render them unreasonably dangerous to the California Plaintiffs and the California Class.

450.     At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

451.     A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

452.     The Uniforms were expected to and did reach the California Plaintiffs and the California Class without substantial change in the condition in which they were sold.

453.     The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

454.     The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

455.     At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the California Plaintiffs and the California Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the

risk and amount of injuries to the California Plaintiffs and the California Class without substantially impairing the Uniforms' utility.

456.     As a direct and proximate cause of Defendants' defective design of the Uniforms, the California Plaintiffs and the California Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XXXV**
**MANUFACTURING DEFECT**
**(On Behalf of the California Plaintiffs and the California Class)**

</div>

457.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

458.     This claim is brought on behalf of the California Plaintiffs and the California Class.

459.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

460.     A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the California Plaintiffs and the California Class.

461.     The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

462.     The risks of the use of the Uniforms outweighed any benefits.

463.    The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the California Plaintiffs and the California Class.

464.    The California Plaintiffs and the California Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

465.    As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the California Plaintiffs and the California Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT XXXVI
### FAILURE TO WARN
**(On Behalf of the California Plaintiffs and the California Class)**

466.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

467.    This claim is brought on behalf of the California Plaintiffs and the California Class.

468.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

469.    At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

470.    At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

471.    Defendants had a duty to warn the California Plaintiffs and the California Class of the potentially dangerous propensities of the intended use of the Uniforms.

472.    Defendants failed to adequately warn the California Plaintiffs and the California Class that the use of the Uniforms could result in severe adverse health effects.

473.    These risks of which Defendants failed to adequately warn the California Plaintiffs and the California Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

474.    The Uniforms were used and worn by the California Plaintiffs and the California Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

475.    At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

476.    Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

477.    Had Defendants adequately warned the California Plaintiffs and the California Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

478.     As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the California Plaintiffs and the California Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT XXXVII
### BREACH OF EXPRESS WARRANTY
**(On Behalf of the California Plaintiffs and the California Class)**

479.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

480.     This claim is brought on behalf of the California Plaintiffs and the California Class.

481.     Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a.     That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b.     That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

c.     That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

482.     The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

483.     The California Plaintiffs and the California Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the California Plaintiffs and the California Class are and were in privity of contract with Defendants.

484.     Southwest, the California Plaintiffs and the California Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

485.     Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the California Plaintiffs and the California Class.

486.     As a direct and proximate result of Cintas' breach of its express warranties, the California Plaintiffs and the California Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XXXVIII
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the California Plaintiffs and the California Class)

487.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

488.    This claim is brought on behalf of the California Plaintiffs and the California Class.

489.    Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

490.    Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

491.    Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

492.    Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

493.    On information and belief, Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

494.    The California Plaintiffs and the California Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the California Plaintiffs and the California Class are and were in privity of contract with Defendants.

495.    Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the California Plaintiffs and the California Class.

496.    Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the California Plaintiffs and the California Class.

497.    As a direct and proximate result of Cintas' breaches of implied warranties, the California Plaintiffs and the California Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XXXIX**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, _et seq._**
**(On Behalf of the California Plaintiffs and the California Class)**

</div>

498.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

499.    This claim is brought on behalf of the California Plaintiffs and the California Class.

500.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, _et seq._ (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

501.     Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

502.     Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

503.     The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

504.     Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

505.     The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

506.     Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the California Plaintiffs and the California Class when the Uniforms left Defendants' control.

507.     As a direct and proximate result of Defendants' violations of the Warranty Act, the California Plaintiffs and the California Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

508.     In accordance with 15 U.S.C. § 2310(d)(1), the California Plaintiffs and the California Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT XL**
**INJUNCTIVE RELIEF**
**(On Behalf of the California Plaintiffs and the California Class)**

509.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

510.     This claim is brought on behalf of the California Plaintiffs and the California Class.

511.     The California Plaintiffs and the California Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

512.     As set forth above, the California Plaintiffs and the California Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

513.     Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

514.     By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the California Plaintiffs and the California Class to ongoing and future risks of adverse medical conditions.

515.     The California Plaintiffs and the California Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

516.    As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

517.    As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the California Plaintiffs and the California Class as a result of the Uniforms.

518.    By actively monitoring and testing the California Plaintiffs, the California Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

519.    Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the California Plaintiffs and the California Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

520.    The California Plaintiffs and the California Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

521.    Without injunctive relief in the form of a recall and/or medical monitoring program, the California Plaintiffs and the California Class will continue to face an unreasonable risk of preventable injury and disability.

**COUNT XLI**
**NEGLIGENCE**
**(On Behalf of the Illinois Plaintiffs and the Illinois Class)**

522.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

523.    This claim is brought on behalf of the Illinois Plaintiffs and the Illinois Class.

524.    Defendants owed a duty to the Illinois Plaintiffs and the Illinois Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

525.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

    a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Illinois Plaintiffs and the Illinois Class, who wore the Uniforms and brought them into their homes;

    b.    Failing to adequately warn the Illinois Plaintiffs and the Illinois Class that the use of the Uniforms could result in adverse health effects; and

    c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Illinois Plaintiffs and the Illinois Class, who wore the Uniforms and brought them into their homes.

526.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Illinois Plaintiffs and the Illinois Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering,

severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XLII**
**DESIGN DEFECT**
**(On Behalf of the Illinois Plaintiffs and the Illinois Class)**

</div>

527.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

528.     This claim is brought on behalf of the Illinois Plaintiffs and the Illinois Class.

529.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

530.     The Uniforms were defectively designed so as to render them unreasonably dangerous to the Illinois Plaintiffs and the Illinois Class.

531.     At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

532.     A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

533.     The Uniforms were expected to and did reach the Illinois Plaintiffs and the Illinois Class without substantial change in the condition in which they were sold.

534.     The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

535.    The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

536.    At the time the Uniforms left the control of Defendants, there were effective, practical, and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Illinois Plaintiffs and the Illinois Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible, and would have prevented or significantly reduced the risk and amount of injuries to the Illinois Plaintiffs and the Illinois Class without substantially impairing the Uniforms' utility.

537.    As a direct and proximate cause of Defendants' defective design of the Uniforms, the Illinois Plaintiffs and the Illinois Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XLIII
## MANUFACTURING DEFECT
### (On Behalf of the Illinois Plaintiffs and the Illinois Class)

538.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

539.    This claim is brought on behalf of the Illinois Plaintiffs and the Illinois Class.

540.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

541.    A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Illinois Plaintiffs and the Illinois Class.

542.    The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

543.    The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Illinois Plaintiffs and the Illinois Class.

544.    The Illinois Plaintiffs and the Illinois Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

545.    As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Illinois Plaintiffs and the Illinois Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XLIV
## FAILURE TO WARN
### (On Behalf of the Illinois Plaintiffs and the Illinois Class)

546.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

547.    This claim is brought on behalf of the Illinois Plaintiffs and the Illinois Class.

548.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

549. At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms, of which the average consumer would not be aware.

550. At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

551. Defendants had a duty to warn the Illinois Plaintiffs and the Illinois Class of the potentially dangerous propensities of the intended use of the Uniforms.

552. Defendants failed to adequately warn the Illinois Plaintiffs and the Illinois Class that the use of the Uniforms could result in severe adverse health effects.

553. These risks of which Defendants failed to adequately warn the Illinois Plaintiffs and the Illinois Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

554. The Uniforms were used and worn by the Illinois Plaintiffs and the Illinois Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

555. At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

556. Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

557.     Had Defendants adequately warned the Illinois Plaintiffs and the Illinois Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

558.     As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Illinois Plaintiffs and the Illinois Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT XLV**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Illinois Plaintiffs and the Illinois Class)**

559.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

560.     This claim is brought on behalf of the Illinois Plaintiffs and the Illinois Class.

561.     Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a.     That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b.     That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

       c.      That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

562.    The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

563.    The Illinois Plaintiffs and the Illinois Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Illinois Plaintiffs and the Illinois Class are and were in privity of contract with Defendants.

564.    Southwest, the Illinois Plaintiffs and the Illinois Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

565.    Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Illinois Plaintiffs and the Illinois Class.

566.    As a direct and proximate result of Cintas' breach of its express warranties, the Illinois Plaintiffs and the Illinois Class have suffered and/or in the future will suffer injuries and

damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XLVI
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the Illinois Plaintiffs and the Illinois Class)

567.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

568.    This claim is brought on behalf of the Illinois Plaintiffs and the Illinois Class.

569.    Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

570.    Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

571.    Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

572.    Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

573.    Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

574.    The Illinois Plaintiffs and the Illinois Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above

were lost. Consequently, the Illinois Plaintiffs and the Illinois Class are and were in privity of contract with Defendants.

575.    Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Illinois Plaintiffs and the Illinois Class.

576.    Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Illinois Plaintiffs and the Illinois Class.

577.    As a direct and proximate result of Cintas' breaches of implied warranties, the Illinois Plaintiffs and the Illinois Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XLVII
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
#### (On Behalf of the Illinois Plaintiffs and the Illinois Class)

578.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

579.    This claim is brought on behalf of the Illinois Plaintiffs and the Illinois Class.

580.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

581.    Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

582.    Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

583.    The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

584.    Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

585.    The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

586.    Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Illinois Plaintiffs and the Illinois Class when the Uniforms left Defendants' control.

587.    As a direct and proximate result of Defendants' violations of the Warranty Act, the Illinois Plaintiffs and the Illinois Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe

emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

588.    In accordance with 15 U.S.C. § 2310(d)(1), the Illinois Plaintiffs and the Illinois Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

<div align="center">

**COUNT XLVIII**
**INJUNCTIVE RELIEF**
**(On Behalf of the Illinois Plaintiffs and the Illinois Class)**

</div>

589.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

590.    This claim is brought on behalf of the Illinois Plaintiffs and the Illinois Class.

591.    The Illinois Plaintiffs and the Illinois Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

592.    As set forth above, the Illinois Plaintiffs and the Illinois Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

593.    Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

594.    By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Illinois Plaintiffs and the Illinois Class to ongoing and future risks of adverse medical conditions.

595.    The Illinois Plaintiffs and the Illinois Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

596.    As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

597.    As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Illinois Plaintiffs and the Illinois Class as a result of the Uniforms.

598.    By actively monitoring and testing the Illinois Plaintiffs, the Illinois Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

599.    Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Illinois Plaintiffs and the Illinois Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

600.    The Illinois Plaintiffs and the Illinois Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

601.    Without injunctive relief in the form of a recall and/or medical monitoring program, the Illinois Plaintiffs and the Illinois Class will continue to face an unreasonable risk of preventable injury and disability.

**COUNT XLIX**
**NEGLIGENCE**
**(On Behalf of the Nevada Plaintiffs and the Nevada Class)**

602.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

603.    This claim is brought on behalf of the Nevada Plaintiffs and the Nevada Class.

604.    Defendants owed a duty to the Nevada Plaintiffs and the Nevada Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

605.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

      a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Nevada Plaintiffs and the Nevada Class, who wore the Uniforms and brought them into their homes;

      b.    Failing to adequately warn the Nevada Plaintiffs and the Nevada Class that the use of the Uniforms could result in adverse health effects; and

      c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Nevada Plaintiffs and the Nevada Class, who wore the Uniforms and

brought them into their homes.

606.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Nevada Plaintiffs and the Nevada Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<u>**COUNT L**</u>
<u>**DESIGN DEFECT**</u>
**(On Behalf of the Nevada Plaintiffs and the Nevada Class)**

607.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

608.    This claim is brought on behalf of the Nevada Plaintiffs and the Nevada Class.

609.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

610.    The Uniforms were defectively designed so as to render them unreasonably dangerous to the Nevada Plaintiffs and the Nevada Class.

611.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

612.    A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

613.    The Uniforms were expected to and did reach the Nevada Plaintiffs and the Nevada Class without substantial change in the condition in which they were sold.

614. The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer having the ordinary knowledge available in the community when used in their intended and reasonably foreseeable manner.

615. At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Nevada Plaintiffs and the Nevada Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Nevada Plaintiffs and the Nevada Class without substantially impairing the Uniforms' utility.

616. The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Nevada Plaintiffs and the Nevada Class.

617. As a direct and proximate cause of Defendants' defective design of the Uniforms, the Nevada Plaintiffs and the Nevada Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT LI**
**MANUFACTURING DEFECT**
**(On Behalf of the Nevada Plaintiffs and the Nevada Class)**

618. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

619. This claim is brought on behalf of the Nevada Plaintiffs and the Nevada Class.

620.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

621.    A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Nevada Plaintiffs and the Nevada Class.

622.    The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

623.    The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Nevada Plaintiffs and the Nevada Class.

624.    The Nevada Plaintiffs and the Nevada Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

625.    As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Nevada Plaintiffs and the Nevada Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT LII
### FAILURE TO WARN
**(On Behalf of the Nevada Plaintiffs and the Nevada Class)**

626.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

627.    This claim is brought on behalf of the Nevada Plaintiffs and the Nevada Class.

628.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

629.    At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

630.    At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

631.    Defendants had a duty to warn the Nevada Plaintiffs and the Nevada Class of the potentially dangerous propensities of the intended use of the Uniforms.

632.    Defendants failed to adequately warn the Nevada Plaintiffs and the Nevada Class that the use of the Uniforms could result in severe adverse health effects.

633.    These risks of which Defendants failed to adequately warn the Nevada Plaintiffs and the Nevada Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

634.    The Uniforms were used and worn by the Nevada Plaintiffs and the Nevada Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

635.    At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

636.     Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

637.     Had Defendants adequately warned the Nevada Plaintiffs and the Nevada Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

638.     As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Nevada Plaintiffs and the Nevada Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LIII**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Nevada Plaintiffs and the Nevada Class)**

</div>

639.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

640.     This claim is brought on behalf of the Nevada Plaintiffs and the Nevada Class.

641.     Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a.      That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b.      That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

<div align="center">111</div>

c.    That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

642.    The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

643.    The Nevada Plaintiffs and the Nevada Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Nevada Plaintiffs and the Nevada Class are and were in privity of contract with Defendants.

644.    Southwest, the Nevada Plaintiffs and the Nevada Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

645.    Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Nevada Plaintiffs and the Nevada Class.

646.    As a direct and proximate result of Cintas' breach of its express warranties, the Nevada Plaintiffs and the Nevada Class have suffered and/or in the future will suffer injuries and

damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT XLIV
### BREACH OF IMPLIED WARRANTIES
#### (On Behalf of the Nevada Plaintiffs and the Nevada Class)

647.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

648.    This claim is brought on behalf of the Nevada Plaintiffs and the Nevada Class.

649.    Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

650.    Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

651.    Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

652.    Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

653.    Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

654.    The Nevada Plaintiffs and the Nevada Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above

113

were lost. Consequently, the Nevada Plaintiffs and the Nevada Class are and were in privity of contract with Defendants.

655.    Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Nevada Plaintiffs and the Nevada Class.

656.    Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Nevada Plaintiffs and the Nevada Class.

657.    As a direct and proximate result of Cintas' breaches of implied warranties, the Nevada Plaintiffs and the Nevada Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301,** *et seq.*
**(On Behalf of the Nevada Plaintiffs and the Nevada Class)**

</div>

658.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

659.    This claim is brought on behalf of the Nevada Plaintiffs and the Nevada Class.

660.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

661.     Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

662.     Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

663.     The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

664.     Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

665.     The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

666.     Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Nevada Plaintiffs and the Nevada Class when the Uniforms left Defendants' control.

667.     As a direct and proximate result of Defendants' violations of the Warranty Act, the Nevada Plaintiffs and the Nevada Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe

emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

668.    In accordance with 15 U.S.C. § 2310(d)(1), the Nevada Plaintiffs and the Nevada Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT LVI**
**INJUNCTIVE RELIEF**
**(On Behalf of the Nevada Plaintiffs and the Nevada Class)**

669.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

670.    This claim is brought on behalf of the Nevada Plaintiffs and the Nevada Class.

671.    The Nevada Plaintiffs and the Nevada Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

672.    As set forth above, the Nevada Plaintiffs and the Nevada Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

673.    Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

674.    By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Nevada Plaintiffs and the Nevada Class to ongoing and future risks of adverse medical conditions.

675.     The Nevada Plaintiffs and the Nevada Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

676.     As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

677.     As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Nevada Plaintiffs and the Nevada Class as a result of the Uniforms.

678.     By actively monitoring and testing the Nevada Plaintiffs, the Nevada Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

679.     Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Nevada Plaintiffs and the Nevada Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

680.     The Nevada Plaintiffs and the Nevada Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

681.     Without injunctive relief in the form of a recall and/or medical monitoring program, the Nevada Plaintiffs and the Nevada Class will continue to face an unreasonable risk of preventable injury and disability.

## COUNT LVII
## NEGLIGENCE
### (On Behalf of the Arizona Plaintiffs and the Arizona Class)

682.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

683.    This claim is brought on behalf of the Arizona Plaintiffs and the Arizona Class.

684.    Defendants owed a duty to the Arizona Plaintiffs and the Arizona Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

685.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

      a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Arizona Plaintiffs and the Arizona Class, who wore the Uniforms and brought them into their homes;

      b.    Failing to adequately warn the Arizona Plaintiffs and the Arizona Class that the use of the Uniforms could result in adverse health effects; and

      c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Arizona Plaintiffs and the Arizona Class, who wore the Uniforms and

brought them into their homes.

686.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Arizona Plaintiffs and the Arizona Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<u>COUNT LVIII</u>
<u>DESIGN DEFECT</u>
**(On Behalf of the Arizona Plaintiffs and the Arizona Class)**

687.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

688.    This claim is brought on behalf of the Arizona Plaintiffs and the Arizona Class.

689.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

690.    The Uniforms were defectively designed so as to render them unreasonably dangerous to the Arizona Plaintiffs and the Arizona Class, to an extent beyond that which would be contemplated by the ordinary consumer who purchased the Uniforms, with the ordinary knowledge common to the community as to the Uniform's characteristics.

691.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

692.    A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

693.    The Uniforms were expected to and did reach the Arizona Plaintiffs and the Arizona Class without substantial change in the condition in which they were sold.

694.    The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

695.    The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

696.    At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Arizona Plaintiffs and the Arizona Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Arizona Plaintiffs and the Arizona Class without substantially impairing the Uniforms' utility.

697.    As a direct and proximate cause of Defendants' defective design of the Uniforms, the Arizona Plaintiffs and the Arizona Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LIX**
**MANUFACTURING DEFECT**
**(On Behalf of the Arizona Plaintiffs and the Arizona Class)**

</div>

698.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

699. This claim is brought on behalf of the Arizona Plaintiffs and the Arizona Class.

700. At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

701. A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Arizona Plaintiffs and the Arizona Class.

702. The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniform's characteristics.

703. The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Arizona Plaintiffs and the Arizona Class.

704. The Arizona Plaintiffs and the Arizona Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

705. As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Arizona Plaintiffs and the Arizona Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT LX
## FAILURE TO WARN
### (On Behalf of the Arizona Plaintiffs and the Arizona Class)

706. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

707. This claim is brought on behalf of the Arizona Plaintiffs and the Arizona Class.

708. At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

709. At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

710. At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

711. Defendants had a duty to warn the Arizona Plaintiffs and the Arizona Class of the potentially dangerous propensities of the intended use of the Uniforms.

712. Defendants failed to adequately warn the Arizona Plaintiffs and the Arizona Class that the use of the Uniforms could result in severe adverse health effects.

713. These risks of which Defendants failed to adequately warn the Arizona Plaintiffs and the Arizona Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

714. The Uniforms were used and worn by the Arizona Plaintiffs and the Arizona Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

715.     At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

716.     Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

717.     Had Defendants adequately warned the Arizona Plaintiffs and the Arizona Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

718.     As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Arizona Plaintiffs and the Arizona Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT LXI**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Arizona Plaintiffs and the Arizona Class)**

719.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

720.     This claim is brought on behalf of the Arizona Plaintiffs and the Arizona Class.

721.     Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a.    That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b.    That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

c.    That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

722.    The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

723.    The Arizona Plaintiffs and the Arizona Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Arizona Plaintiffs and the Arizona Class are and were in privity of contract with Defendants.

724.    Southwest, the Arizona Plaintiffs and the Arizona Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

725.     Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Arizona Plaintiffs and the Arizona Class.

726.     As a direct and proximate result of Cintas' breach of its express warranties, the Arizona Plaintiffs and the Arizona Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT LXII
### BREACH OF IMPLIED WARRANTIES
#### (On Behalf of the Arizona Plaintiffs and the Arizona Class)

727.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

728.     This claim is brought on behalf of the Arizona Plaintiffs and the Arizona Class.

729.     Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

730.     Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

731.     Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

732.     Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

733.     Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

734. The Arizona Plaintiffs and the Arizona Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Arizona Plaintiffs and the Arizona Class are and were in privity of contract with Defendants.

735. Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Arizona Plaintiffs and the Arizona Class.

736. Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Arizona Plaintiffs and the Arizona Class.

737. As a direct and proximate result of Cintas' breaches of implied warranties, the Arizona Plaintiffs and the Arizona Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT LXIII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On Behalf of the Arizona Plaintiffs and the Arizona Class)**

738.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

739.    This claim is brought on behalf of the Arizona Plaintiffs and the Arizona Class.

740.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

741.    Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

742.    Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

743.    The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

744.    Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

745.    The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

746.    Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which

they were intended to be used, were not defect free, and were harmful to the Arizona Plaintiffs and the Arizona Class when the Uniforms left Defendants' control.

747.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Arizona Plaintiffs and the Arizona Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

748.   In accordance with 15 U.S.C. § 2310(d)(1), the Arizona Plaintiffs and the Arizona Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

<div align="center">

**COUNT LXIV**
**INJUNCTIVE RELIEF**
**(On Behalf of the Arizona Plaintiffs and the Arizona Class)**

</div>

749.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

750.   This claim is brought on behalf of the Arizona Plaintiffs and the Arizona Class.

751.   The Arizona Plaintiffs and the Arizona Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

752.   As set forth above, the Arizona Plaintiffs and the Arizona Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

753. Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

754. By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Arizona Plaintiffs and the Arizona Class to ongoing and future risks of adverse medical conditions.

755. The Arizona Plaintiffs and the Arizona Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

756. As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

757. As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Arizona Plaintiffs and the Arizona Class as a result of the Uniforms.

758. By actively monitoring and testing the Arizona Plaintiffs, the Arizona Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

759. Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Arizona Plaintiffs and the Arizona Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

760.    The Arizona Plaintiffs and the Arizona Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

761.    Without injunctive relief in the form of a recall and/or medical monitoring program, the Arizona Plaintiffs and the Arizona Class will continue to face an unreasonable risk of preventable injury and disability.

**COUNT LXV**
**NEGLIGENCE**
**(On Behalf of the New Mexico Plaintiffs and the New Mexico Class)**

762.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

763.    This claim is brought on behalf of the New Mexico Plaintiffs and the New Mexico Class.

764.    Defendants owed a duty to the New Mexico Plaintiffs and the New Mexico Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

765.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the New Mexico Plaintiffs and the New Mexico

Class, who wore the Uniforms and brought them into their homes;

b.     Failing to adequately warn the New Mexico Plaintiffs and the New Mexico Class that the use of the Uniforms could result in adverse health effects; and

c.     Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the New Mexico Plaintiffs and the New Mexico Class, who wore the Uniforms and brought them into their homes.

766.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the New Mexico Plaintiffs and the New Mexico Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LXVI**
**DESIGN DEFECT**
**(On Behalf of the New Mexico Plaintiffs and the New Mexico Class)**

</div>

767.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

768.    This claim is brought on behalf of the New Mexico Plaintiffs and the New Mexico Class.

769.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

770. The Uniforms were defectively designed so as to render them unreasonably dangerous to the New Mexico Plaintiffs and the New Mexico Class.

771. At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

772. A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

773. The Uniforms were expected to and did reach the New Mexico Plaintiffs and the New Mexico Class without substantial change in the condition in which they were sold.

774. The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

775. A reasonably prudent person having full knowledge of the risk of injury from the use of the Uniforms would find that risk to be unacceptable.

776. The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

777. At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the New Mexico Plaintiffs and the New Mexico Class without impairing the reasonably anticipated or intended function, or the usefulness, of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the New Mexico Plaintiffs and the New Mexico Class without substantially impairing the Uniforms' utility.

778. As a direct and proximate cause of Defendants' defective design of the Uniforms, the New Mexico Plaintiffs and the New Mexico Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LXVII**
**MANUFACTURING DEFECT**
**(On Behalf of the New Mexico Plaintiffs and the New Mexico Class)**

</div>

779. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

780. This claim is brought on behalf of the New Mexico Plaintiffs and the New Mexico Class.

781. At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

782. A manufacturing defect existed in the Uniforms departs which departed from their intended design and which rendered the Uniforms unreasonably dangerous to the New Mexico Plaintiffs and the New Mexico Class.

783. The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

784. The risks of the use of the Uniforms outweighed any benefits.

785.     The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the New Mexico Plaintiffs and the New Mexico Class.

786.     The New Mexico Plaintiffs and the New Mexico Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

787.     As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the New Mexico Plaintiffs and the New Mexico Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LXVIII**
**FAILURE TO WARN**
**(On Behalf of the New Mexico Plaintiffs and the New Mexico Class)**

</div>

788.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

789.     This claim is brought on behalf of the New Mexico Plaintiffs and the New Mexico Class.

790.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

791.     At the time the Uniforms left Defendants' control, they lacked appropriate, adequate, and/or necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

792.    At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

793.    Defendants had a duty to warn the New Mexico Plaintiffs and the New Mexico Class of the potentially dangerous propensities of the intended use of the Uniforms.

794.    Defendants failed to adequately warn the New Mexico Plaintiffs and the New Mexico Class that the use of the Uniforms could result in severe adverse health effects.

795.    These risks of which Defendants failed to adequately warn the New Mexico Plaintiffs and the New Mexico Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

796.    The Uniforms were used and worn by the New Mexico Plaintiffs and the New Mexico Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

797.    At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

798.    Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

799.    Had Defendants adequately warned the New Mexico Plaintiffs and the New Mexico Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

800.     As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the New Mexico Plaintiffs and the New Mexico Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT LXIX
## BREACH OF EXPRESS WARRANTY
**(On Behalf of the New Mexico Plaintiffs and the New Mexico Class)**

801.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

802.     This claim is brought on behalf of the New Mexico Plaintiffs and the New Mexico Class.

803.     Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

      a.     That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

      b.     That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

      c.     That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

804.    The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

805.    The New Mexico Plaintiffs and the New Mexico Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the New Mexico Plaintiffs and the New Mexico Class are and were in privity of contract with Defendants.

806.    Southwest, the New Mexico Plaintiffs and the New Mexico Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

807.    Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the New Mexico Plaintiffs and the New Mexico Class.

808.    As a direct and proximate result of Cintas' breach of its express warranties, the New Mexico Plaintiffs and the New Mexico Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT LXX
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the New Mexico Plaintiffs and the New Mexico Class)

809.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

810.     This claim is brought on behalf of the New Mexico Plaintiffs and the New Mexico Class.

811.     Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

812.     Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

813.     Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

814.     Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

815.     Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

816.     The New Mexico Plaintiffs and the New Mexico Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the New Mexico Plaintiffs and the New Mexico Class are and were in privity of contract with Defendants.

817.     Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the New Mexico Plaintiffs and the New Mexico Class.

818.     Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the New Mexico Plaintiffs and the New Mexico Class.

819.     As a direct and proximate result of Cintas' breaches of implied warranties, the New Mexico Plaintiffs and the New Mexico Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT LXXI**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, _et seq._**
**(On Behalf of the New Mexico Plaintiffs and the New Mexico Class)**

820.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

821.     This claim is brought on behalf of the New Mexico Plaintiffs and the New Mexico Class.

822.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

823.     Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

824.     Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

825.     The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

826.     Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

827.     The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

828.     Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the New Mexico Plaintiffs and the New Mexico Class when the Uniforms left Defendants' control.

829.     As a direct and proximate result of Defendants' violations of the Warranty Act, the New Mexico Plaintiffs and the New Mexico Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering,

severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

830.    In accordance with 15 U.S.C. § 2310(d)(1), the New Mexico Plaintiffs and the New Mexico Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

<div align="center">

**COUNT LXXII**
**INJUNCTIVE RELIEF**
**(On Behalf of the New Mexico Plaintiffs and the New Mexico Class)**

</div>

831.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

832.    This claim is brought on behalf of the New Mexico Plaintiffs and the New Mexico Class.

833.    The New Mexico Plaintiffs and the New Mexico Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

834.    As set forth above, the New Mexico Plaintiffs and the New Mexico Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

835.    Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

836.    By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the New Mexico Plaintiffs and the New Mexico Class to ongoing and future risks of adverse medical conditions.

837.    The New Mexico Plaintiffs and the New Mexico Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

838.    As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

839.    As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the New Mexico Plaintiffs and the New Mexico Class as a result of the Uniforms.

840.    By actively monitoring and testing the New Mexico Plaintiffs, the New Mexico Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

841.    Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the New Mexico Plaintiffs and the New Mexico Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

842.    The New Mexico Plaintiffs and the New Mexico Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

843.    Without injunctive relief in the form of a recall and/or medical monitoring program, the New Mexico Plaintiffs and the New Mexico Class will continue to face an unreasonable risk of preventable injury and disability.

**COUNT LXXIII**
**NEGLIGENCE**
**(On Behalf of the Tennessee Plaintiffs and the Tennessee Class)**

844.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

845.    This claim is brought on behalf of the Tennessee Plaintiffs and the Tennessee Class.

846.    Defendants owed a duty to the Tennessee Plaintiffs and the Tennessee Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

847.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

       a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Tennessee Plaintiffs and the Tennessee Class, who wore the Uniforms and brought them into their homes;

       b.    Failing to adequately warn the Tennessee Plaintiffs and the Tennessee Class that the use of the Uniforms could result in adverse health effects; and

       c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Tennessee Plaintiffs and the Tennessee Class, who wore the Uniforms and

brought them into their homes.

848.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Tennessee Plaintiffs and the Tennessee Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT LXXIV**
**DESIGN DEFECT**
**(On Behalf of the Tennessee Plaintiffs and the Tennessee Class)**

849.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

850.    This claim is brought on behalf of the Tennessee Plaintiffs and the Tennessee Class.

851.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

852.    The Uniforms were defectively designed so as to render them unreasonably dangerous to the Tennessee Plaintiffs and the Tennessee Class.

853.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

854.    A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

855.    The Uniforms were expected to and did reach the Tennessee Plaintiffs and the Tennessee Class without substantial change in the condition in which they were sold.

856.    The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics, when used in their intended and reasonably foreseeable manner.

857.    Because of their dangerous condition, the Uniforms would not be put on the market by a reasonably prudent manufacturer or seller that knew of the Uniforms' dangerous condition.

858.    The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

859.    At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Tennessee Plaintiffs and the Tennessee Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Tennessee Plaintiffs and the Tennessee Class without substantially impairing the Uniforms' utility.

860.    As a direct and proximate cause of Defendants' defective design of the Uniforms, the Tennessee Plaintiffs and the Tennessee Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT LXXV**
**MANUFACTURING DEFECT**
**(On Behalf of the Tennessee Plaintiffs and the Tennessee Class)**

861.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

862.     This claim is brought on behalf of the Tennessee Plaintiffs and the Tennessee Class.

863.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

864.     A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Tennessee Plaintiffs and the Tennessee Class.

865.     The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

866.     Because of their dangerous condition, the Uniforms would not be put on the market by a reasonably prudent manufacturer or seller that knew of the Uniforms' dangerous condition.

867.     The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Tennessee Plaintiffs and the Tennessee Class.

868.     The Tennessee Plaintiffs and the Tennessee Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

869.     As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Tennessee Plaintiffs and the Tennessee Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and

suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LXXVI**
**FAILURE TO WARN**
**(On Behalf of the Tennessee Plaintiffs and the Tennessee Class)**

</div>

870. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

871. This claim is brought on behalf of the Tennessee Plaintiffs and the Tennessee Class.

872. At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

873. At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

874. At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

875. The lack of appropriate and necessary warnings to the end users of the Uniforms rendered them dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the Uniforms as to their characteristics.

876. The Uniforms would not be put on the market without by a reasonably prudent manufacturer or seller that knew of the Uniforms' dangerous condition without appropriate and necessary warnings to the end users of the Uniforms.

<div align="center">147</div>

877.    Defendants had a duty to warn the Tennessee Plaintiffs and the Tennessee Class of the potentially dangerous propensities of the intended use of the Uniforms.

878.    Defendants failed to adequately warn the Tennessee Plaintiffs and the Tennessee Class that the use of the Uniforms could result in severe adverse health effects.

879.    These risks of which Defendants failed to adequately warn the Tennessee Plaintiffs and the Tennessee Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

880.    The Uniforms were used and worn by the Tennessee Plaintiffs and the Tennessee Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

881.    At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

882.    Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

883.    Had Defendants adequately warned the Tennessee Plaintiffs and the Tennessee Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

884.    As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Tennessee Plaintiffs and the Tennessee Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and

suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LXXVII**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Tennessee Plaintiffs and the Tennessee Class)**

</div>

885. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

886. This claim is brought on behalf of the Tennessee Plaintiffs and the Tennessee Class.

887. Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a. That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b. That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

c. That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

888. The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms and were made by Cintas with the intention to induce Southwest, the Tennessee Plaintiffs, and the Tennessee Class to purchase the Uniforms.

<div align="center">149</div>

889.    The Tennessee Plaintiffs and the Tennessee Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Tennessee Plaintiffs and the Tennessee Class are and were in privity of contract with Defendants.

890.    Southwest, the Tennessee Plaintiffs and the Tennessee Class were reasonably induced by and reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

891.    The above-listed warranties, representations, descriptions, affirmations of fact, and promises were false.

892.    Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Tennessee Plaintiffs and the Tennessee Class.

893.    As a direct and proximate result of Cintas' breach of its express warranties, the Tennessee Plaintiffs and the Tennessee Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT LXXVIII
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the Tennessee Plaintiffs and the Tennessee Class)

894.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

895.    This claim is brought on behalf of the Tennessee Plaintiffs and the Tennessee Class.

896.    Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

897.    Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

898.    Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

899.    Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

900.    Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

901.    The Tennessee Plaintiffs and the Tennessee Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Tennessee Plaintiffs and the Tennessee Class are and were in privity of contract with Defendants.

902.     Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Tennessee Plaintiffs and the Tennessee Class.

903.     Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Tennessee Plaintiffs and the Tennessee Class.

904.     As a direct and proximate result of Cintas' breaches of implied warranties, the Tennessee Plaintiffs and the Tennessee Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT LXXIX
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
**(On Behalf of the Tennessee Plaintiffs and the Tennessee Class)**

905.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

906.     This claim is brought on behalf of the Tennessee Plaintiffs and the Tennessee Class.

907.     The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

908.    Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

909.    Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

910.    The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

911.    Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

912.    The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

913.    Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Tennessee Plaintiffs and the Tennessee Class when the Uniforms left Defendants' control.

914.    As a direct and proximate result of Defendants' violations of the Warranty Act, the Tennessee Plaintiffs and the Tennessee Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

915.    In accordance with 15 U.S.C. § 2310(d)(1), the Tennessee Plaintiffs and the Tennessee Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

## COUNT LXXX
## INJUNCTIVE RELIEF
### (On Behalf of the Tennessee Plaintiffs and the Tennessee Class)

916.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

917.    This claim is brought on behalf of the Tennessee Plaintiffs and the Tennessee Class.

918.    The Tennessee Plaintiffs and the Tennessee Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

919.    As set forth above, the Tennessee Plaintiffs and the Tennessee Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

920.    Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

921.    By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Tennessee Plaintiffs and the Tennessee Class to ongoing and future risks of adverse medical conditions.

922.    The Tennessee Plaintiffs and the Tennessee Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

923. As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

924. As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Tennessee Plaintiffs and the Tennessee Class as a result of the Uniforms.

925. By actively monitoring and testing the Tennessee Plaintiffs, the Tennessee Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

926. Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Tennessee Plaintiffs and the Tennessee Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

927. The Tennessee Plaintiffs and the Tennessee Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

928. Without injunctive relief in the form of a recall and/or medical monitoring program, the Tennessee Plaintiffs and the Tennessee Class will continue to face an unreasonable risk of preventable injury and disability.

## COUNT LXXXI
### NEGLIGENCE
**(On Behalf of the Maryland Plaintiffs and the Maryland Class)**

929. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

930.    This claim is brought on behalf of the Maryland Plaintiffs and the Maryland Class.

931.    Defendants owed a duty to the Maryland Plaintiffs and the Maryland Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

932.    Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

　　　a.　　Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Maryland Plaintiffs and the Maryland Class, who wore the Uniforms and brought them into their homes;

　　　b.　　Failing to adequately warn the Maryland Plaintiffs and the Maryland Class that the use of the Uniforms could result in adverse health effects; and

　　　c.　　Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Maryland Plaintiffs and the Maryland Class, who wore the Uniforms and brought them into their homes.

933.    As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Maryland Plaintiffs and the Maryland Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering,

severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT LXXXII**
**DESIGN DEFECT**
**(On Behalf of the Maryland Plaintiffs and the Maryland Class)**

</div>

934.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

935.    This claim is brought on behalf of the Maryland Plaintiffs and the Maryland Class.

936.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

937.    The Uniforms were defectively designed so as to render them unreasonably dangerous to the Maryland Plaintiffs and the Maryland Class.

938.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

939.    A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

940.    The Uniforms were in a defective condition at the time they left the possession and control of Defendants.

941.    The Uniforms were expected to and did reach the Maryland Plaintiffs and the Maryland Class without substantial change in the condition in which they were sold.

942. The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

943. The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

944. At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Maryland Plaintiffs and the Maryland Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Maryland Plaintiffs and the Maryland Class without substantially impairing the Uniforms' utility.

945. As a direct and proximate cause of Defendants' defective design of the Uniforms, the Maryland Plaintiffs and the Maryland Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT LXXXIII
## MANUFACTURING DEFECT
### (On Behalf of the Maryland Plaintiffs and the Maryland Class)

946. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

947. This claim is brought on behalf of the Maryland Plaintiffs and the Maryland Class.

948.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

949.     A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Maryland Plaintiffs and the Maryland Class.

950.     The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

951.     The risks of the use of the Uniforms outweighed any benefits.

952.     The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Maryland Plaintiffs and the Maryland Class.

953.     The Uniforms were in a defective condition at the time they left the possession and control of Defendants.

954.     The Maryland Plaintiffs and the Maryland Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

955.     As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Maryland Plaintiffs and the Maryland Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT LXXXIV**
**FAILURE TO WARN**
**(On Behalf of the Maryland Plaintiffs and the Maryland Class)**

956.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

957.     This claim is brought on behalf of the Maryland Plaintiffs and the Maryland Class.

958.     At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

959.     At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

960.     At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

961.     Defendants had a duty to warn the Maryland Plaintiffs and the Maryland Class of the potentially dangerous propensities of the intended use of the Uniforms.

962.     Defendants failed to adequately warn the Maryland Plaintiffs and the Maryland Class that the use of the Uniforms could result in severe adverse health effects.

963.     These risks of which Defendants failed to adequately warn the Maryland Plaintiffs and the Maryland Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

964. The Uniforms were used and worn by the Maryland Plaintiffs and the Maryland Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

965. At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

966. Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

967. The risks associated with the use of the Uniforms would not be obvious to normal, reasonable users.

968. Had Defendants adequately warned the Maryland Plaintiffs and the Maryland Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

969. As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Maryland Plaintiffs and the Maryland Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT LXXXV
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Maryland Plaintiffs and the Maryland Class)

970. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

971. This claim is brought on behalf of the Maryland Plaintiffs and the Maryland Class.

972.     Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

    a.     That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

    b.     That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

    c.     That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

973.     The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

974.     The Maryland Plaintiffs and the Maryland Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Maryland Plaintiffs and the Maryland Class are and were in privity of contract with Defendants.

975.     Southwest, the Maryland Plaintiffs and the Maryland Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

976.     Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Maryland Plaintiffs and the Maryland Class.

977.     As a direct and proximate result of Cintas' breach of its express warranties, the Maryland Plaintiffs and the Maryland Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT LXXXVI
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the Maryland Plaintiffs and the Maryland Class)

978.     Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

979.     This claim is brought on behalf of the Maryland Plaintiffs and the Maryland Class.

980.     Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

981.     Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

982.     Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

983.    Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

984.    Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

985.    The Maryland Plaintiffs and the Maryland Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Maryland Plaintiffs and the Maryland Class are and were in privity of contract with Defendants.

986.    Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Maryland Plaintiffs and the Maryland Class.

987.    Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Maryland Plaintiffs and the Maryland Class.

988.    As a direct and proximate result of Cintas' breaches of implied warranties, the Maryland Plaintiffs and the Maryland Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT LXXXVII
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of the Maryland Plaintiffs and the Maryland Class)

989.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

990.    This claim is brought on behalf of the Maryland Plaintiffs and the Maryland Class.

991.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

992.    Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

993.    Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

994.    The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

995.    Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

996. The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

997. Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Maryland Plaintiffs and the Maryland Class when the Uniforms left Defendants' control.

998. As a direct and proximate result of Defendants' violations of the Warranty Act, the Maryland Plaintiffs and the Maryland Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

999. In accordance with 15 U.S.C. § 2310(d)(1), the Maryland Plaintiffs and the Maryland Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT LXXXVIII**
**INJUNCTIVE RELIEF**
**(On Behalf of the Maryland Plaintiffs and the Maryland Class)**

1000. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1001. This claim is brought on behalf of the Maryland Plaintiffs and the Maryland Class.

1002. The Maryland Plaintiffs and the Maryland Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1003. As set forth above, the Maryland Plaintiffs and the Maryland Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1004. Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1005. By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Maryland Plaintiffs and the Maryland Class to ongoing and future risks of adverse medical conditions.

1006. The Maryland Plaintiffs and the Maryland Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1007. As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1008. As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Maryland Plaintiffs and the Maryland Class as a result of the Uniforms.

1009. By actively monitoring and testing the Maryland Plaintiffs, the Maryland Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1010. Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Maryland Plaintiffs and the Maryland Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1011. The Maryland Plaintiffs and the Maryland Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1012. Without injunctive relief in the form of a recall and/or medical monitoring program, the Maryland Plaintiffs and the Maryland Class will continue to face an unreasonable risk of preventable injury and disability.

<div align="center">

**COUNT LXXXIX**
**NEGLIGENCE**
**(On Behalf of the Ohio Plaintiffs and the Ohio Class)**

</div>

1013. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1014. This claim is brought on behalf of the Ohio Plaintiffs and the Ohio Class.

1015. Defendants owed a duty to the Ohio Plaintiffs and the Ohio Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1016. Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

    a.    Failing to use reasonable care in designing, developing, manufacturing,

testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Ohio Plaintiffs and the Ohio Class, who wore the Uniforms and brought them into their homes;

b.    Failing to adequately warn the Ohio Plaintiffs and the Ohio Class that the use of the Uniforms could result in adverse health effects; and

c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Ohio Plaintiffs and the Ohio Class, who wore the Uniforms and brought them into their homes.

1017.  As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Ohio Plaintiffs and the Ohio Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XC**
**DESIGN DEFECT**
**(On Behalf of the Ohio Plaintiffs and the Ohio Class)**

</div>

1018.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1019.  This claim is brought on behalf of the Ohio Plaintiffs and the Ohio Class.

1020.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1021.   The Uniforms were defectively designed so as to render them unreasonably dangerous to the Ohio Plaintiffs and the Ohio Class.

1022.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1023.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1024.   The Uniforms were expected to and did reach the Ohio Plaintiffs and the Ohio Class without substantial change in the condition in which they were sold.

1025.   The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

1026.   The foreseeable risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design at the time the Uniforms left the control of Defendants.

1027.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Ohio Plaintiffs and the Ohio Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of

injuries to the Ohio Plaintiffs and the Ohio Class without substantially impairing the Uniforms' utility.

1028.  As a direct and proximate cause of Defendants' defective design of the Uniforms, the Ohio Plaintiffs and the Ohio Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XCI**
**MANUFACTURING DEFECT**
**(On Behalf of the Ohio Plaintiffs and the Ohio Class)**

</div>

1029.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1030.  This claim is brought on behalf of the Ohio Plaintiffs and the Ohio Class.

1031.  At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1032.  A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Ohio Plaintiffs and the Ohio Class.

1033.  The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1034.  The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Ohio Plaintiffs and the Ohio Class, as they deviated in a material way from the design

specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards.

1035.  The Ohio Plaintiffs and the Ohio Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1036.  As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Ohio Plaintiffs and the Ohio Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XCII
## FAILURE TO WARN
### (On Behalf of the Ohio Plaintiffs and the Ohio Class)

1037.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1038.  This claim is brought on behalf of the Ohio Plaintiffs and the Ohio Class.

1039.  At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1040.  At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1041.  At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1042. Defendants had a duty to warn the Ohio Plaintiffs and the Ohio Class of the potentially dangerous propensities of the intended use of the Uniforms.

1043. Defendants failed to adequately warn the Ohio Plaintiffs and the Ohio Class that the use of the Uniforms could result in severe adverse health effects.

1044. These risks of which Defendants failed to adequately warn the Ohio Plaintiffs and the Ohio Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1045. The Uniforms were used and worn by the Ohio Plaintiffs and the Ohio Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1046. At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1047. Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide an adequate warning to the users and wearers of the Uniforms that a manufacturer exercising reasonable care would have provided.

1048. Had Defendants adequately warned the Ohio Plaintiffs and the Ohio Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1049. As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Ohio Plaintiffs and the Ohio Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering,

severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XCIII**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Ohio Plaintiffs and the Ohio Class)**

</div>

1050.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1051.   This claim is brought on behalf of the Ohio Plaintiffs and the Ohio Class.

1052.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

    a.    That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

    b.    That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

    c.    That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1053.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1054.   The Ohio Plaintiffs and the Ohio Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas,

the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Ohio Plaintiffs and the Ohio Class are and were in privity of contract with Defendants.

1055. Southwest, the Ohio Plaintiffs and the Ohio Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1056. Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Ohio Plaintiffs and the Ohio Class.

1057. Based on information and belief, Southwest, the Ohio Plaintiffs, the Ohio Class, and/or other Southwest employees notified Cintas of its breach of express warranties. Cintas was on notice of its breach of express warranties well before Plaintiffs began this litigation.

1058. As a direct and proximate result of Cintas' breach of its express warranties, the Ohio Plaintiffs and the Ohio Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT XCIV**
**BREACH OF IMPLIED WARRANTIES**
**(On Behalf of the Ohio Plaintiffs and the Ohio Class)**

1059.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1060.   This claim is brought on behalf of the Ohio Plaintiffs and the Ohio Class.

1061.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1062.   Cintas impliedly warranted to Southwest that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1063.   Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1064.   Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1065.   Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1066.   The Ohio Plaintiffs and the Ohio Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Ohio Plaintiffs and the Ohio Class are and were in privity of contract with Defendants.

1067. Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Ohio Plaintiffs and the Ohio Class.

1068. Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Ohio Plaintiffs and the Ohio Class.

1069. As a direct and proximate result of Cintas' breaches of implied warranties in contract, the Ohio Plaintiffs and the Ohio Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT XCV
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
#### (On Behalf of the Ohio Plaintiffs and the Ohio Class)

1070. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1071. This claim is brought on behalf of the Ohio Plaintiffs and the Ohio Class.

1072. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1073.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1074.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1075.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1076.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1077.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1078.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Ohio Plaintiffs and the Ohio Class when the Uniforms left Defendants' control.

1079.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Ohio Plaintiffs and the Ohio Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1080.   In accordance with 15 U.S.C. § 2310(d)(1), the Ohio Plaintiffs and the Ohio Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT XCVI**
**INJUNCTIVE RELIEF**
**(On Behalf of the Ohio Plaintiffs and the Ohio Class)**

1081.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1082.   This claim is brought on behalf of the Ohio Plaintiffs and the Ohio Class.

1083.   The Ohio Plaintiffs and the Ohio Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1084.   As set forth above, the Ohio Plaintiffs and the Ohio Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1085.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1086.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Ohio Plaintiffs and the Ohio Class to ongoing and future risks of adverse medical conditions.

1087.   The Ohio Plaintiffs and the Ohio Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1088.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1089.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Ohio Plaintiffs and the Ohio Class as a result of the Uniforms.

1090.   By actively monitoring and testing the Ohio Plaintiffs, the Ohio Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1091.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Ohio Plaintiffs and the Ohio Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1092.   The Ohio Plaintiffs and the Ohio Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1093.   Without injunctive relief in the form of a recall and/or medical monitoring program, the Ohio Plaintiffs and the Ohio Class will continue to face an unreasonable risk of preventable injury and disability.

**COUNT XCVII**
**NEGLIGENCE**
**(On Behalf of the Oklahoma Plaintiffs and the Oklahoma Class)**

1094.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1095.   This claim is brought on behalf of the Oklahoma Plaintiffs and the Oklahoma Class.

1096.   Defendants owed a duty to the Oklahoma Plaintiffs and the Oklahoma Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1097.   Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

      a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Oklahoma Plaintiffs and the Oklahoma Class, who wore the Uniforms and brought them into their homes;

      b.    Failing to adequately warn the Oklahoma Plaintiffs and the Oklahoma Class that the use of the Uniforms could result in adverse health effects; and

      c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Oklahoma Plaintiffs and the Oklahoma Class, who wore the Uniforms and brought them into their homes.

1098.   As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Oklahoma Plaintiffs and the Oklahoma Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering,

severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT XCVIII**
**DESIGN DEFECT**
**(On Behalf of the Oklahoma Plaintiffs and the Oklahoma Class)**

</div>

1099.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1100.   This claim is brought on behalf of the Oklahoma Plaintiffs and the Oklahoma Class.

1101.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1102.   The Uniforms were defectively designed so as to render them unreasonably dangerous to the Oklahoma Plaintiffs and the Oklahoma Class.

1103.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1104.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1105.   The Uniforms were expected to and did reach the Oklahoma Plaintiffs and the Oklahoma Class without substantial change in the condition in which they were sold.

1106.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them with the ordinary knowledge common to the community as to the Uniforms' characteristics, when used in their intended and reasonably foreseeable manner.

1107. The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1108. At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Oklahoma Plaintiffs and the Oklahoma Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Oklahoma Plaintiffs and the Oklahoma Class without substantially impairing the Uniforms' utility.

1109. As a direct and proximate cause of Defendants' defective design of the Uniforms, the Oklahoma Plaintiffs and the Oklahoma Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<u>COUNT XCIX</u>
<u>MANUFACTURING DEFECT</u>
**(On Behalf of the Oklahoma Plaintiffs and the Oklahoma Class)**

1110. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1111. This claim is brought on behalf of the Oklahoma Plaintiffs and the Oklahoma Class.

1112. At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1113.   A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Oklahoma Plaintiffs and the Oklahoma Class.

1114.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them with the ordinary knowledge common to the community as to the Uniforms' characteristics, when used in their intended and reasonably foreseeable manner.

1115.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Oklahoma Plaintiffs and the Oklahoma Class.

1116.   The Oklahoma Plaintiffs and the Oklahoma Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1117.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Oklahoma Plaintiffs and the Oklahoma Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT C
## FAILURE TO WARN
### (On Behalf of the Oklahoma Plaintiffs and the Oklahoma Class)

1118.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1119.   This claim is brought on behalf of the Oklahoma Plaintiffs and the Oklahoma Class.

1120.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1121.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1122.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1123.   Defendants had a duty to warn the Oklahoma Plaintiffs and the Oklahoma Class of the potentially dangerous propensities of the intended use of the Uniforms, as Defendants had no reason to expect the users of the Uniforms to discover and realize such danger on their own.

1124.   Defendants failed to adequately warn the Oklahoma Plaintiffs and the Oklahoma Class that the use of the Uniforms could result in severe adverse health effects.

1125.   These risks of which Defendants failed to adequately warn the Oklahoma Plaintiffs and the Oklahoma Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1126.   The Uniforms were used and worn by the Oklahoma Plaintiffs and the Oklahoma Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1127.   At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1128.   Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1129.   Had Defendants adequately warned the Oklahoma Plaintiffs and the Oklahoma Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1130.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Oklahoma Plaintiffs and the Oklahoma Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CI**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Oklahoma Plaintiffs and the Oklahoma Class)**

</div>

1131.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1132.   This claim is brought on behalf of the Oklahoma Plaintiffs and the Oklahoma Class.

1133.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a.     That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b.     That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

c.     That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1134.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1135.   The Oklahoma Plaintiffs and the Oklahoma Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Oklahoma Plaintiffs and the Oklahoma Class are and were in privity of contract with Defendants.

1136.   Southwest, the Oklahoma Plaintiffs and the Oklahoma Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1137. Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Oklahoma Plaintiffs and the Oklahoma Class.

1138. As a direct and proximate result of Cintas' breach of its express warranties, the Oklahoma Plaintiffs and the Oklahoma Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CII**
**BREACH OF IMPLIED WARRANTIES**
**(On Behalf of the Oklahoma Plaintiffs and the Oklahoma Class)**

</div>

1139. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1140. This claim is brought on behalf of the Oklahoma Plaintiffs and the Oklahoma Class.

1141. Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1142. Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1143. Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1144. Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1145. Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1146.   The Oklahoma Plaintiffs and the Oklahoma Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Oklahoma Plaintiffs and the Oklahoma Class are and were in privity of contract with Defendants.

1147.   Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Oklahoma Plaintiffs and the Oklahoma Class.

1148.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Oklahoma Plaintiffs and the Oklahoma Class.

1149.   As a direct and proximate result of Cintas' breaches of implied warranties, the Oklahoma Plaintiffs and the Oklahoma Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CIII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On Behalf of the Oklahoma Plaintiffs and the Oklahoma Class)**

1150.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1151.    This claim is brought on behalf of the Oklahoma Plaintiffs and the Oklahoma Class.

1152.    The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1153.    Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1154.    Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1155.    The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1156.    Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1157.    The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1158.    Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which

they were intended to be used, were not defect free, and were harmful to the Oklahoma Plaintiffs and the Oklahoma Class when the Uniforms left Defendants' control.

1159.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Oklahoma Plaintiffs and the Oklahoma Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1160.   In accordance with 15 U.S.C. § 2310(d)(1), the Oklahoma Plaintiffs and the Oklahoma Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT CIV**
**INJUNCTIVE RELIEF**
**(On Behalf of the Oklahoma Plaintiffs and the Oklahoma Class)**

1161.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1162.   This claim is brought on behalf of the Oklahoma Plaintiffs and the Oklahoma Class.

1163.   The Oklahoma Plaintiffs and the Oklahoma Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1164.   As set forth above, the Oklahoma Plaintiffs and the Oklahoma Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1165.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1166.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Oklahoma Plaintiffs and the Oklahoma Class to ongoing and future risks of adverse medical conditions.

1167.   The Oklahoma Plaintiffs and the Oklahoma Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1168.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1169.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Oklahoma Plaintiffs and the Oklahoma Class as a result of the Uniforms.

1170.   By actively monitoring and testing the Oklahoma Plaintiffs, the Oklahoma Class and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1171.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Oklahoma Plaintiffs and the Oklahoma Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1172.   The Oklahoma Plaintiffs and the Oklahoma Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1173.   Without injunctive relief in the form of a recall and/or medical monitoring program, the Oklahoma Plaintiffs and the Oklahoma Class will continue to face an unreasonable risk of preventable injury and disability.

<u>**COUNT CV**</u>
<u>**NEGLIGENCE**</u>
**(On Behalf of the Missouri Plaintiffs and the Missouri Class)**

1174.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1175.   This claim is brought on behalf of the Missouri Plaintiffs and the Missouri Class.

1176.   Defendants owed a duty to the Missouri Plaintiffs and the Missouri Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1177.   Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

> a.   Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Missouri Plaintiffs and the Missouri Class, who wore the Uniforms and brought them into their homes;

    b.        Failing to adequately warn the Missouri Plaintiffs and the Missouri Class that the use of the Uniforms could result in adverse health effects; and

    c.        Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Missouri Plaintiffs and the Missouri Class, who wore the Uniforms and brought them into their homes.

1178.  As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Missouri Plaintiffs and the Missouri Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CVI**
**DESIGN DEFECT**
**(On Behalf of the Missouri Plaintiffs and the Missouri Class)**

</div>

1179.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1180.  This claim is brought on behalf of the Missouri Plaintiffs and the Missouri Class.

1181.  At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1182.  At the time they were sold, the Uniforms were defectively designed so as to render them unreasonably dangerous to the Missouri Plaintiffs and the Missouri Class when put to their reasonably anticipated use.

1183.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1184.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1185.   The Uniforms were expected to and did reach the Missouri Plaintiffs and the Missouri Class without substantial change in the condition in which they were sold.

1186.   The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

1187.   The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1188.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Missouri Plaintiffs and the Missouri Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Missouri Plaintiffs and the Missouri Class without substantially impairing the Uniforms' utility.

1189.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the Missouri Plaintiffs and the Missouri Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe

emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CVII**
**MANUFACTURING DEFECT**
**(On Behalf of the Missouri Plaintiffs and the Missouri Class)**

1190.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1191.   This claim is brought on behalf of the Missouri Plaintiffs and the Missouri Class.

1192.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1193.   A manufacturing defect existed in the Uniforms at the time they were sold, which rendered the Uniforms unreasonably dangerous to the Missouri Plaintiffs and the Missouri Class when put to a reasonably anticipated use.

1194.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1195.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Missouri Plaintiffs and the Missouri Class.

1196.   The Missouri Plaintiffs and the Missouri Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1197.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Missouri Plaintiffs and the Missouri Class have suffered and/or in the future will

suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CVIII**
**FAILURE TO WARN**
**(On Behalf of the Missouri Plaintiffs and the Missouri Class)**

</div>

1198.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1199.   This claim is brought on behalf of the Missouri Plaintiffs and the Missouri Class.

1200.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1201.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1202.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1203.    Defendants had a duty to warn the Missouri Plaintiffs and the Missouri Class of the potentially dangerous propensities of the intended use of the Uniforms.

1204.   Defendants failed to adequately warn the Missouri Plaintiffs and the Missouri Class that the use of the Uniforms could result in severe adverse health effects.

1205.   These risks of which Defendants failed to adequately warn the Missouri Plaintiffs and the Missouri Class were known or knowable in light of the generally recognized and prevailing

best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1206.   The Uniforms were used and worn by the Missouri Plaintiffs and the Missouri Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1207.   At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1208.   Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1209.   Had Defendants adequately warned the Missouri Plaintiffs and the Missouri Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1210.   The condition of the Uniforms which caused Plaintiffs' injuries was not the sort that would have been contemplated by Plaintiffs and was not reasonably expected in light of the Uniforms' nature and intended function.

1211.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Missouri Plaintiffs and the Missouri Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CIX**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Missouri Plaintiffs and the Missouri Class)**

1212.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1213.   This claim is brought on behalf of the Missouri Plaintiffs and the Missouri Class.

1214.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

> a.   That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;
>
> b.   That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and
>
> c.   That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1215.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms, and were a material factor which induced the purchase of the Uniforms.

1216.   The Missouri Plaintiffs and the Missouri Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently

immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Missouri Plaintiffs and the Missouri Class are and were in privity of contract with Defendants.

1217.   Southwest, the Missouri Plaintiffs and the Missouri Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1218.   Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Missouri Plaintiffs and the Missouri Class.

1219.   Based on information and belief, Southwest, the Missouri Plaintiffs, the Missouri Class, and/or other Southwest employees notified Cintas of its breach of express warranties. Cintas was on notice of its breach of express warranties well before Plaintiffs began this litigation.

1220.   As a direct and proximate result of Cintas' breach of its express warranties, the Missouri Plaintiffs and the Missouri Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CX
## BREACH OF IMPLIED WARRANTIES
**(On Behalf of the Missouri Plaintiffs and the Missouri Class)**

1221.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1222.   This claim is brought on behalf of the Missouri Plaintiffs and the Missouri Class.

1223.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1224.   Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1225.   Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1226.   Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1227.   Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1228.   The Missouri Plaintiffs and the Missouri Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Missouri Plaintiffs and the Missouri Class are and were in privity of contract with Defendants.

1229.   Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on

their containers and/or labels, if any; and/or which adversely affected the health and safety of the Missouri Plaintiffs and the Missouri Class.

1230.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Missouri Plaintiffs and the Missouri Class.

1231.   Based on information and belief, Southwest, the Missouri Plaintiffs, the Missouri Class, and/or other Southwest employees notified Cintas of its breach of implied warranties. Cintas was on notice of its breach of implied warranties well before Plaintiffs began this litigation.

1232.   As a direct and proximate result of Cintas' breaches of implied warranties, the Missouri Plaintiffs and the Missouri Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXI**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, _et seq._**
**(On Behalf of the Missouri Plaintiffs and the Missouri Class)**

1233.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1234.   This claim is brought on behalf of the Missouri Plaintiffs and the Missouri Class.

1235.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, _et seq._ (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1236.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1237.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1238.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1239.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1240.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1241.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Missouri Plaintiffs and the Missouri Class when the Uniforms left Defendants' control.

1242.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Missouri Plaintiffs and the Missouri Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1243.   In accordance with 15 U.S.C. § 2310(d)(1), the Missouri Plaintiffs and the Missouri Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

## COUNT CXII
## INJUNCTIVE RELIEF
### (On Behalf of the Missouri Plaintiffs and the Missouri Class)

1244.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1245.   This claim is brought on behalf of the Missouri Plaintiffs and the Missouri Class.

1246.   The Missouri Plaintiffs and the Missouri Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1247.   As set forth above, the Missouri Plaintiffs and the Missouri Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1248.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1249.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Missouri Plaintiffs and the Missouri Class s to ongoing and future risks of adverse medical conditions.

1250.   The Missouri Plaintiffs and the Missouri Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1251.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1252.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Missouri Plaintiffs and the Missouri Class as a result of the Uniforms.

1253.   By actively monitoring and testing the Missouri Plaintiffs, the Missouri Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1254.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Missouri Plaintiffs and the Missouri Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1255.   The Missouri Plaintiffs and the Missouri Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1256.   Without injunctive relief in the form of a recall and/or medical monitoring program, the Missouri Plaintiffs and the Missouri Class will continue to face an unreasonable risk of preventable injury and disability.

## COUNT CXIII
## NEGLIGENCE
### (On Behalf of the Idaho Plaintiffs and the Idaho Class)

1257.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1258.   This claim is brought on behalf of the Idaho Plaintiffs and the Idaho Class.

1259.   Defendants owed a duty to the Idaho Plaintiffs and the Idaho Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1260.   Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

> a.   Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Idaho Plaintiffs and the Idaho Class, who wore the Uniforms and brought them into their homes;

> b.   Failing to adequately warn the Idaho Plaintiffs and the Idaho Class that the use of the Uniforms could result in adverse health effects; and

> c.   Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Idaho Plaintiffs and the Idaho Class, who wore the Uniforms and brought them into their homes.

1261.   As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Idaho Plaintiffs and the Idaho Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe

emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CXIV
## DESIGN DEFECT
**(On Behalf of the Idaho Plaintiffs and the Idaho Class)**

1262.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1263.    This claim is brought on behalf of the Idaho Plaintiffs and the Idaho Class.

1264.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1265.    The Uniforms were defectively designed so as to render them unreasonably dangerous to the Idaho Plaintiffs and the Idaho Class.

1266.    At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1267.    A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1268.    The Uniforms were defective and unreasonably dangerous at the time they left Defendant's control.

1269.    The Uniforms were expected to and did reach the Idaho Plaintiffs and the Idaho Class without substantial change in the condition in which they were sold.

1270. The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1271. The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1272. At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Idaho Plaintiffs and the Idaho Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Idaho Plaintiffs and the Idaho Class without substantially impairing the Uniforms' utility.

1273. As a direct and proximate cause of Defendants' defective design of the Uniforms, the Idaho Plaintiffs and the Idaho Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXV**
**MANUFACTURING DEFECT**
**(On Behalf of the Idaho Plaintiffs and the Idaho Class)**

1274. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1275. This claim is brought on behalf of the Idaho Plaintiffs and the Idaho Class.

1276.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1277.   A manufacturing defect existed in the Uniforms at the time they left Defendant's control which rendered the Uniforms unreasonably dangerous to the Idaho Plaintiffs and the Idaho Class.

1278.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1279.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Idaho Plaintiffs and the Idaho Class.

1280.   The Idaho Plaintiffs and the Idaho Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1281.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Idaho Plaintiffs and the Idaho Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CXVI
## FAILURE TO WARN
### (On Behalf of the Idaho Plaintiffs and the Idaho Class)

1282.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1283.   This claim is brought on behalf of the Idaho Plaintiffs and the Idaho Class.

1284.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1285.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1286.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users at the time they left Defendants' control, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1287.   Defendants had a duty to warn the Idaho Plaintiffs and the Idaho Class of the potentially dangerous propensities of the intended use of the Uniforms.

1288.   Defendants failed to adequately warn the Idaho Plaintiffs and the Idaho Class that the use of the Uniforms could result in severe adverse health effects.

1289.   These risks of which Defendants failed to adequately warn the Idaho Plaintiffs and the Idaho Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1290.   The Uniforms were used and worn by the Idaho Plaintiffs and the Idaho Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1291.   Due to the lack of proper warnings, the Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1292.   At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1293.   Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1294.   Had Defendants adequately warned the Idaho Plaintiffs and the Idaho Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1295.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Idaho Plaintiffs and the Idaho Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CXVII
### BREACH OF EXPRESS WARRANTY
**(On Behalf of the Idaho Plaintiffs and the Idaho Class)**

1296.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1297.   This claim is brought on behalf of the Idaho Plaintiffs and the Idaho Class.

1298. Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

      a.    That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

      b.    That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

      c.    That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1299. The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1300. The Idaho Plaintiffs and the Idaho Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Idaho Plaintiffs and the Idaho Class are and were in privity of contract with Defendants.

1301. Southwest, the Idaho Plaintiffs and the Idaho Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1302. Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Idaho Plaintiffs and the Idaho Class.

1303. As a direct and proximate result of Cintas' breach of its express warranties, the Idaho Plaintiffs and the Idaho Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXVIII**
**BREACH OF IMPLIED WARRANTIES**
**(On Behalf of the Idaho Plaintiffs and the Idaho Class)**

1304. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1305. This claim is brought on behalf of the Idaho Plaintiffs and the Idaho Class.

1306. Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1307. Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1308. Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1309.   Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1310.   Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1311.   The Idaho Plaintiffs and the Idaho Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Idaho Plaintiffs and the Idaho Class are and were in privity of contract with Defendants.

1312.   Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Idaho Plaintiffs and the Idaho Class.

1313.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Idaho Plaintiffs and the Idaho Class.

1314.   As a direct and proximate result of Cintas' breaches of implied warranties, the Idaho Plaintiffs and the Idaho Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXIX**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On Behalf of the Idaho Plaintiffs and the Idaho Class)**

1315.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1316.   This claim is brought on behalf of the Idaho Plaintiffs and the Idaho Class.

1317.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1318.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1319.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1320.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1321.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1322.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1323.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Idaho Plaintiffs and the Idaho Class when the Uniforms left Defendants' control.

1324.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Idaho Plaintiffs and the Idaho Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1325.   In accordance with 15 U.S.C. § 2310(d)(1), the Idaho Plaintiffs and the Idaho Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT CXX**
**INJUNCTIVE RELIEF**
**(On Behalf of the Idaho Plaintiffs and the Idaho Class)**

1326.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1327.   This claim is brought on behalf of the Idaho Plaintiffs and the Idaho Class.

1328.   The Idaho Plaintiffs and the Idaho Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1329.  As set forth above, the Idaho Plaintiffs and the Idaho Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1330.  Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1331.  By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Idaho Plaintiffs and the Idaho Class to ongoing and future risks of adverse medical conditions.

1332.  The Idaho Plaintiffs and the Idaho Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1333.  As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1334.  As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Idaho Plaintiffs and the Idaho Class as a result of the Uniforms.

1335.  By actively monitoring and testing the Idaho Plaintiffs, the Idaho Class and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1336. Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Idaho Plaintiffs and the Idaho Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1337. The Idaho Plaintiffs and the Idaho Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1338. Without injunctive relief in the form of a recall and/or medical monitoring program, the Idaho Plaintiffs and the Idaho Class will continue to face an unreasonable risk of preventable injury and disability.

## COUNT CXXI
## NEGLIGENCE
### (On Behalf of the Arkansas Plaintiffs and the Arkansas Class)

1339. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1340. This claim is brought on behalf of the Arkansas Plaintiffs and the Arkansas Class.

1341. Defendants owed a duty to the Arkansas Plaintiffs and the Arkansas Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1342. Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

      a.    Failing to use reasonable care in designing, developing, manufacturing,

testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Arkansas Plaintiffs and the Arkansas Class, who wore the Uniforms and brought them into their homes;

b.    Failing to adequately warn the Arkansas Plaintiffs and the Arkansas Class that the use of the Uniforms could result in adverse health effects; and

c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Arkansas Plaintiffs and the Arkansas Class, who wore the Uniforms and brought them into their homes.

1343.  As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Arkansas Plaintiffs and the Arkansas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CXXII**
**DESIGN DEFECT**
**(On Behalf of the Arkansas Plaintiffs and the Arkansas Class)**

</div>

1344.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1345.  This claim is brought on behalf of the Arkansas Plaintiffs and the Arkansas Class.

1346.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1347.   The Uniforms were defectively designed at the time they left Defendants' control, so as to render them unreasonably dangerous to the Arkansas Plaintiffs and the Arkansas Class.

1348.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1349.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1350.   The Uniforms were expected to and did reach the Arkansas Plaintiffs and the Arkansas Class without substantial change in the condition in which they were sold.

1351.   The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

1352.   The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1353.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Arkansas Plaintiffs and the Arkansas Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the

risk and amount of injuries to the Arkansas Plaintiffs and the Arkansas Class without substantially impairing the Uniforms' utility.

1354.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the Arkansas Plaintiffs and the Arkansas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CXXIII**
**MANUFACTURING DEFECT**
**(On Behalf of the Arkansas Plaintiffs and the Arkansas Class)**

</div>

1355.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1356.   This claim is brought on behalf of the Arkansas Plaintiffs and the Arkansas Class.

1357.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1358.   A manufacturing defect existed in the Uniforms at the time they left Defendant's hands, which rendered the Uniforms unreasonably dangerous to the Arkansas Plaintiffs and the Arkansas Class.

1359.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the Uniforms as to their characteristics.

1360.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Arkansas Plaintiffs and the Arkansas Class.

1361.   The Arkansas Plaintiffs and the Arkansas Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1362.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Arkansas Plaintiffs and the Arkansas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXXIV**
**FAILURE TO WARN**
**(On Behalf of the Arkansas Plaintiffs and the Arkansas Class)**

1363.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1364.   This claim is brought on behalf of the Arkansas Plaintiffs and the Arkansas Class.

1365.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1366.   At the time the Uniforms left Defendants' control, they lacked adequate, appropriate, and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1367. At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1368. Defendants had a duty to warn the Arkansas Plaintiffs and the Arkansas Class of the potentially dangerous propensities of the intended use of the Uniforms.

1369. Defendants failed to adequately warn the Arkansas Plaintiffs and the Arkansas Class that the use of the Uniforms could result in severe adverse health effects.

1370. These risks of which Defendants failed to adequately warn the Arkansas Plaintiffs and the Arkansas Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1371. The Uniforms were used and worn by the Arkansas Plaintiffs and the Arkansas Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1372. At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1373. Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1374. Had Defendants adequately warned the Arkansas Plaintiffs and the Arkansas Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1375.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Arkansas Plaintiffs and the Arkansas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CXXV**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Arkansas Plaintiffs and the Arkansas Class)**

</div>

1376.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1377.   This claim is brought on behalf of the Arkansas Plaintiffs and the Arkansas Class.

1378.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a.   That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b.   That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

c.   That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1379. The above-listed warranties, representations, descriptions, affirmations of fact, and promises were a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1380. The Arkansas Plaintiffs and the Arkansas Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Arkansas Plaintiffs and the Arkansas Class are and were in privity of contract with Defendants.

1381. Southwest, the Arkansas Plaintiffs and the Arkansas Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1382. Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Arkansas Plaintiffs and the Arkansas Class.

1383. As a direct and proximate result of Cintas' breach of its express warranties, the Arkansas Plaintiffs and the Arkansas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CXXVI
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the Arkansas Plaintiffs and the Arkansas Class)

1384.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1385.    This claim is brought on behalf of the Arkansas Plaintiffs and the Arkansas Class.

1386.    Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1387.    Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1388.    Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1389.    Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1390.    Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1391.    The Arkansas Plaintiffs and the Arkansas Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Arkansas Plaintiffs and the Arkansas Class are and were in privity of contract with Defendants.

1392.   Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Arkansas Plaintiffs and the Arkansas Class.

1393.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Arkansas Plaintiffs and the Arkansas Class.

1394.   As a direct and proximate result of Cintas' breaches of implied warranties, the Arkansas Plaintiffs and the Arkansas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CXXVII
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
**(On Behalf of the Arkansas Plaintiffs and the Arkansas Class)**

1395.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1396.   This claim is brought on behalf of the Arkansas Plaintiffs and the Arkansas Class.

1397.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

227

1398.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1399.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1400.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1401.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1402.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1403.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Arkansas Plaintiffs and the Arkansas Class when the Uniforms left Defendants' control.

1404.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Arkansas Plaintiffs and the Arkansas Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1405.  In accordance with 15 U.S.C. § 2310(d)(1), the Arkansas Plaintiffs and the Arkansas Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT CXXVIII**
**INJUNCTIVE RELIEF**
**(On Behalf of the Arkansas Plaintiffs and the Arkansas Class)**

1406.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1407.  This claim is brought on behalf of the Arkansas Plaintiffs and the Arkansas Class.

1408.  The Arkansas Plaintiffs and the Arkansas Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1409.  As set forth above, the Arkansas Plaintiffs and the Arkansas Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1410.  Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1411.  By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Arkansas Plaintiffs and the Arkansas Class to ongoing and future risks of adverse medical conditions.

1412.  The Arkansas Plaintiffs and the Arkansas Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1413.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1414.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Arkansas Plaintiffs and the Arkansas Class as a result of the Uniforms.

1415.   By actively monitoring and testing the Arkansas Plaintiffs, the Arkansas Class and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1416.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Arkansas Plaintiffs and the Arkansas Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1417.   The Arkansas Plaintiffs and the Arkansas Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1418.   Without injunctive relief in the form of a recall and/or medical monitoring program, the Arkansas Plaintiffs and the Arkansas Class will continue to face an unreasonable risk of preventable injury and disability.

### COUNT CXXIX
### NEGLIGENCE
**(On Behalf of the Indiana Plaintiffs and the Indiana Class)**

1419.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1420.   This claim is brought on behalf of the Indiana Plaintiffs and the Indiana Class.

1421.   Defendants owed a duty to the Indiana Plaintiffs and the Indiana Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1422.   Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

        a.     Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Indiana Plaintiffs and the Indiana Class, who wore the Uniforms and brought them into their homes;

        b.     Failing to adequately warn the Indiana Plaintiffs and the Indiana Class that the use of the Uniforms could result in adverse health effects; and

        c.     Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Indiana Plaintiffs and the Indiana Class, who wore the Uniforms and brought them into their homes.

1423.   As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Indiana Plaintiffs and the Indiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering,

severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CXXX**
**DESIGN DEFECT**
**(On Behalf of the Indiana Plaintiffs and the Indiana Class)**

</div>

1424.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1425.   This claim is brought on behalf of the Indiana Plaintiffs and the Indiana Class.

1426.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1427.   The Uniforms were defectively designed so as to render them unreasonably dangerous to the Indiana Plaintiffs and the Indiana Class.

1428.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1429.   Defendants failed to exercise reasonable care under the circumstances in designing the Uniforms.

1430.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1431.   The Uniforms were expected to and did reach the Indiana Plaintiffs and the Indiana Class without substantial change in the condition in which they were sold.

1432.   The Uniforms were dangerous to an extent beyond that which would be expected by the ordinary consumer who purchased them when used in their intended and reasonably foreseeable manner.

1433.   The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1434.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Indiana Plaintiffs and the Indiana Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Indiana Plaintiffs and the Indiana Class without substantially impairing the Uniforms' utility.

1435.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the Indiana Plaintiffs and the Indiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1436.   Defendants knew, or reasonably should have foreseen that the Indiana Plaintiffs and the Indiana Class would be subject to the harm caused by the Uniforms' defective condition.

## COUNT CXXXI
## MANUFACTURING DEFECT
### (On Behalf of the Indiana Plaintiffs and the Indiana Class)

1437.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1438.   This claim is brought on behalf of the Indiana Plaintiffs and the Indiana Class.

1439.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1440.   A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Indiana Plaintiffs and the Indiana Class.

1441.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them, with the ordinary knowledge common to the Uniforms as to their characteristics.

1442.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Indiana Plaintiffs and the Indiana Class.

1443.   The Indiana Plaintiffs and the Indiana Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1444.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Indiana Plaintiffs and the Indiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CXXXII
### FAILURE TO WARN
**(On Behalf of the Indiana Plaintiffs and the Indiana Class)**

1445.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1446.   This claim is brought on behalf of the Indiana Plaintiffs and the Indiana Class.

1447.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1448.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1449.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1450.   Defendants failed to exercise reasonable care under the circumstances in providing appropriate warnings and/or instructions with the Uniforms.

1451.   Defendants had a duty to warn the Indiana Plaintiffs and the Indiana Class of the potentially dangerous propensities of the intended use of the Uniforms.

1452.   Defendants failed to adequately warn the Indiana Plaintiffs and the Indiana Class that the use of the Uniforms could result in severe adverse health effects.

1453.   These risks of which Defendants failed to adequately warn the Indiana Plaintiffs and the Indiana Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1454.   The Uniforms were used and worn by the Indiana Plaintiffs and the Indiana Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1455.   At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1456.   Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1457.   Had Defendants adequately warned the Indiana Plaintiffs and the Indiana Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1458.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Indiana Plaintiffs and the Indiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CXXXIII**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Indiana Plaintiffs and the Indiana Class)**

</div>

1459.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1460.   This claim is brought on behalf of the Indiana Plaintiffs and the Indiana Class.

1461.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

       a.      That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

       b.      That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

       c.      That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1462.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises became a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1463.   The Indiana Plaintiffs and the Indiana Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Indiana Plaintiffs and the Indiana Class are and were in privity of contract with Defendants.

1464.   Southwest, the Indiana Plaintiffs and the Indiana Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1465. Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Indiana Plaintiffs and the Indiana Class.

1466. As a direct and proximate result of Cintas' breach of its express warranties, the Indiana Plaintiffs and the Indiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CXXXIV
### BREACH OF IMPLIED WARRANTIES
#### (On Behalf of the Indiana Plaintiffs and the Indiana Class)

1467. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1468. This claim is brought on behalf of the Indiana Plaintiffs and the Indiana Class.

1469. Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1470. Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1471. Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1472. Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1473. Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1474. The Indiana Plaintiffs and the Indiana Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Indiana Plaintiffs and the Indiana Class are and were in privity of contract with Defendants.

1475. Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Indiana Plaintiffs and the Indiana Class.

1476. Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Indiana Plaintiffs and the Indiana Class.

1477. As a direct and proximate result of Cintas' breaches of implied warranties, the Indiana Plaintiffs and the Indiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXXXV**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, et seq.**
**(On Behalf of the Indiana Plaintiffs and the Indiana Class)**

1478.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1479.   This claim is brought on behalf of the Indiana Plaintiffs and the Indiana Class.

1480.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1481.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1482.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1483.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1484.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1485.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1486.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which

they were intended to be used, were not defect free, and were harmful to the Indiana Plaintiffs and the Indiana Class when the Uniforms left Defendants' control.

1487.    As a direct and proximate result of Defendants' violations of the Warranty Act, the Indiana Plaintiffs and the Indiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1488.    In accordance with 15 U.S.C. § 2310(d)(1), the Indiana Plaintiffs and the Indiana Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

<div align="center">

**COUNT CXXXVI**
**INJUNCTIVE RELIEF**
**(On Behalf of the Indiana Plaintiffs and the Indiana Class)**

</div>

1489.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1490.    This claim is brought on behalf of the Indiana Plaintiffs and the Indiana Class.

1491.    The Indiana Plaintiffs and the Indiana Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1492.    As set forth above, the Indiana Plaintiffs and the Indiana Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1493.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1494.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Indiana Plaintiffs and the Indiana Class to ongoing and future risks of adverse medical conditions.

1495.   The Indiana Plaintiffs and the Indiana Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1496.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1497.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Indiana Plaintiffs and the Indiana Class as a result of the Uniforms.

1498.   By actively monitoring and testing the Indiana Plaintiffs, the Indiana Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1499.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Indiana Plaintiffs and the Indiana Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1500. The Indiana Plaintiffs and the Indiana Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1501. Without injunctive relief in the form of a recall and/or medical monitoring program, the Indiana Plaintiffs and the Indiana Class will continue to face an unreasonable risk of preventable injury and disability.

<div align="center">

**COUNT CXXXVII**
**NEGLIGENCE**
**(On Behalf of the Oregon Plaintiffs and the Oregon Class)**

</div>

1502. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1503. This claim is brought on behalf of the Oregon Plaintiffs and the Oregon Class.

1504. Defendants owed a duty to the Oregon Plaintiffs and the Oregon Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1505. Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

a. Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Oregon Plaintiffs and the Oregon Class, who wore the Uniforms and brought them into their homes;

b.     Failing to adequately warn the Oregon Plaintiffs and the Oregon Class that the use of the Uniforms could result in adverse health effects; and

c.     Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Oregon Plaintiffs and the Oregon Class, who wore the Uniforms and brought them into their homes.

1506.   As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Oregon Plaintiffs and the Oregon Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CXXXVIII**
**DESIGN DEFECT**
**(On Behalf of the Oregon Plaintiffs and the Oregon Class)**

</div>

1507.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1508.   This claim is brought on behalf of the Oregon Plaintiffs and the Oregon Class.

1509.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1510.   The Uniforms were defectively designed so as to render them unreasonably dangerous to the Oregon Plaintiffs and the Oregon Class.

1511.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1512.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1513.   The Uniforms were expected to and did reach the Oregon Plaintiffs and the Oregon Class without substantial change in the condition in which they were sold.

1514.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1515.   The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1516.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Oregon Plaintiffs and the Oregon Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Oregon Plaintiffs and the Oregon Class without substantially impairing the Uniforms' utility.

1517.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the Oregon Plaintiffs and the Oregon Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe

emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CXXXIX
## MANUFACTURING DEFECT
**(On Behalf of the Oregon Plaintiffs and the Oregon Class)**

1518.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1519.   This claim is brought on behalf of the Oregon Plaintiffs and the Oregon Class.

1520.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1521.   A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Oregon Plaintiffs and the Oregon Class.

1522.   The Uniforms were expected to and did reach the Oregon Plaintiffs and the Oregon Class without substantial change in the condition in which they were sold.

1523.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1524.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Oregon Plaintiffs and the Oregon Class.

1525.   The Oregon Plaintiffs and the Oregon Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1526.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Oregon Plaintiffs and the Oregon Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXL**
**FAILURE TO WARN**
**(On Behalf of the Oregon Plaintiffs and the Oregon Class)**

1527.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1528.   This claim is brought on behalf of the Oregon Plaintiffs and the Oregon Class.

1529.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1530.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1531.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1532.   The Uniforms were expected to and did reach the Oregon Plaintiffs and the Oregon Class without substantial change in the condition in which they were sold.

1533.   Defendants had a duty to warn the Oregon Plaintiffs and the Oregon Class of the potentially dangerous propensities of the intended use of the Uniforms.

1534. Defendants failed to adequately warn the Oregon Plaintiffs and the Oregon Class that the use of the Uniforms could result in severe adverse health effects.

1535. These risks of which Defendants failed to adequately warn the Oregon Plaintiffs and the Oregon Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1536. The Uniforms were used and worn by the Oregon Plaintiffs and the Oregon Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1537. At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1538. Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1539. Had Defendants adequately warned the Oregon Plaintiffs and the Oregon Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1540. As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Oregon Plaintiffs and the Oregon Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CXLI
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Oregon Plaintiffs and the Oregon Class)

1541.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1542.   This claim is brought on behalf of the Oregon Plaintiffs and the Oregon Class.

1543.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

   a.   That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

   b.   That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

   c.   That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1544.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises became a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1545.   The Oregon Plaintiffs and the Oregon Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently

immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Oregon Plaintiffs and the Oregon Class are and were in privity of contract with Defendants.

1546.   Southwest, the Oregon Plaintiffs and the Oregon Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1547.   Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Oregon Plaintiffs and the Oregon Class.

1548.   As a direct and proximate result of Cintas' breach of its express warranties, the Oregon Plaintiffs and the Oregon Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CXLII
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the Oregon Plaintiffs and the Oregon Class)

1549.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1550.   This claim is brought on behalf of the Oregon Plaintiffs and the Oregon Class.

1551.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1552.   Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1553.   Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1554.   Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1555.   Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1556.   The Oregon Plaintiffs and the Oregon Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Oregon Plaintiffs and the Oregon Class are and were in privity of contract with Defendants.

1557.   Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Oregon Plaintiffs and the Oregon Class.

1558.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Oregon Plaintiffs and the Oregon Class.

1559.   As a direct and proximate result of Cintas' breaches of implied warranties, the Oregon Plaintiffs and the Oregon Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CXLIII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On Behalf of the Oregon Plaintiffs and the Oregon Class)**

</div>

1560.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1561.   This claim is brought on behalf of the Oregon Plaintiffs and the Oregon Class.

1562.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1563.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1564.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1565.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1566.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1567.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1568.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Oregon Plaintiffs and the Oregon Class when the Uniforms left Defendants' control.

1569.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Oregon Plaintiffs and the Oregon Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1570.   In accordance with 15 U.S.C. § 2310(d)(1), the Oregon Plaintiffs and the Oregon Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

### COUNT CXLIV
### INJUNCTIVE RELIEF
### (On Behalf of the Oregon Plaintiffs and the Oregon Class)

1571.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1572.   This claim is brought on behalf of the Oregon Plaintiffs and the Oregon Class.

1573.   The Oregon Plaintiffs and the Oregon Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1574.   As set forth above, the Oregon Plaintiffs and the Oregon Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1575.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1576.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Oregon Plaintiffs and the Oregon Class to ongoing and future risks of adverse medical conditions.

1577.   The Oregon Plaintiffs and the Oregon Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1578.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1579.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Oregon Plaintiffs and the Oregon Class as a result of the Uniforms.

1580. By actively monitoring and testing Oregon Plaintiffs, the Oregon Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1581. Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Oregon Plaintiffs and the Oregon Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1582. The Oregon Plaintiffs and the Oregon Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1583. Without injunctive relief in the form of a recall and/or medical monitoring program, the Oregon Plaintiffs and the Oregon Class will continue to face an unreasonable risk of preventable injury and disability.

## COUNT CXLV
## NEGLIGENCE
### (On Behalf of the Washington Plaintiffs and the Washington Class)

1584. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1585. This claim is brought on behalf of the Washington Plaintiffs and the Washington Class.

1586. Defendants owed a duty to the Washington Plaintiffs and the Washington Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1587. Defendants were negligent in failing to use reasonable care in designing,

developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

    a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Washington Plaintiffs and the Washington Class, who wore the Uniforms and brought them into their homes;

    b.    Failing to adequately warn the Washington Plaintiffs and the Washington Class that the use of the Uniforms could result in adverse health effects; and

    c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Washington Plaintiffs and the Washington Class, who wore the Uniforms and brought them into their homes.

1588.  As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Washington Plaintiffs and the Washington Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CXLVI
## DESIGN DEFECT
**(On Behalf of the Washington Plaintiffs and the Washington Class s)**

1589.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1590.   This claim is brought on behalf of the Washington Plaintiffs and the Washington Class.

1591.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1592.   The Uniforms were defectively designed so as to render them not reasonably dangerous to the Washington Plaintiffs and the Washington Class.

1593.   At all times material to this action, the Uniforms were not reasonably safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1594.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1595.   The Uniforms were expected to and did reach the Washington Plaintiffs and the Washington Class without substantial change in the condition in which they were sold.

1596.   The Uniforms were not reasonably safe to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1597.   The risks of harm, and the seriousness of those harms, in the use of the Uniforms inherent in their design outweighed the burden on the Defendant to design a product that would have prevented those harms and any adverse effect that an alternative design that was practical and feasible would have on the usefulness of the product.

1598.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries and harm to the Washington Plaintiffs and the Washington Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries and harm to the Washington Plaintiffs and the Washington Class without substantially impairing the Uniforms' utility.

1599.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the Washington Plaintiffs and the Washington Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXLVII**
**MANUFACTURING DEFECT**
**(On Behalf of the Washington Plaintiffs and the Washington Class)**

1600.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1601.   This claim is brought on behalf of the Washington Plaintiffs and the Washington Class.

1602.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1603.   A manufacturing defect existed in the Uniforms which rendered the Uniforms not reasonably safe in construction to the Washington Plaintiffs and the Washington Class.

1604.   There uniforms were also not reasonably safe because they did not conform to the Defendants' express warranties and they did not conform the implied warranties or merchantability and fitness for a particular purpose, as alleged below.

1605.   The Uniforms were expected to and did reach the Washington Plaintiffs and the Washington Class without substantial change in the condition in which they were sold.

1606.   The Uniforms were not reasonably safe to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1607.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Washington Plaintiffs and the Washington Class.

1608.   The Washington Plaintiffs and the Washington Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1609.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Washington Plaintiffs and the Washington Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CXLVIII**
**FAILURE TO WARN**
**(On Behalf of the Washington Plaintiffs and the Washington Class)**

1610.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1611.  This claim is brought on behalf of the Washington Plaintiffs and the Washington Class.

1612.  At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1613.  At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1614.  At the time the Uniforms left Defendants' control, they were not reasonably safe to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1615.  The Uniforms were not reasonably safe to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics

1616.  The likelihood that the Uniforms would cause harm to the Washington Plaintiffs and the Washington Class, or similar harms, and the seriousness of those harms, rendered the lack of proper warnings or instructions with the Uniforms inadequate.

1617.  Defendants could have provided warnings or instructions with the Uniforms which would have warned the Washington Plaintiffs and the Washington Class of the potentially

dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1618.   The Uniforms were expected to and did reach the Washington Plaintiffs and the Washington Class without substantial change in the condition in which they were sold.

1619.   Defendants had a duty to warn the Washington Plaintiffs and the Washington Class of the potentially dangerous propensities of the intended use of the Uniforms.

1620.   Defendants failed to adequately warn the Washington Plaintiffs and the Washington Class that the use of the Uniforms could result in severe adverse health effects.

1621.   These harms of which Defendants failed to adequately warn the Washington Plaintiffs and the Washington Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1622.   The Uniforms were used and worn by the Washington Plaintiffs and the Washington Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1623.   At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1624.   Defendants knew or should have known of the risk of injury and harm from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1625.   Had Defendants adequately warned the Washington Plaintiffs and the Washington Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries, harm, and adverse health consequences before they occurred.

1626.   As a direct and proximate result of Cintas' failure to warn of the risk of injury and harm from the Uniforms, the Washington Plaintiffs and the Washington Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CXLIX**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Washington Plaintiffs and the Washington Class)**

</div>

1627.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1628.   This claim is brought on behalf of the Washington Plaintiffs and the Washington Class.

1629.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

   a.   That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

   b.   That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

   c.   That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1630.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises became a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1631.   The Washington Plaintiffs and the Washington Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Washington Plaintiffs and the Washington Class are and were in privity of contract with Defendants.

1632.   Southwest, the Washington Plaintiffs and the Washington Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1633.   Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Washington Plaintiffs and the Washington Class.

1634.   As a direct and proximate result of Cintas' breach of its express warranties, the Washington Plaintiffs and the Washington Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CL**
**BREACH OF IMPLIED WARRANTIES**
**(On Behalf of the Washington Plaintiffs and the Washington Class)**

</div>

1635.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1636.   This claim is brought on behalf of the Washington Plaintiffs and the Washington Class.

1637.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1638.   Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1639.   Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1640.   Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1641.   Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1642.   The Washington Plaintiffs and the Washington Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Washington Plaintiffs and the Washington Class are and were in privity of contract with Defendants.

<div align="center">264</div>

1643.   Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Washington Plaintiffs and the Washington Class.

1644.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Washington Plaintiffs and the Washington Class.

1645.   As a direct and proximate result of Cintas' breaches of implied warranties, the Washington Plaintiffs and the Washington Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CLI
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
**(On Behalf of the Washington Plaintiffs and the Washington Class)**

1646.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1647.   This claim is brought on behalf of the Washington Plaintiffs and the Washington Class.

1648.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1649.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1650.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1651.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1652.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1653.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1654.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Washington Plaintiffs and the Washington Class when the Uniforms left Defendants' control.

1655.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Washington Plaintiffs and the Washington Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering,

severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1656.  In accordance with 15 U.S.C. § 2310(d)(1), the Washington Plaintiffs and the Washington Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

**COUNT CLII**
**INJUNCTIVE RELIEF**
**(On Behalf of the Washington Plaintiffs and the Washington Class)**

1657.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1658.  This claim is brought on behalf of the Washington Plaintiffs and the Washington Class.

1659.  The Washington Plaintiffs and the Washington Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1660.  As set forth above, the Washington Plaintiffs and the Washington Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1661.  Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1662.  By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Washington Plaintiffs and the Washington Class to ongoing and future risks of adverse medical conditions.

1663. The Washington Plaintiffs and the Washington Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1664. As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1665. As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Washington Plaintiffs and the Washington Class as a result of the Uniforms.

1666. By actively monitoring and testing Washington Plaintiffs and the Washington Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1667. Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Washington Plaintiffs and the Washington Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1668. The Washington Plaintiffs and the Washington Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1669. Without injunctive relief in the form of a recall and/or medical monitoring program, the Washington Plaintiffs and the Washington Class will continue to face an unreasonable risk of preventable injury and disability.

**COUNT CLIII**
**NEGLIGENCE**
**(On Behalf of the South Carolina Plaintiffs and the South Carolina Class)**

1670.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1671.   This claim is brought on behalf of the South Carolina Plaintiffs and the South Carolina Class.

1672.   Defendants owed a duty to the South Carolina Plaintiffs and the South Carolina Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1673.   Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

a.      Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the South Carolina Plaintiffs and the South Carolina Class, who wore the Uniforms and brought them into their homes;

b.      Failing to adequately warn the South Carolina Plaintiffs and the South Carolina Class that the use of the Uniforms could result in adverse health effects; and

c.      Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to

avoid an unreasonable risk of harm to Southwest employees, including the South Carolina Plaintiffs and the South Carolina Class, who wore the Uniforms and brought them into their homes.

1674.  As a direct and proximate cause of Defendants' breach of their aforementioned duty, the South Carolina Plaintiffs and the South Carolina Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CLIV**
**DESIGN DEFECT**
**(On Behalf of the South Carolina Plaintiffs and the South Carolina Class)**

</div>

1675.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1676.  This claim is brought on behalf of the South Carolina Plaintiffs and the South Carolina Class.

1677.  At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1678.  The Uniforms were defectively designed so as to render them unreasonably dangerous to the South Carolina Plaintiffs and the South Carolina Class.

1679.  At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1680.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1681.   The Uniforms were expected to and did reach the South Carolina Plaintiffs and the South Carolina Class without substantial change in the condition in which they were sold.

1682.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1683.   The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1684.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the South Carolina Plaintiffs and the South Carolina Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the South Carolina Plaintiffs and the South Carolina Class without substantially impairing the Uniforms' utility.

1685.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the South Carolina Plaintiffs and the South Carolina Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLV**
**MANUFACTURING DEFECT**
**(On Behalf of the South Carolina Plaintiffs and the South Carolina Class)**

1686.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1687.   This claim is brought on behalf of the South Carolina Plaintiffs and the South Carolina Class.

1688.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1689.   A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the South Carolina Plaintiffs and the South Carolina Class.

1690.   The Uniforms were expected to and did reach the South Carolina Plaintiffs and the South Carolina Class without substantial change in the condition in which they were sold.

1691.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1692.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the South Carolina Plaintiffs and the South Carolina Class.

1693.   The South Carolina Plaintiffs and the South Carolina Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1694.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of

injuries to the South Carolina Plaintiffs and the South Carolina Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the South Carolina Plaintiffs and the South Carolina Class without substantially impairing the Uniforms' utility.

1695.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the South Carolina Plaintiffs and the South Carolina Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CLVI
## FAILURE TO WARN
**(On Behalf of the South Carolina Plaintiffs and the South Carolina Class)**

1696.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1697.   This claim is brought on behalf of the South Carolina Plaintiffs and the South Carolina Class.

1698.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1699.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1700. At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1701. The Uniforms were expected to and did reach the South Carolina Plaintiffs and the South Carolina Class without substantial change in the condition in which they were sold.

1702. Defendants had a duty to warn the South Carolina Plaintiffs and the South Carolina Class of the potentially dangerous propensities of the intended use of the Uniforms.

1703. Defendants failed to adequately warn the South Carolina Plaintiffs and the South Carolina Class that the use of the Uniforms could result in severe adverse health effects.

1704. These risks of which Defendants failed to adequately warn the South Carolina Plaintiffs and the South Carolina Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1705. The Uniforms were used and worn by the South Carolina Plaintiffs and the South Carolina Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1706. At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1707. Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1708.   Had Defendants adequately warned the South Carolina Plaintiffs and the South Carolina Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1709.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the South Carolina Plaintiffs and the South Carolina Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the South Carolina Plaintiffs and the South Carolina Class without substantially impairing the Uniforms' utility.

1710.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the South Carolina Plaintiffs and the South Carolina Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CLVII**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the South Carolina Plaintiffs and the South Carolina Class)**

</div>

1711.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1712.   This claim is brought on behalf of the South Carolina Plaintiffs and the South Carolina Class.

1713.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

  a.   That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

  b.   That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

  c.   That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1714.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises became a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1715.   The South Carolina Plaintiffs and the South Carolina Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the South Carolina Plaintiffs and the South Carolina Class are and were in privity of contract with Defendants.

1716.   Southwest, the South Carolina Plaintiffs and the South Carolina Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1717.   Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the South Carolina Plaintiffs and the South Carolina Class.

1718.   As a direct and proximate result of Cintas' breach of its express warranties, the South Carolina Plaintiffs and the South Carolina Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CLVIII
### BREACH OF IMPLIED WARRANTIES
**(On Behalf of the South Carolina Plaintiffs and the South Carolina Class)**

1719.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1720.   This claim is brought on behalf of the South Carolina Plaintiffs and the South Carolina Class.

1721.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1722.   Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1723.   Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1724.   Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1725.   Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1726.   The South Carolina Plaintiffs and the South Carolina Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the South Carolina Plaintiffs and the South Carolina Class are and were in privity of contract with Defendants.

1727.   Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the South Carolina Plaintiffs and the South Carolina Class.

1728.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the South Carolina Plaintiffs and the South Carolina Class.

1729.   As a direct and proximate result of Cintas' breaches of implied warranties, the South Carolina Plaintiffs and the South Carolina Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CLIX
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
**(On Behalf of the South Carolina Plaintiffs and the South Carolina Class)**

1730.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1731.   This claim is brought on behalf of the South Carolina Plaintiffs and the South Carolina Class.

1732.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1733.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1734.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1735.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1736.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1737.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1738.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the South Carolina Plaintiffs and the South Carolina Class when the Uniforms left Defendants' control.

1739.   As a direct and proximate result of Defendants' violations of the Warranty Act, the South Carolina Plaintiffs and the South Carolina Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1740.   In accordance with 15 U.S.C. § 2310(d)(1), the South Carolina Plaintiffs and the South Carolina Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

## COUNT CLX
## INJUNCTIVE RELIEF
### (On Behalf of the South Carolina Plaintiffs and the South Carolina Class)

1741.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1742.   This claim is brought on behalf of the South Carolina Plaintiffs and the South Carolina Class.

1743.   The South Carolina Plaintiffs and the South Carolina Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1744.   As set forth above, the South Carolina Plaintiffs and the South Carolina Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1745.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1746.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the South Carolina Plaintiffs and the South Carolina Class to ongoing and future risks of adverse medical conditions.

1747.   The South Carolina Plaintiffs and the South Carolina Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1748.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1749.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the South Carolina Plaintiffs and the South Carolina Class as a result of the Uniforms.

1750.   By actively monitoring and testing South Carolina Plaintiffs and the South Carolina Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1751.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the South Carolina Plaintiffs and the South Carolina Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1752.   The South Carolina Plaintiffs and the South Carolina Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1753.   Without injunctive relief in the form of a recall and/or medical monitoring program, the South Carolina Plaintiffs and the South Carolina Class will continue to face an unreasonable risk of preventable injury and disability.

<div align="center">

**COUNT CLXI**
**NEGLIGENCE**
**(On Behalf of the Georgia Plaintiffs and the Georgia Class)**

</div>

1754.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1755.   This claim is brought on behalf of the Georgia Plaintiffs and the Georgia Class.

1756.   Defendants owed a duty to the Georgia Plaintiffs and the Georgia Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1757.   Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

a.      Failing to use reasonable care in designing, developing, manufacturing,

testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Georgia Plaintiffs and the Georgia Class, who wore the Uniforms and brought them into their homes;

b.  Failing to adequately warn the Georgia Plaintiffs and the Georgia Class that the use of the Uniforms could result in adverse health effects; and

c.  Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Georgia Plaintiffs and the Georgia Class, who wore the Uniforms and brought them into their homes.

1758.  As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Georgia Plaintiffs and the Georgia Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLXII**
**DESIGN DEFECT**
**(On Behalf of the Georgia Plaintiffs and the Georgia Class)**

1759.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1760.  This claim is brought on behalf of the Georgia Plaintiffs and the Georgia Class.

1761.  At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1762.  The Uniforms were defectively designed so as to render them unreasonably dangerous, not merchantable, and not reasonably suited to the use intended to the Georgia Plaintiffs and the Georgia Class.

1763.  At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1764.  A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1765.  The Uniforms were expected to and did reach the Georgia Plaintiffs and the Georgia Class without substantial change in the condition in which they were sold.

1766.  The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1767.  The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1768.  At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Georgia Plaintiffs and the Georgia Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the

risk and amount of injuries to the Georgia Plaintiffs and the Georgia Class without substantially impairing the Uniforms' utility.

1769.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the Georgia Plaintiffs and the Georgia Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CLXIII
### MANUFACTURING DEFECT
**(On Behalf of the Georgia Plaintiffs and the Georgia Class)**

1770.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1771.   This claim is brought on behalf of the Georgia Plaintiffs and the Georgia Class.

1772.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1773.   A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous, not merchantable, and not reasonably suited to the use intended to the Georgia Plaintiffs and the Georgia Class.

1774.   The Uniforms were expected to and did reach the Georgia Plaintiffs and the Georgia Class without substantial change in the condition in which they were sold.

1775. The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1776.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Georgia Plaintiffs and the Georgia Class.

1777.   The Georgia Plaintiffs and the Georgia Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1778.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Georgia Plaintiffs and the Georgia Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Georgia Plaintiffs and the Georgia Class without substantially impairing the Uniforms' utility.

1779.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Georgia Plaintiffs and the Georgia Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLXIV**
**FAILURE TO WARN**
**(On Behalf of the Georgia Plaintiffs and the Georgia Class)**

1780.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1781.   This claim is brought on behalf of the Georgia Plaintiffs and the Georgia Class.

1782.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1783.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1784.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, not merchantable, and not reasonably suited to the use intended due to the lack of such necessary warnings.

1785.   The Uniforms were expected to and did reach the Georgia Plaintiffs and the Georgia Class without substantial change in the condition in which they were sold.

1786.   Defendants had a duty to warn the Georgia Plaintiffs and the Georgia Class of the potentially dangerous propensities of the intended use of the Uniforms.

1787.   Defendants failed to adequately warn the Georgia Plaintiffs and the Georgia Class that the use of the Uniforms could result in severe adverse health effects.

1788.   These risks of which Defendants failed to adequately warn the Georgia Plaintiffs and the Georgia Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1789.   The Uniforms were used and worn by the Georgia Plaintiffs and the Georgia Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1790.   At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1791.   Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1792.   Had Defendants adequately warned the Georgia Plaintiffs and the Georgia Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1793.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Georgia Plaintiffs and the Georgia Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Georgia Plaintiffs and the Georgia Class without substantially impairing the Uniforms' utility.

1794.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Georgia Plaintiffs and the Georgia Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLXV**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Georgia Plaintiffs and the Georgia Class)**

1795.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1796.   This claim is brought on behalf of the Georgia Plaintiffs and the Georgia Class.

1797.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a.   That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b.   That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

c.   That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1798.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises became a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1799.   The Georgia Plaintiffs and the Georgia Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently

immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Georgia Plaintiffs and the Georgia Class are and were in privity of contract with Defendants.

1800.   Southwest, the Georgia Plaintiffs and the Georgia Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1801.   Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Georgia Plaintiffs and the Georgia Class.

1802.   As a direct and proximate result of Cintas' breach of its express warranties, the Georgia Plaintiffs and the Georgia Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CLXVI
### BREACH OF IMPLIED WARRANTIES
**(On Behalf of the Georgia Plaintiffs and the Georgia Class)**

1803.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1804.   This claim is brought on behalf of the Georgia Plaintiffs and the Georgia Class.

1805.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1806.  Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1807.  Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1808.  Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1809.  Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1810.  The Georgia Plaintiffs and the Georgia Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Georgia Plaintiffs and the Georgia Class are and were in privity of contract with Defendants.

1811.  Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Georgia Plaintiffs and the Georgia Class.

1812.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Georgia Plaintiffs and the Georgia Class.

1813.   As a direct and proximate result of Cintas' breaches of implied warranties, the Georgia Plaintiffs and the Georgia Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLXVII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, *et seq.***
**(On Behalf of the Georgia Plaintiffs and the Georgia Class)**

1814.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1815.   This claim is brought on behalf of the Georgia Plaintiffs and the Georgia Class.

1816.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1817.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1818.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1819.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1820. Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1821. The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1822. Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Georgia Plaintiffs and the Georgia Class when the Uniforms left Defendants' control.

1823. As a direct and proximate result of Defendants' violations of the Warranty Act, the Georgia Plaintiffs and the Georgia Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1824. In accordance with 15 U.S.C. § 2310(d)(1), the Georgia Plaintiffs and the Georgia Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

## COUNT CLXVIII
### INJUNCTIVE RELIEF
**(On Behalf of the Georgia Plaintiffs and the Georgia Class)**

1825. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1826. This claim is brought on behalf of the Georgia Plaintiffs and the Georgia Class.

1827.   The Georgia Plaintiffs and the Georgia Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1828.   As set forth above, the Georgia Plaintiffs and the Georgia Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1829.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1830.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Georgia Plaintiffs and the Georgia Class to ongoing and future risks of adverse medical conditions.

1831.   The Georgia Plaintiffs and the Georgia Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1832.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1833.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Georgia Plaintiffs and the Georgia Class as a result of the Uniforms.

1834.   By actively monitoring and testing Georgia Plaintiffs and the Georgia Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1835.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Georgia Plaintiffs and the Georgia Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1836.   The Georgia Plaintiffs and the Georgia Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1837.   Without injunctive relief in the form of a recall and/or medical monitoring program, the Georgia Plaintiffs and the Georgia Class will continue to face an unreasonable risk of preventable injury and disability.

## COUNT CLXIX
## NEGLIGENCE
**(On Behalf of the Louisiana Plaintiffs and the Louisiana Class)**

1838.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1839.   This claim is brought on behalf of the Louisiana Plaintiffs and the Louisiana Class.

1840.   Defendants owed a duty to the Louisiana Plaintiffs and the Louisiana Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1841.   Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling

the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

<ol type="a" style="margin-left:2em;">
<li>Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Louisiana Plaintiffs and the Louisiana Class, who wore the Uniforms and brought them into their homes;</li>
<li>Failing to adequately warn the Louisiana Plaintiffs and the Louisiana Class that the use of the Uniforms could result in adverse health effects; and</li>
<li>Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Louisiana Plaintiffs and the Louisiana Class, who wore the Uniforms and brought them into their homes.</li>
</ol>

1842.   As a direct and proximate cause, cause-in-fact, and legal cause of Defendants' breach of their aforementioned duty, the Louisiana Plaintiffs and the Louisiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLXX**
**DESIGN DEFECT**
**(On Behalf of the Louisiana Plaintiffs and the Louisiana Class)**

1843.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1844.   This claim is brought on behalf of the Louisiana Plaintiffs and the Louisiana Class.

1845.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1846.   The Uniforms were defectively designed so as to render them unreasonably dangerous to the Louisiana Plaintiffs and the Louisiana Class.

1847.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1848.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1849.   The Uniforms were expected to and did reach the Louisiana Plaintiffs and the Louisiana Class without substantial change in the condition in which they were sold.

1850.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1851.   The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1852.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Louisiana Plaintiffs and the Louisiana Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the

risk and amount of injuries to the Louisiana Plaintiffs and the Louisiana Class without substantially impairing the Uniforms' utility.

1853.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the Louisiana Plaintiffs and the Louisiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CLXXI**
**MANUFACTURING DEFECT**
**(On Behalf of the Louisiana Plaintiffs and the Louisiana Class)**

</div>

1854.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1855.   This claim is brought on behalf of the Louisiana Plaintiffs and the Louisiana Class.

1856.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1857.   A manufacturing defect existed in the Uniforms which deviated in a material way from the Defendants' specifications or performance standards for the Uniforms or from otherwise identical Uniforms manufactured by Defendants, and which rendered the Uniforms unreasonably dangerous in their construction or composition to the Louisiana Plaintiffs and the Louisiana Class.

1858.   The Uniforms were expected to and did reach the Louisiana Plaintiffs and the Louisiana Class without substantial change in the condition in which they were sold.

1859. The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1860. The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Louisiana Plaintiffs and the Louisiana Class.

1861. The Louisiana Plaintiffs and the Louisiana Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1862. At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Louisiana Plaintiffs and the Louisiana Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Louisiana Plaintiffs and the Louisiana Class without substantially impairing the Uniforms' utility.

1863. As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Louisiana Plaintiffs and the Louisiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CLXXII
## FAILURE TO WARN
### (On Behalf of the Louisiana Plaintiffs and the Louisiana Class)

1864.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1865.   This claim is brought on behalf of the Louisiana Plaintiffs and the Louisiana Class.

1866.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1867.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1868.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users, and not reasonably safe for their intended use, due to the lack of such necessary warnings.

1869.   The Uniforms were expected to and did reach the Louisiana Plaintiffs and the Louisiana Class without substantial change in the condition in which they were sold.

1870.   Defendants had a duty to warn the Louisiana Plaintiffs and the Louisiana Class of the potentially dangerous propensities of the intended use of the Uniforms.

1871.   Defendants failed to adequately warn the Louisiana Plaintiffs and the Louisiana Class that the use of the Uniforms could result in severe adverse health effects.

1872.   These risks of which Defendants failed to adequately warn the Louisiana Plaintiffs and the Louisiana Class were known or knowable in light of the generally recognized and

prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1873.   The Uniforms were used and worn by the Louisiana Plaintiffs and the Louisiana Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1874.   At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1875.   Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1876.   Had Defendants adequately warned the Louisiana Plaintiffs and the Louisiana Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1877.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Louisiana Plaintiffs and the Louisiana Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Louisiana Plaintiffs and the Louisiana Class without substantially impairing the Uniforms' utility.

1878.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Louisiana Plaintiffs and the Louisiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and

suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CLXXIII**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Louisiana Plaintiffs and the Louisiana Class)**

</div>

1879.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1880.   This claim is brought on behalf of the Louisiana Plaintiffs and the Louisiana Class.

1881.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

    a.    That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

    b.    That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

    c.    That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1882.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises became a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1883.   The Louisiana Plaintiffs and the Louisiana Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest

and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Louisiana Plaintiffs and the Louisiana Class are and were in privity of contract with Defendants.

1884.   Southwest, the Louisiana Plaintiffs and the Louisiana Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1885.   Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Louisiana Plaintiffs and the Louisiana Class.

1886.   As a direct and proximate result of Cintas' breach of its express warranties, the Louisiana Plaintiffs and the Louisiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CLXIV
### BREACH OF IMPLIED WARRANTIES
**(On Behalf of the Louisiana Plaintiffs and the Louisiana Class)**

1887.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1888.   This claim is brought on behalf of the Louisiana Plaintiffs and the Louisiana Class.

1889.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1890.   Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1891.   Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1892.   Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1893.   Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1894.   The Louisiana Plaintiffs and the Louisiana Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Louisiana Plaintiffs and the Louisiana Class are and were in privity of contract with Defendants.

1895.   Cintas breached the implied warranty against redhibitory defects and the implied warranty of fitness by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Louisiana Plaintiffs and the Louisiana Class.

1896.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Louisiana Plaintiffs and the Louisiana Class.

1897.   As a direct and proximate result of Cintas' breaches of implied warranties, the Louisiana Plaintiffs and the Louisiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CLXXV
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
### (On Behalf of the Louisiana Plaintiffs and the Louisiana Class)

1898.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1899.   This claim is brought on behalf of the Louisiana Plaintiffs and the Louisiana Class.

1900.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1901.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1902.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1903.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1904.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1905.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1906.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Louisiana Plaintiffs and the Louisiana Class when the Uniforms left Defendants' control.

1907.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Louisiana Plaintiffs and the Louisiana Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1908.   In accordance with 15 U.S.C. § 2310(d)(1), the Louisiana Plaintiffs and the Louisiana Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

<div align="center">

**COUNT CLXXVI**
**INJUNCTIVE RELIEF**
**(On Behalf of the Louisiana Plaintiffs and the Louisiana Class)**

</div>

1909.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1910.   This claim is brought on behalf of the Louisiana Plaintiffs and the Louisiana Class.

1911.   The Louisiana Plaintiffs and the Louisiana Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1912.   As set forth above, the Louisiana Plaintiffs and the Louisiana Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1913.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1914.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Louisiana Plaintiffs and the Louisiana Class to ongoing and future risks of adverse medical conditions.

1915.   The Louisiana Plaintiffs and the Louisiana Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

1916.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

1917.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Louisiana Plaintiffs and the Louisiana Class as a result of the Uniforms.

1918.   By actively monitoring and testing Louisiana Plaintiffs and the Louisiana Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

1919.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Louisiana Plaintiffs and the Louisiana Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

1920.   The Louisiana Plaintiffs and the Louisiana Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

1921.   Without injunctive relief in the form of a recall and/or medical monitoring program, the Louisiana Plaintiffs and the Louisiana Class will continue to face an unreasonable risk of preventable injury and disability.

<u>COUNT CLXXVII</u>
<u>NEGLIGENCE</u>
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Class)**

1922.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1923.   This claim is brought on behalf of the Minnesota Plaintiffs and the Minnesota Class.

1924.   Defendants owed a duty to the Minnesota Plaintiffs and the Minnesota Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1925.   Defendants were negligent in failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling

the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

       a.    Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Minnesota Plaintiffs and the Minnesota Class, who wore the Uniforms and brought them into their homes;

       b.    Failing to adequately warn the Minnesota Plaintiffs and the Minnesota Class that the use of the Uniforms could result in adverse health effects; and

       c.    Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Minnesota Plaintiffs and the Minnesota Class, who wore the Uniforms and brought them into their homes.

1926.  As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Minnesota Plaintiffs and the Minnesota Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLXXVIII**
**DESIGN DEFECT**
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Class)**

1927.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1928.   This claim is brought on behalf of the Minnesota Plaintiffs and the Minnesota Class.

1929.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1930.   The Uniforms were defectively designed so as to render them unreasonably dangerous for their intended use to the Minnesota Plaintiffs and the Minnesota Class.

1931.   The defective design of the Uniforms existed at the time the Uniforms left Defendants' control.

1932.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

1933.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

1934.   The Uniforms were expected to and did reach the Minnesota Plaintiffs and the Minnesota Class without substantial change in the condition in which they were sold.

1935.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1936.   The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

1937.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Minnesota Plaintiffs and the Minnesota Class without impairing the reasonably

anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Minnesota Plaintiffs and the Minnesota Class without substantially impairing the Uniforms' utility.

1938. As a direct and proximate cause of Defendants' defective design of the Uniforms, the Minnesota Plaintiffs and the Minnesota Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CLXXIX**
**MANUFACTURING DEFECT**
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Class)**

</div>

1939. Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1940. This claim is brought on behalf of the Minnesota Plaintiffs and the Minnesota Class.

1941. At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1942. A manufacturing defect existed in the Uniforms which rendered them unreasonably dangerous for their intended use to the Minnesota Plaintiffs and the Minnesota Class.

1943. The Uniforms were expected to and did reach the Minnesota Plaintiffs and the Minnesota Class without substantial change in the condition in which they were sold.

1944.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

1945.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Minnesota Plaintiffs and the Minnesota Class.

1946.   The Minnesota Plaintiffs and the Minnesota Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

1947.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Minnesota Plaintiffs and the Minnesota Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Minnesota Plaintiffs and the Minnesota Class without substantially impairing the Uniforms' utility.

1948.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Minnesota Plaintiffs and the Minnesota Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CLXXX
## FAILURE TO WARN
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Class)**

1949.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1950.   This claim is brought on behalf of the Minnesota Plaintiffs and the Minnesota Class.

1951.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

1952.   At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

1953.   At the time the Uniforms left Defendants' control, they were unreasonably dangerous for their intended use due to the lack of adequate warnings or instructions.

1954.   The Uniforms were expected to and did reach the Minnesota Plaintiffs and the Minnesota Class without substantial change in the condition in which they were sold.

1955.    Defendants had a duty to warn the Minnesota Plaintiffs and the Minnesota Class of the potentially dangerous propensities of the intended use of the Uniforms.

1956.   Defendants failed to adequately warn the Minnesota Plaintiffs and the Minnesota Class that the use of the Uniforms could result in severe adverse health effects.

1957.   These risks of which Defendants failed to adequately warn the Minnesota Plaintiffs and the Minnesota Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

1958.   The Uniforms were used and worn by the Minnesota Plaintiffs and the Minnesota Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

1959.   At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

1960.   Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

1961.   Had Defendants adequately warned the Minnesota Plaintiffs and the Minnesota Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

1962.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Minnesota Plaintiffs and the Minnesota Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Minnesota Plaintiffs and the Minnesota Class without substantially impairing the Uniforms' utility.

1963.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Minnesota Plaintiffs and the Minnesota Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CLXXXI
## BREACH OF EXPRESS WARRANTY
### (On Behalf of the Minnesota Plaintiffs and the Minnesota Class)

1964.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1965.   This claim is brought on behalf of the Minnesota Plaintiffs and the Minnesota Class.

1966.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

a.   That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

b.   That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

c.   That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

1967.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises became a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

1968.   The Minnesota Plaintiffs and the Minnesota Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently

immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Minnesota Plaintiffs and the Minnesota Class are and were in privity of contract with Defendants.

1969.   Southwest, the Minnesota Plaintiffs and the Minnesota Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

1970.   Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Minnesota Plaintiffs and the Minnesota Class.

1971.   As a direct and proximate result of Cintas' breach of its express warranties, the Minnesota Plaintiffs and the Minnesota Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

## COUNT CLXXXII
## BREACH OF IMPLIED WARRANTIES
### (On Behalf of the Minnesota Plaintiffs and the Minnesota Class)

1972.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1973.   This claim is brought on behalf of the Minnesota Plaintiffs and the Minnesota Class.

1974.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

1975. Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

1976. Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

1977. Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1978. Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

1979. The Minnesota Plaintiffs and the Minnesota Class are intended third-party beneficiaries of Cintas's warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Minnesota Plaintiffs and the Minnesota Class are and were in privity of contract with Defendants.

1980. Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Minnesota Plaintiffs and the Minnesota Class.

1981.   Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Minnesota Plaintiffs and the Minnesota Class.

1982.   As a direct and proximate result of Cintas's breaches of implied warranties, the Minnesota Plaintiffs and the Minnesota Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CLXXXIII**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301,** ***et seq.***
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Class)**

</div>

1983.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1984.   This claim is brought on behalf of the Minnesota Plaintiffs and the Minnesota Class.

1985.   The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

1986.   Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

1987.   Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

1988.   The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

1989.   Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

1990.   The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

1991.   Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Minnesota Plaintiffs and the Minnesota Class when the Uniforms left Defendants' control.

1992.   As a direct and proximate result of Defendants' violations of the Warranty Act, the Minnesota Plaintiffs and the Minnesota Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

1993.   In accordance with 15 U.S.C. § 2310(d)(1), the Minnesota Plaintiffs and the Minnesota Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

<div align="center">

**COUNT CLXXXIV**
**INJUNCTIVE RELIEF**
**(On Behalf of the Minnesota Plaintiffs and the Minnesota Class)**

</div>

1994.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

1995.   This claim is brought on behalf of the Minnesota Plaintiffs and the Minnesota Class.

1996.   The Minnesota Plaintiffs and the Minnesota Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

1997.   As set forth above, the Minnesota Plaintiffs and the Minnesota Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

1998.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

1999.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Minnesota Plaintiffs and the Minnesota Class to ongoing and future risks of adverse medical conditions.

2000.   The Minnesota Plaintiffs and the Minnesota Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

2001.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

2002.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Minnesota Plaintiffs and the Minnesota Class as a result of the Uniforms.

2003.   By actively monitoring and testing Minnesota Plaintiffs and the Minnesota Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

2004.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Minnesota Plaintiffs and the Minnesota Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

2005.   The Minnesota Plaintiffs and the Minnesota Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

2006.   Without injunctive relief in the form of a recall and/or medical monitoring program, the Minnesota Plaintiffs and the Minnesota Class will continue to face an unreasonable risk of preventable injury and disability.

**COUNT CLXXXV**
**NEGLIGENCE**
**(On Behalf of the Massachusetts Plaintiffs and the Massachusetts Class)**

2007.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

2008.   This claim is brought on behalf of the Massachusetts Plaintiffs and the Massachusetts Class.

2009.   Defendants owed a duty to the Massachusetts Plaintiffs and the Massachusetts Class to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

2010.   Defendants were negligent in failing to use reasonable care in designing,

developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms. Defendants breached their aforementioned duty in ways which include, but are not limited to, the following:

> a.   Failing to use reasonable care in designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and/or selling the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Massachusetts Plaintiffs and the Massachusetts Class, who wore the Uniforms and brought them into their homes;

> b.   Failing to adequately warn the Massachusetts Plaintiffs and the Massachusetts Class that the use of the Uniforms could result in adverse health effects; and

> c.   Failing to use reasonable care in collecting and/or analyzing adverse event reports prepared by Southwest employees regarding the Uniforms so as to avoid an unreasonable risk of harm to Southwest employees, including the Massachusetts Plaintiffs and the Massachusetts Class, who wore the Uniforms and brought them into their homes.

2011.  As a direct and proximate cause of Defendants' breach of their aforementioned duty, the Massachusetts Plaintiffs and the Massachusetts Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLXXXVI**
**DESIGN DEFECT**
**(On Behalf of the Massachusetts Plaintiffs and the Massachusetts Class)**

2012.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

2013.   This claim is brought on behalf of the Massachusetts Plaintiffs and the Massachusetts Class.

2014.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

2015.   The Uniforms were defectively designed so as to render them unreasonably dangerous to the Massachusetts Plaintiffs and the Massachusetts Class.

2016.   The Uniforms were defectively designed so as to not met a consumer's reasonable expectation as to their safety.

2017.   At all times material to this action, the Uniforms were not safe and were not suited for the purposes for which Defendants, directly and indirectly, advertised, marketed, promoted, distributed, and sold them at the time Defendants placed the Uniforms in the stream of commerce.

2018.   A safer design and other products exist which could achieve similar results without the risks presented by the Uniforms.

2019.   The Uniforms were expected to and did reach the Massachusetts Plaintiffs and the Massachusetts Class without substantial change in the condition in which they were sold.

2020.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

2021.   The risks of danger in the use of the Uniforms inherent in their design outweighed any benefits of the design.

2022.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Massachusetts Plaintiffs and the Massachusetts Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Massachusetts Plaintiffs and the Massachusetts Class without substantially impairing the Uniforms' utility.

2023.   As a direct and proximate cause of Defendants' defective design of the Uniforms, the Massachusetts Plaintiffs and the Massachusetts Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

**COUNT CLXXXVII**
**MANUFACTURING DEFECT**
**(On Behalf of the Massachusetts Plaintiffs and the Massachusetts Class)**

2024.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

2025.   This claim is brought on behalf of the Massachusetts Plaintiffs and the Massachusetts Class.

2026.   At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

2027.   A manufacturing defect existed in the Uniforms which rendered the Uniforms unreasonably dangerous to the Massachusetts Plaintiffs and the Massachusetts Class, and unfit for their ordinary purposes, due to a lack of reasonable care in the Uniforms' manufacture and/or inspection.

2028.   The Uniforms were expected to and did reach the Massachusetts Plaintiffs and the Massachusetts Class without substantial change in the condition in which they were sold.

2029.   The Uniforms were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases them, with the ordinary knowledge common to the community as to the Uniforms' characteristics.

2030.   The Uniforms manufactured by Defendants were defective as a matter of law with respect to their manufacture at the time they left the hands of Defendants for distribution to the Massachusetts Plaintiffs and the Massachusetts Class.

2031.   The Massachusetts Plaintiffs and the Massachusetts Class used the uniforms in a manner that was reasonably foreseeable to Defendants.

2032.   At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Massachusetts Plaintiffs and the Massachusetts Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk and amount of injuries to the Massachusetts Plaintiffs and the Massachusetts Class without substantially impairing the Uniforms' utility.

2033.   As a direct and proximate result of Defendants' defective manufacturing of the Uniforms, the Massachusetts Plaintiffs and the Massachusetts Class have suffered and/or in the

future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CLXXXVIII**
**FAILURE TO WARN**
**(On Behalf of the Massachusetts Plaintiffs and the Massachusetts Class)**

</div>

2034.    Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

2035.    This claim is brought on behalf of the Massachusetts Plaintiffs and the Massachusetts Class.

2036.    At all times material to this action, Defendants were responsible for, and were in the business of, designing, developing, manufacturing, testing, promoting, packaging, marketing, distributing, and selling the Uniforms.

2037.    At the time the Uniforms left Defendants' control, they lacked appropriate and necessary warnings to the end users of the Uniforms of the potentially dangerous propensities of the Uniforms and/or the potentially dangerous propensities of the intended use of the Uniforms.

2038.    At the time the Uniforms left Defendants' control, they were unreasonably dangerous to the Uniforms' users due to the lack of such necessary warnings.

2039.    The dangers of which Defendants failed to warn involved hazards that would not be apparent to the Uniforms' users.

2040.    The Uniforms were expected to and did reach the Massachusetts Plaintiffs and the Massachusetts Class without substantial change in the condition in which they were sold.

2041.    Defendants had a duty to warn the Massachusetts Plaintiffs and the Massachusetts Class of the potentially dangerous propensities of the intended use of the Uniforms.

2042.  Defendants failed to adequately warn the Massachusetts Plaintiffs and the Massachusetts Class the use of the Uniforms could result in severe adverse health effects.

2043.  These risks of which Defendants failed to adequately warn the Massachusetts Plaintiffs and the Massachusetts Class were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of the Uniforms' manufacture and distribution.

2044.  The Uniforms were used and worn by the Massachusetts Plaintiffs and the Massachusetts Class in a reasonably anticipated and foreseeable manner, and in the manner for which the Uniforms were intended by Defendants.

2045.  At all relevant times hereto, Defendants were situated in the chain of commerce and transferred, sold, marketed, advertised, and/or distributed the Uniforms in the regular course of their business.

2046.  Defendants knew or should have known of the risk of injury from the Uniforms, but failed to provide adequate warning to the users and wearers of the Uniforms.

2047.  Had Defendants adequately warned the Massachusetts Plaintiffs and the Massachusetts Class of the risk of injury from the Uniforms, they could have taken steps to avoid the injuries and adverse health consequences before they occurred.

2048.  At the time the Uniforms left the control of Defendants, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of injuries to the Massachusetts Plaintiffs and the Massachusetts Class without impairing the reasonably anticipated or intended function of the Uniforms. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the

327

risk and amount of injuries to the Massachusetts Plaintiffs and the Massachusetts Class without substantially impairing the Uniforms' utility.

2049.   As a direct and proximate result of Cintas' failure to warn of the risk of injury from the Uniforms, the Massachusetts Plaintiffs and the Massachusetts Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

<div align="center">

**COUNT CLXXXIX**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of the Massachusetts Plaintiffs and the Massachusetts Class)**

</div>

2050.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

2051.   This claim is brought on behalf of the Massachusetts Plaintiffs and the Massachusetts Class.

2052.   Cintas made various express warranties, representations, descriptions, affirmations of fact, and promises to Southwest regarding the Uniforms which include, but are not limited to, the following:

      a.      That the Uniforms would conform in quality, design, materials, and workmanship to samples and specifications which had been approved by Southwest;

      b.      That the Uniforms would meet certain specified testing standards provided to Cintas by Southwest; and

        c.     That the Uniforms would be merchantable and fit for the particular purpose and uses for which they were intended and needed by Southwest in its business.

2053.   The above-listed warranties, representations, descriptions, affirmations of fact, and promises became a part of the basis of the bargain between Cintas and Southwest in relation to the sale of the Uniforms.

2054.   The Massachusetts Plaintiffs and the Massachusetts Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Massachusetts Plaintiffs and the Massachusetts Class are and were in privity of contract with Defendants.

2055.   Southwest, the Massachusetts Plaintiffs and the Massachusetts Class reasonably relied upon the above-listed warranties, descriptions, representations, affirmations of fact, and promises of Cintas in relation the Uniforms.

2056.   Defendants breached their express warranties by selling unreasonably dangerous and defective uniforms which failed to comply with the above-listed warranties, descriptions, representations, affirmations of fact, and promises, and which adversely affected the health and safety of the Massachusetts Plaintiffs and the Massachusetts Class.

2057.   As a direct and proximate result of Cintas' breach of its express warranties, the Massachusetts Plaintiffs and the Massachusetts Class have suffered and/or in the future will suffer

injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CXC
### BREACH OF IMPLIED WARRANTIES
#### (On Behalf of the Massachusetts Plaintiffs and the Massachusetts Class)

2058.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

2059.   This claim is brought on behalf of the Massachusetts Plaintiffs and the Massachusetts Class.

2060.   Cintas is a "merchant" as to the Uniforms and with respect to goods of that kind.

2061.   Cintas impliedly warranted to Cintas that the Uniforms were merchantable and that they were fit for the ordinary purpose for which they were intended to be used.

2062.   Cintas had reason to know the particular purpose for which the Uniforms were required and the particular purpose for which the Uniforms were intended to be used by Plaintiffs.

2063.   Southwest relied upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

2064.   Cintas knew that Southwest was relying upon Cintas's skill and judgment to select and furnish suitable uniforms for its employees, including the Plaintiffs herein.

2065.   The Massachusetts Plaintiffs and the Massachusetts Class are intended third-party beneficiaries of Cintas' warranties because there is a valid and binding contract between Southwest and Cintas, the contract was intended in part to protect the safety of the Southwest employees who would be required to wear the Uniforms, and the benefit to the Southwest employees is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty

to compensate the Southwest employees if the benefit of the express warranties described above were lost. Consequently, the Massachusetts Plaintiffs and the Massachusetts Class are and were in privity of contract with Defendants.

2066.  Cintas breached the implied warranty of merchantability by selling and supplying unreasonably dangerous and defective uniforms which were not merchantable; were not fit for the ordinary purpose for which they were intended to be used; were not adequately contained, packaged, and/or labeled; did not conform to the promises and/or affirmations of fact made on their containers and/or labels, if any; and/or which adversely affected the health and safety of the Massachusetts Plaintiffs and the Massachusetts Class.

2067.  Cintas breached the implied warranty of fitness for a particular purpose by selling and supplying unreasonably dangerous and defective uniforms which were not fit for the particular purpose for which they were intended to be used, and which adversely affected the health and safety of the Massachusetts Plaintiffs and the Massachusetts Class.

2068.  As a direct and proximate result of Cintas' breaches of implied warranties, the Massachusetts Plaintiffs and the Massachusetts Class have suffered and/or in the future will suffer injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

### COUNT CXCI
### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### 15 U.S.C. § 2301, *et seq.*
**(On Behalf of the Massachusetts Plaintiffs and the Massachusetts Class)**

2069.  Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

2070. This claim is brought on behalf of the Massachusetts Plaintiffs and the Massachusetts Class.

2071. The Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "Warranty Act"), is applicable to Plaintiffs in that the Uniforms were manufactured and purchased after July 4, 1975, and cost in excess of ten dollars ($10.00).

2072. Plaintiffs are "consumers" within the meaning of the Warranty Act, 15 U.S.C. § 2301(3).

2073. Cintas is a "supplier" and "warrantor" within the meaning of the Warranty Act, 15 U.S.C. § 2301(4) and (5).

2074. The Uniforms are "consumer products" within the meaning of the Warranty Act, 15 U.S.C. § 2301(1).

2075. Cintas's express warranties, descriptions, representations, affirmations of fact, and promises described above created a "written warranties" as to the Uniforms within the meaning of the Warranty Act, 15 U.S.C. § 2301(6).

2076. The implied warranties of merchantability and fitness for a particular purpose which accompanied the Uniforms are "implied warranties" within the meaning of the Warranty Act, 15 U.S.C. § 2301(7).

2077. Defendants breached these express and implied warranties, as the Uniforms were not merchantable, not fit for their ordinary intended use, not fit for the particular purpose for which they were intended to be used, were not defect free, and were harmful to the Massachusetts Plaintiffs and the Massachusetts Class when the Uniforms left Defendants' control.

2078. As a direct and proximate result of Defendants' violations of the Warranty Act, the Massachusetts Plaintiffs and the Massachusetts Class have suffered and/or in the future will suffer

injuries and damages which include, but are not limited to, personal injuries, pain and suffering, severe emotional distress, property damage, financial and economic loss, medical expenses, lost income, and other damages.

2079.   In accordance with 15 U.S.C. § 2310(d)(1), the Massachusetts Plaintiffs and the Massachusetts Class are entitled to bring suit for such damages and other legal and equitable relief, including attorneys' fees incurred in connection with this action.

## COUNT CXCII
## INJUNCTIVE RELIEF
### (On Behalf of the Massachusetts Plaintiffs and the Massachusetts Class)

2080.   Plaintiffs incorporate the allegations and statements made above in paragraphs 1-154 as if fully reiterated herein.

2081.  This claim is brought on behalf of the Massachusetts Plaintiffs and the Massachusetts Class.

2082.   The Massachusetts Plaintiffs and the Massachusetts Class have been, and continue to be, exposed to Cintas's dangerous Uniforms by virtue of their employment with Southwest.

2083.   As set forth above, the Massachusetts Plaintiffs and the Massachusetts Class have experienced adverse reactions from the exposure to the Uniforms. Some plaintiffs and class members continue to experience adverse reactions as they wear the Uniforms. Other Southwest employees react to the Uniforms merely by being in their presence.

2084.   Many Southwest employees are susceptible to experiencing adverse reactions as a result of their cumulative exposures to the allergens and sensitizers in, and emanating from, the Uniforms.

2085.   By providing the unsafe Uniforms to the Southwest employees and by failing to promptly recall the Uniforms, Defendants have exposed the Massachusetts Plaintiffs and the Massachusetts Class to ongoing and future risks of adverse medical conditions.

2086.   The Massachusetts Plaintiffs and the Massachusetts Class have an increased risk of developing other medical conditions, including but not limited to, the triggering of various autoimmune conditions, adverse effects to the endocrine system, and damage to liver function.

2087.   As a remedy and to prevent further and continuing injuries to Southwest employees, Defendants should be ordered to recall all of the Uniforms that have been issued.

2088.   As an additional or alternative remedy, Defendants should be ordered to establish and fund a medical monitoring fund in an amount that will assist in diagnosing and treating the adverse health effects experienced by the Massachusetts Plaintiffs and the Massachusetts Class as a result of the Uniforms.

2089.   By actively monitoring and testing Massachusetts Plaintiffs and the Massachusetts Class, and other Southwest employees, the risk that they will suffer long-term or latent injuries, diseases, or losses due to inadequate treatment will be significantly reduced.

2090.   Plaintiffs seek an injunction creating a court-supervised, Defendant-funded medical monitoring program that will facilitate the screening and diagnosis of the Massachusetts Plaintiffs and the Massachusetts Class for medical conditions resulting from their exposure to the Uniforms' allergens and sensitizers.

2091.   The Massachusetts Plaintiffs and the Massachusetts Class have no adequate remedy at law in that monetary damages alone cannot compensate them for past injuries and losses and/or prevent future injuries and losses.

2092. Without injunctive relief in the form of a recall and/or medical monitoring program, the Massachusetts Plaintiffs and the Massachusetts Class will continue to face an unreasonable risk of preventable injury and disability.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and the proposed Class and Sub-classes, pray for a judgment against Defendants granting the following relief:

a.     An order certifying the Class and appointing Plaintiffs as Representatives of the Class;

b.     An order certifying each of the Sub-Classes and appointing the appropriate Plaintiffs as Representatives of each of the Sub-Classes, as set forth herein;

c.     An order certifying the undersigned counsel as Counsel for the Class and Sub-Classes;

d.     An order requiring Defendants, at their own cost, to notify all of the Class and Sub-Classes' members of the unlawful conduct herein;

e.     Judgment against Defendants for all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and the other members of the Class and Sub-Classes;

f.     An order for injunctive relief prohibiting such conduct by Defendants in the future;

g.     An order for declaratory relief;

h.     Judgment against Defendants for pre-judgment and post-judgment interest;

i.     Judgment against Defendants for reasonable attorneys' fees and other litigation costs; and

j.    Any other relief deemed just and proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.


RESPECTFULLY SUBMITTED,

/s/ David B. Levin
David B. Levin (0059340)
Law Offices Of Todd M. Friedman, P.C.
111 West Jackson Blvd., Suite 1700
Chicago, IL 60604
(224) 218-0882 Telephone
(866) 633-0228 Facsimile
dlevin@toddflaw.com

Todd M. Friedman (Admitted *Pro Hac Vice*)
Adrian R. Bacon (Admitted *Pro Hac Vice*)
Law Offices Of Todd M. Friedman, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
(323) 306-4234 Telephone
(866) 633-0228 Facsimile
tfriedman@toddflaw.com
abacon@toddflaw.com

Kent T. Brandmeyer (Admitted *Pro Hac Vice*)
Yuk K. Law (Admitted *Pro Hac Vice*)
Trevor C. Wong (Admitted *Pro Hac Vice*)
L&B Law Group
2 North Lake Avenue, Suite 820
Pasadena, CA 91101
(626) 304-9500 Telephone
(626) 243-4799 Facsimile
kent@pasadenalawfirm.com
chuck@pasadenalawfirm.com
trevor@pasadenalawfirm.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, David B. Levin, one of Plaintiffs' attorneys, certify that on May 11, 2022, I electronically filed the foregoing using the Court's CM/ECF system. Electronic notification will be sent to all parties and attorneys of record by operation of the Court's electronic filing system, including to the following individuals:

> William A. Posey
> Jacob D. Rhode
> Bryce J. Yoder
> William N. Minor
> Keating Muething & Klekamp
> One East Fourth Street, Suite 1400
> Cincinnati, OH 45202
> wposey@kmklaw.com
> jrhode@kmklaw.com
> byoder@kmklaw.com
> wminor@kmklaw.com

<u>/s/ David B. Levin</u>
Attorney for Plaintiffs

337